**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

------------------------------------------------------- x

Aimen Halim, on behalf of himself and all
others similarly situated,

              Plaintiff,

     v.

Buffalo Wild Wings, Inc. and Inspire Brands,
Inc.,

              Defendants.

------------------------------------------------------- x

CASE NO. 1:23-cv-01495

**AMENDED CLASS ACTION
COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff Aimen Halim ("Plaintiff"), on behalf of himself and all others similarly situated, brings this consumer protection and false advertising class action against Defendants Buffalo Wild Wings, Inc. and Inspire Brands, Inc. ("Defendants" or "Buffalo Wild Wings"), predicated on the false and deceptive marketing and advertising of Buffalo Wild Wings' Boneless Wings. Plaintiff makes the following allegations based on the investigation of his counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on his personal knowledge.

<u>INTRODUCTION</u>

1.     This class action seeks to challenge the false and deceptive marketing and advertising of Buffalo Wild Wings' Boneless Wings (the "Products").

2.     Specifically, the name and description of the Products (i.e., as "Boneless Wings") leads reasonable consumers to believe the Products are ***actually*** chicken wings. In other words,

that the Products are chicken wings that have simply been deboned, and as such, are comprised of entirely chicken wing meat.

3.     Unbeknownst to Plaintiff and other consumers, the Products are not wings at all, but instead, slices of chicken ***breast meat*** deep-fried like wings. Indeed, the Products are more akin, in composition, to a chicken nugget than to a chicken wing.

4.     This clear-cut case of false advertising should not be permitted, as consumers should be able to rely on the plain meaning of a product's name and receive what they are promised.

5.     This is particularly true in a case like this one, where consumers value actual wings, and where Defendant has no valid reason for misleading consumers, other than to promote a cheaper product along with its actual chicken wings.

6.     Surely, if Buffalo Wild Wings was being transparent with its customers, it could readily change the name of the Products (e.g., "boneless chicken"), or disclose on its menu that the Products are actually made of chicken breast meat. Indeed, several of Buffalo Wild Wings' competitors are careful to name their products "Boneless Chicken" or "Chicken poppers," rather than "Boneless Wings," to prevent consumers from being misled.

7.     As discussed further below, Buffalo Wild Wings is well aware of this issue, but has refused to change its practices.

8.     Had Plaintiff and other consumers known that the Products are not actually chicken wings, they would have paid less for them, or would not have purchased them at all. Therefore, Plaintiff and consumers have suffered injury in fact, as a result of Defendants' deceptive practices.

9.     Plaintiff brings this class action lawsuit on behalf of himself, and all other similarly situated purchasers of the Products. Plaintiff seeks to represent a Nationwide Class and an Illinois Class (defined *infra* in paragraph 46-47) (collectively referred to herein as the "Classes"). Plaintiff, on behalf of himself and other consumers, is seeking damages, injunctive relief, restitution, declaratory relief, and all other remedies the Court deems appropriate.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because (a) the proposed Classes, defined below, consist of more than one hundred members; (b) the parties are minimally diverse, as members of the proposed Classes are citizens of states different than Defendants' home state; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

11.     This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with the state of Illinois, conduct and transact substantial business in Illinois, and/or otherwise intentionally avail themselves of the markets in the state of Illinois by selling the Products in Illinois, to Illinois consumers.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Defendants regularly conduct business throughout this District, and a substantial part of the events giving rise to this action occurred in this District. Namely, Plaintiff purchased the Products in this District.

## PARTIES

13.     Plaintiff Aimen Halim is an Illinois citizen and currently resides in Chicago, Illinois. In January 2023, Mr. Halim purchased Boneless Wings from a Buffalo Wild Wings in

Mount Prospect, Illinois. Based on the name and description of the Products (i.e., "Boneless Wings"), Mr. Halim, reasonably believed the Products were actually wings that were deboned (i.e., comprised entirely of chicken wing meat).

14.     Had Mr. Halim known that the Products are not chicken wings, he would not have purchased them, or would have paid significantly less for them. Therefore, Mr. Halim suffered a financial injury as a result of Defendants' false and deceptive conduct.

15.     Despite Defendants' misrepresentations, Plaintiff would purchase the Products, as advertised, if they were actually deboned wings. Absent an injunction of Defendants' deceptive advertising, Plaintiff will be unable to rely with confidence on Defendants' advertising of the Products in the future. Furthermore, while Plaintiff currently believes the marketing and advertising of the Products are inaccurate, he lacks personal knowledge as to Defendants' specific business practices, and thus, he will not be able determine whether the Products are actually made of chicken wing meat. This leaves doubt in his mind as to the possibility that at some point in the future the Products could be made in accordance with the representations made regarding the Products. This uncertainty, coupled with Plaintiff's desire to purchase the Products in the future, is an ongoing injury that can and would be rectified by an injunction enjoining Defendants from making the alleged misleading representations. In addition, other Class members will continue to purchase the Products reasonably, but incorrectly believing they are actually chicken wings.

16.     Defendant Buffalo Wild Wings, Inc. is a corporation with its principal place of business in Atlanta, Georgia. Defendant Buffalo Wild Wings, Inc.'s state of incorporation is

Minnesota. Defendant Buffalo Wild Wings, Inc., through its agents, is responsible for the composition, preparation, advertising, marketing, and sale of the Products in Illinois.

17.     Defendant Inspire Brands, Inc. is a corporation with its principal place of business in Atlanta, Georgia. Defendant Inspire Brands, Inc.'s state of incorporation is Delaware. Defendant Inspire Brands, Inc., through its agents, is responsible for the composition, preparation, advertising, marketing, and sale of the Products in Illinois.

## BACKGROUND

18.     Buffalo Wild Wings is a casual dining restaurant and sports bar chain that specializes almost entirely in selling chicken wings.

19.     Founded in 1982 and franchising since 1991, Buffalo Wild Wings has become one of the largest casual dining restaurants in the world, with franchises in the U.S., Canada, India, Mexico, Oman, Panama, Philippines, Saudi Arabia, United Arab Emirates, and Vietnam.[1]

20.     There are over 500 Buffalo Wild Wings franchises in the U.S., as well as over 50 internationally. Buffalo Wild Wings also boasts over 650 company-owned locations.[2]

21.     Buffalo Wild Wings began selling Boneless Wings in or around 2003.[3] Today, Boneless Wings are one of the most popular items on the menu.

22.     The practice of selling boneless "wings" that are not actually wings grew out of the rising costs for actual chicken wings, and the decreasing cost for chicken breast. Indeed, as reported by the New York Times:

---

[1] https://www.entrepreneur.com/franchises/buffalowildwings/282167
[2] *Id.*
[3] https://www.nytimes.com/2009/10/13/business/economy/13wings.html

". . .[I]n restaurants from Sarasota to Seattle, an improbable poultry part is showing up on menus: a little chunk of chicken breast that is fried and sauced and sold, with marketer's brio, as a "boneless wing." All this is happening because wholesale chicken prices have turned upside down. The once-lowly wing is selling at a premium over what has long been the gold standard of poultry parts, the skinless boneless chicken breast."[4]

23.     The dramatic rise in chicken wing prices was even recognized by Buffalo Wild Wings itself. Indeed, Mike Bell, the logistics and purchasing manager for Buffalo Wild Wings, has stated, "[b]asically a whole bunch of [poultry processors] are throwing their hands in the air and saying, 'I don't know what's going on. We've never seen it this way.'"[5]

24.     The rising cost for actual wings was caused, in part, by the Great Recession.[6] "Restaurants, normally big buyers of breast meat, slashed orders as millions of people cut back on eating out, and breast prices slumped. But demand for wings [] remained strong, partly because people perceived them as a cheap luxury."[7]

25.     Despite the recession, to capitalize on the continued demand by consumers for chicken wings, restaurants like Buffalo Wild Wings grew and posted increasing profits. "Adding to the demand [during the recession]. The brisk growth of restaurant chains focusing on wings, like Atomic Wings, Wingstop and Wing Zone. Several chains have been remarking this year about how much business is up in the recession."[8] "The major public company in this

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

group, Buffalo Wild Wings, reported a 27 percent earnings jump in the first half of the year."[9]

26.     Indeed, as noted in a 2018 food article with poultry analyst Russ Whiteman:

"In this time of high-flying wing prices, 'boneless' branding is emerging as a viable solution for processors desperate to push their record-low-priced white meat, and for retailers who can't afford the real ('traditional') thing. Take, for example, Buffalo Wild Wings. Whitman notes the chain replaced its half-price-Tuesday deals with a boneless promotion—a move that cut costs, boosted earnings, and temporarily staved off acquisition. (The chain's sales had slumped before the boneless bump.)"[10]

27.     "Now, 'the first question they ask you is, 'would you like boneless wings, or our traditional?' Whitman says."[11]

28.     Thus, it seems clear why Buffalo Wild Wings began selling boneless wings, and why it has continued to purposefully mislead consumers: a profit motive.

29.     Other food articles have also commented on the profit motive driving the marketing, advertising, and sale of boneless wings:

"If you're planning to go to a bar — or feed your guests takeout — for the Super Bowl this year, you might notice your go-to chain is pushing a slightly different product when you order wings. Once the wallflower of the poultry world, chicken wings have become the belles of the finger food ball; and with the National Chicken Council expecting wing consumption to hit 1.42 billion pieces during the game this year, and chicken wing prices higher than ever, restaurants are turning to creative alternatives like

---

[9] *Id.*
[10] https://thecounter.org/super-bowl-boneless-chicken-wings-poultry-economics/
[11] *Id.*

boneless chicken wings' for their promotional deals."[12]

## CHALLENGED REPRESENTATIONS

30.     The Products challenged in this action are Buffalo Wild Wing's Boneless "Wings." *See image below*.



---

[12] https://www.tastingtable.com/764812/the-real-reason-youre-seeing-more-boneless-wings-this-super-bowl/

31.     Based on the name and description of the Products ("Boneless Wings"), reasonable consumers are led to believe that the Products are actually boneless wings. In other words, that the Products are chicken wings that have simply been deboned, and as such, are comprised of entirely chicken wing meat.

32.     Unbeknownst to Plaintiff and other consumers, the Products are not wings, but instead slices of chicken breast meat.

33.     Thus, the marketing and advertising of the Products as "Boneless Wings" is false and misleading.

34.     Indeed, Russ Whitman, a poultry analyst at business publisher Urner Barry, which analyzes commodities, has stated:

> "I mean, no, it's not a wing at all. It's white meat, it's breast meat. Is it fair? I don't know what the rules are. It's misleading."[13]

35.     In fact, in 2020, a Nebraska consumer also called out restaurants like Buffalo Wild Wings for using the name "Boneless Wing." In the speech he made to his local city council, he stated:

> "Nothing about boneless chicken wings actually come from the wing of a chicken. We would be disgusted if a butcher was mislabeling their cuts of meats but then we go around pretending as though the breast of the chicken is its wing."[14]

36.     In response, Buffalo Wild Wings refused to change its practices,[15] and has failed to acknowledge the very basic point the consumer was making—the Products should not

---

[13] https://thecounter.org/super-bowl-boneless-chicken-wings-poultry-economics/
[14] https://www.foxnews.com/food-drink/buffalo-wild-wings-wingstop-boneless-wings-viral-video-response
[15] *Id.*

be called Boneless "Wings" because they are not wings at all.

37.    Indeed, Buffalo Wild Wings' competitors acknowledge this basic fact and choose to play by the rules by naming and marketing their products accurately.

38.    For example, Domino's Pizza uses the name Boneless "Chicken" and is careful to conspicuously inform consumers that the product is made of "100% whole white ***breast meat***." *See image below*.



BREADED CHICKEN MADE WITH 100% WHOLE WHITE BREAST MEAT. Customize with your choice of dipping cup: ranch, blue cheese, hot buffalo, honey BBQ or sweet mango habanero.

10

39.     Other companies, like Papa Johns, name the product "Chicken Poppers," and are also careful to inform consumers that the product is made of chicken breast meat. *See image below*.



**BUFFALO CHICKEN POPPERS**

All-white chicken breast lightly breaded, oven-baked, and drizzled with a spicy, tangy Buffalo sauce.

ORDER NOW

40.     It should be noted that Domino's Pizza and Papa Johns also sell actual chicken wings, and that, a restaurant named Buffalo Wild "Wings" should be just as careful if not more in how it names its Products.

41.     Plaintiff and Class members did not know, and had no reason to know, that the Products were not chicken wings because of how the Products are deceptively marketed and advertised.

42.     Plaintiff's and other consumers' reasonable belief that the Products are chicken wings was a significant factor, and therefore material, in each of their decisions to purchase

11

the Products. Chicken wings are a more premium and desirable product than a Product made of chicken breast meat.

43.     As the entities responsible for the development, ingredients, preparation, advertising, marketing, and sale of the Products, Defendants knew or should have known that the Products are falsely and deceptively marketed and advertised. Moreover, Defendants knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on its representations of the Products and be deceived. Indeed, as discussed in ¶¶ 35-36, Buffalo Wild Wings has responded to at least one customer complaint about the name of the Products being misleading.

44.     As outlined herein, consumers are willing to pay more for the Products based on the belief that the Products are chicken wings. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that the truth about the Products. Thus, through the use of misleading representations, Defendants command a price that Plaintiff and the Classes would not have paid had they been fully informed.

45.     Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendants' false and deceptive practices, as described herein.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of himself and all persons in the United States,

who within the relevant statute of limitations periods, purchased any of the Products ("Nationwide Class").

47.     Plaintiff also seeks to represent a subclass of all Illinois residents who purchased any of the Products in the state of Illinois within the relevant statute of limitations period ("Illinois Class").

48.     Excluded from the Classes are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

49.     Plaintiff reserves the right to modify or amend the class definitions with greater specificity after having had an opportunity to conduct discovery.

50.     <u>Numerosity:</u> The proposed classes and subclass are so numerous that joinder of all members would be impractical. The Products are sold in numerous states across the country, including Illinois, at numerous Buffalo Wild Wings restaurants. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable through discovery.

51.     <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over

questions affecting only individual Class members. These questions include, but are not limited to, the following:

a. Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the advertising, marketing, and sale of the Products;

b. Whether reasonable consumers are likely to be deceived by Defendants' marketing, advertising, and sale of the Products;

c. Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices;

d. Whether Defendants' unlawful conduct, as alleged herein, was intentional and knowing;

e. Whether Plaintiff and the Classes are entitled to damages and/or restitution, and in what amount;

f. Whether Defendants are likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g. Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

52. Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendants' deceptive marketing,

advertising, and sale of the Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Class members have been exposed to the same or substantially similar deceptive practice, as each of the Products have the same core deceptive name and description ("Boneless Wings"). Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

53. <u>Superiority</u>: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

54. <u>Typicality</u>: Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendants' uniform unlawful conduct as alleged herein.

55. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and his counsel.

56. Defendants have also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure

15

compatible standards of conduct toward the members of the Classes.

57.     This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that are generally applicable to the class members, thereby making final injunctive relief appropriate with respect to all Classes.

58.     This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the Classes predominate over any questions that affect only individual members, and because the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.

## FIRST CLAIM FOR RELIEF
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"),
815 ILCD 505/1, *et seq*.
(*for the Illinois Class*)**

59.     Plaintiff repeats the allegations contained in Paragraphs 1-58 above as if fully set forth herein.

60.     Plaintiff brings this claim individually and on behalf of the members of the proposed Illinois Class.

61.     As alleged herein, Defendants misrepresented that the Products were chicken wings.

62.     Plaintiff believed the Products he purchased were chicken wings, even though they were not.

63.     Defendants' false and deceptive representations and omissions about the meat in the Products are material in that they influence consumer purchasing decisions.

64.     Plaintiff and the Illinois Class relied on the representations and omissions and were deceived as a result. Plaintiff and the Illinois Class members would not have purchased the Products or paid as much if the true facts had been known about Products. As a result, they suffered damages and are entitled to all remedies available under the ICFA.

**SECOND CLAIM FOR RELIEF**
**Breach of Express Warranty**
(***for the Illinois Class***)

65.     Plaintiff repeats the allegations contained in Paragraphs 1-58 above as if fully set forth herein.

66.     Plaintiff brings this claim individually and on behalf of the members of the proposed Illinois Class.

67.     Uniform Commercial Code 810 ILCS 5/2-313 provides that: (a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise; and (b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

68.     As alleged herein, Defendants have expressly warranted in the marketing and advertising of the Products that they are chicken wings.

69.     These representations: (1) are affirmations of fact or promises made by Defendants to consumers that the Products are in fact chicken wings; (2) became part of the

17

basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representations; and (3) created an express warranty that the Products would conform to those affirmations of fact or promises. In the alternative, the representations about the Products ("Boneless Wings") are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the Products' name and description.

70.    Plaintiff and members of the Illinois Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

71.    Defendants have breached the express warranty made to Plaintiff and members of the Illinois Class by failing to make the Products with chicken wing meat.

72.    Plaintiff and members of the Illinois Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the Illinois Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with the Products.

73.    As a result, Plaintiff and members of the Illinois Class were injured as a direct and proximate result of Defendants' breach, and deserve to recover all damages afforded under the law.

74.    In or around January 2023, Plaintiff discovered Defendants' breach of express warranty. On January 26, 2023, Plaintiff, on behalf of himself and all other class members, sent Defendants a letter notifying Defendants of their breach.

**THIRD CLAIM FOR RELIEF**
**Common Law Fraud**
(***for the Illinois Class***)

75.     Plaintiff repeats the allegations contained in Paragraphs 1-58 above as if fully set forth herein.

76.     Plaintiff brings this claim individually and on behalf of the members of the proposed Illinois Class.

77.     As alleged herein, Defendants have willfully, falsely, and knowingly misrepresented the Products as being boneless chicken wings.

78.     Defendants' misrepresentations were material (i.e., they affected the purchasing decisions of Plaintiff and members of the Illinois Class), because the misrepresentations relate to the Products' composition and/or ingredients.

79.     Defendants knew or recklessly disregarded the fact that the Products are not chicken wings. Defendants intended to have Plaintiff and members of the Illinois Class rely on the Boneless Wing representations and purchase the Products as a result.

80.     Plaintiff and members of the Illinois Class have reasonably and justifiably relied on Defendants' misrepresentations when purchasing the Products, and if Plaintiff and members of the Illinois Class had known the truth about the Products, they would not have paid monies for the Products or would have paid less monies for the Products.

81.     For these reasons, Plaintiff and members of the Illinois Class have suffered monetary losses, including interest they would have accrued on these monies, as a direct and proximate result of Defendants' fraudulent conduct.

**FOURTH CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
(*for the Nationwide Class; in the alternative Illinois Class*)

82.     Plaintiff repeats the allegations contained in Paragraphs 1-58 above as if fully set forth herein.

83.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, Illinois Class against Defendants.

84.     As alleged herein, Defendants have intentionally and recklessly made misleading representations to Plaintiff and members of the Nationwide/Illinois Class, to induce them to purchase the Products. Plaintiff and members of the Nationwide/Illinois Class have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendants. Plaintiff and members of the Nationwide/Illinois Class therefore have been induced by Defendants' misleading and deceptive representations about the Products, and paid more money to Defendants for the Products than they otherwise would and/or should have paid.

85.     Plaintiff and members of the Nationwide/Illinois Class have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the Nationwide/Illinois Class.

86.     The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Nationwide/Illinois Class– i.e., Plaintiff and members of the Nationwide/Illinois Class did not receive the full value of the benefit conferred upon Defendants.

87.     Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit,

or compensation conferred upon them without paying Plaintiff and the Nationwide/Illinois Class back for the difference of the full value of the benefits compared to the value actually received.

88.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Nationwide/Illinois Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from its deceptive, misleading, and unlawful conduct as alleged herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully prays for following relief:

A.     Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representatives, and appointment of his counsel as Class counsel;

B.     A declaration that Defendants' actions, as described herein, violate the claims described herein;

C.     An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.     An award of all economic, monetary, actual, consequential, compensatory, and treble damages caused by Defendants' conduct;

E.     Injunctive relief;

F.      An award of punitive damages;

G.      An award to Plaintiff and his counsel of his reasonable expenses and attorneys' fees;

H.      An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff, on behalf of himself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: March 27, 2023

**TREEHOUSE LAW, LLP**

By:    /s/ Ruhandy Glezakos

Ruhandy Glezakos
Benjamin Heikali
10250 Constellation Blvd., Suite 100
Los Angeles, CA 90067
Telephone: (310) 751-5948
rglezakos@treehouselaw.com
bheikali@treehouselaw.com

*Attorneys for Plaintiff and the Putative Classes*