**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AIMEN HALIM, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>BUFFALO WILD WINGS, INC. and INSPIRE BRANDS, INC.,<br><br>        Defendants. | Case No.<br>1:23-cv-01495 |

---

## BUFFALO WILD WINGS, INC. AND INSPIRE BRANDS, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

---

Douglas Alan Albritton (Bar #6228734)
Matthew John Kramer (Bar #6283296)
ACTUATE LAW LLC
641 West Lake
5th Floor
Chicago, Illinois 60661
(312) -579-3108
doug.albritton@actuatelaw.com
matthew.kramer@actuatelaw.com

Jason D. Rosenberg (IL Bar# 6275801)
Andrew G. Phillips (*pro hac vice*)
Alan Pryor (*pro hac vice*)
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000 (telephone)
(404) 881-7777 (facsimile)
jason.rosenberg@alston.com
andrew.phillips@alston.com
alan.pryor@alston.com

*Attorneys for Buffalo Wild Wings, Inc. and Inspire Brands, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

PROCEDURAL BACKGROUND ..................................................................... 4

LEGAL STANDARD ........................................................................................ 5

ARGUMENT AND CITATION TO AUTHORITY ......................................... 5

I.      The Complaint Should Be Dismissed in its Entirety Because Plaintiff Cannot
        Establish Concrete Economic Harm Sufficient to Confer Article III Standing.......... 6

        A.      Plaintiff Fails to Show He Received Anything *But* the Benefit of His
                Bargain:  Boneless Wings that Are *Less Expensive* than Traditional Wings ........ 7

        B.      Plaintiff's Threadbare Allegations of a Price Premium Cannot Confer
                Standing ................................................................................................ 9

II.     The Complaint Should Be Dismissed in its Entirety Because Plaintiff Does
        Not—And Cannot—Plausibly Claim that "Boneless Wings" Mislead
        Reasonable Consumers .................................................................................. 11

        A.      The Reasonable Consumer Standard ................................................... 12

        B.      Reasonable Consumers Are Not Misled by BWW's "Boneless Wings" ............. 13

III.    Plaintiff's Claims Fail for Multiple, Independent Reasons ............................... 18

        A.      Plaintiff's Nationwide Unjust Enrichment Class Should Be Dismissed on
                Article III Standing and Rule 23 Grounds .......................................... 18

        B.      Plaintiff's Unjust Enrichment Claim Should Be Dismissed as Duplicative
                of Plaintiff's Other Claims ................................................................ 20

        C.      Plaintiff Lacks Standing to Pursue Injunctive Relief Because There Is No
                Risk He Will Again Be "Deceived" .................................................... 21

        D.      Inspire Should Be Dismissed under Rules 12(b)(2) and 12(b)(6) Because
                the Complaint Contains No Factual Allegations About It .................... 22

CONCLUSION ................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 5

*Ass'n Benefit Servs. v. Caremark Rx, Inc.*,
493 F.3d 841 (7th Cir. 2007) ......................................................................................... 21

*Axon v. Citrus World, Inc.*,
No. 18-cv-04162, 2019 WL 8223527 (E.D.N.Y. Jan. 14, 2019) .................................... 14

*Bakhtiari v. Doe*,
No. 22-cv-2406, 2022 WL 17593027 (N.D. Ill. Dec. 13, 2022) ..................................... 23

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ......................................................................................... 23

*Beardsall v. CVS Pharm., Inc.*,
953 F.3d 969 (7th Cir. 2020) ......................................................................................... 12

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ................................................................................ 13, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 5

*Bell v. Publix Super Mkts., Inc.*,
982 F.3d 468 (7th Cir. 2020) ......................................................................................... 12

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ..................................................................................... 5, 12

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ......................................................................................... 21

*Branham v. TrueAccord Corp.*,
No. 22-cv-00531, 2023 WL 2664010 (N.D. Ill. Mar. 28, 2023) ...................................... 6

*Brodksy v. Aldi Inc.*,
No. 20-cv-07632, 2021 WL 4439304 (N.D. Ill. Sept. 28, 2021) .................................... 12

*Brook v. McCormley*,
873 F.3d 549 (7th Cir. 2017) ........................................................................................... 5

*Brown v. Auto-Owners Ins. Co.*,
No. 21-cv-02597, 2022 WL 2442548 (N.D. Ill. June 1, 2022) ....................................... 19

*Camasta v. Jos. A. Bank, Clothiers, Inc.*,
   2013 WL 474509 (N.D. Ill. Feb. 7, 2013) ........................................................................ 10

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) ................................................................................... 21, 22

*Camasta v. Ohio Steaks Int'l, Inc.*,
   No. 12-cv-08285, 2013 WL 4495661 (N.D. Ill. Aug. 21, 2013) ...................................... 10

*Chen v. Dunkin' Brands, Inc.*,
   954 F.3d 492 (2d Cir. 2019) ................................................................................... 13, 16

*Chiappetta v. Kellogg Sales Co.*,
   No. 21-cv-03545, 2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ................................. passim

*Colella v. Atkins Nutritionals, Inc.*,
   348 F. Supp. 3d 120 (E.D.N.Y. 2018) ........................................................................... 10

*Conrad v. Boiron, Inc.*,
   869 F.3d 536 (7th Cir. 2017) ......................................................................................... 22

*Cowen v. Lenny & Larry's, Inc.*,
   No. 17-cv-1530, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017) ....................................... 19

*Cristia v. Trader Joe's Co.*,
   No. 22-cv-1788, 2022 WL 17551552 (N.D. Ill. Dec. 9, 2022) ....................................... 22

*Curry v. Revolution Labs., LLC*,
   No. 17-cv-2283, 2020 WL 1548504 (N.D. Ill. Apr. 1, 2020) ......................................... 23

*Davis v. Bank of Am. Corp.*,
   No. 16-cv-5993, 2017 WL 569159 (N.D. Ill. Feb. 13, 2017) ......................................... 23

*Dumas v. Diageo PLC*,
   No. 15-cv-1681, 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016) ....................................... 18

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ......................................................................... 12, 13, 14

*Floyd v. Pepperidge Farm, Inc.*,
   581 F. Supp. 3d 1101 (S.D. Ill. 2022) .......................................................................... 22

*Fullerton v. Corelle Brands, LLC*,
   No. 18-cv-4152, 2019 WL 4750039 (N.D. Ill. Sep. 30, 2019) ................................. 19, 20

*Geske v. PNY Techs., Inc.*,
   503 F. Supp. 3d 687 (N.D. Ill. 2020) .............................................................................. 6

*Gordon v. Chipotle Mexican Grill, Inc.*,
   344 F. Supp. 3d 1231 (D. Colo. 2018) ............................................................................ 8

*Haggerty v. Bluetriton Brands, Inc.*,
No. 21-13904, 2022 WL 17733677 (D.N.J. Dec. 16, 2022) ................................. 6, 9, 10, 11

*Harris v. Rust-Oleum Corp.*,
No. 21-cv-01376, 2022 WL 952743 (N.D. Ill. Mar. 30, 2022) ..................................... 19, 20

*Horist v. Sudler & Co.*,
941 F.3d 274 (7th Cir. 2019) ............................................................................... 21

*Ibarrola v. Kind, LLC*,
83 F. Supp. 3d 751 (N.D. Ill. 2015) ....................................................................... 21

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
No. 09-cv-3690, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) .................................... 19, 20

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018) ................................................................................. 9

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
No. 05-cv-2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006) ........................................ 20

*In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*,
869 F.3d 551 (7th Cir. 2017) ............................................................................. 1, 17

*Izquierdo v. Mondelez Int'l, Inc.*,
No. 16-cv-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ..................................... 9, 10

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
No. 20-cv-23392, 2021 WL 3666312 (S.D. Fla. Aug. 18, 2021) ....................................... 14

*Jessani v. Monini N.A., Inc.*,
744 F. App'x 18 (2d Cir. 2018) ........................................................................... 16

*Khoday v. Symantec Corp.*,
93 F. Supp. 3d 1067 (D. Minn. 2015), *as amended* (Apr. 15, 2015) ................................. 20

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) .............................................................................. 7, 8

*Kunz v. Liebovich Bros.*,
No. 15-cv-50279, 2016 WL 3093045 (N.D. Ill. May 31, 2016) ....................................... 23

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......................................................................................... 6

*Matlin v. Spin Master Corp.*,
921 F.3d 701 (7th Cir. 2019) ............................................................................... 5

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) ........................................................................... 6, 8, 9

iv

*Moore v. Trader Joe's Co.*,
 4 F.4th 874 (9th Cir. 2021) ................................................................................... 13, 16, 17

*Muir v. Nature's Bounty, Inc.*,
 No. 15-cv-9835, 2017 WL 4310650 (N.D. Ill. Sep. 28, 2017) ........................................ 20

*Parent v. MillerCoors LLC*,
 No. 3:15-cv-1204-GPC-WVG, 2015 WL 6455752 (S.D. Cal. Oct. 26, 2015) ..................... 15

*Pelayo v. Nestlé USA, Inc.*,
 989 F. Supp. 2d 973 (C.D. Cal. 2013) ................................................................... 13, 17

*Rapp v. Green Tree Servicing, LLC*,
 302 F.R.D. 505 (D. Minn. 2014) ................................................................................ 19

*Reinitz v. Kellogg Sales Co.*,
 No. 21-cv-01239, 2022 WL 181391 (C.D. Ill. June 2, 2022) ............................... 12, 13, 14

*Richburg v. Conagra Brands, Inc.*,
 No. 22-cv-2420, 2023 WL 1818561 (N.D. Ill. Feb. 8, 2023) ....................................... 20, 22

*Robinson v. Walgreen Co.*,
 No. 20-cv-50288, 2022 WL 204360 (N.D. Ill. Jan. 24, 2022) ........................................ 5, 12

*Sabo v. Wellpet, LLC*,
 282 F. Supp. 3d 1040 (N.D. Ill. 2017) ............................................................... 9, 10, 11

*Sarr v. BEF Foods, Inc.*,
 No 18-cv-6409, 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ........................................... 17

*Seljak v. Pervine Foods, LLC*,
 No. 21-cv-9561, 2023 WL 2354976 (S.D.N.Y. Mar. 3, 2023) ......................................... 15

*Silha v. ACT, Inc.*,
 807 F.3d 169 (7th Cir. 2015) ..................................................................................... 5

*Slawsby v. Champion Petfoods USA, Inc.*,
 No. 18-10701, 2023 WL 2647065 (D. Mass. Mar. 27, 2023) ........................................... 9

*Smith v. SMS Grp., Inc.*,
 No. 22-cv-1303, 2022 WL 15460279 (S.D. Ill. June 2, 2023) ........................................ 22

*Smith-Brown v. Ulta Beauty, Inc.*,
 No. 18-cv-610, 2019 WL 932022 (N.D. Ill. Feb. 26, 2019) .......................................... 20

*Sneed v. Ferrero U.S.A., Inc.*,
 No. 22-cv-1183, 2023 WL 2019049 (N.D. Ill. Feb. 15, 2023) ........................................ 12

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016) ............................................................................................. 5, 6

*Steinberg v. Icelandic Provisions, Inc.*,
    No. 21-cv-05568, 2022 WL 220641 (N.D. Cal. Jan. 25, 2022) ........................................ 18

*Suero v. NFL*,
    No. 22-cv-00031, 2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022)..................................... 15

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) .......................................................................................... 22

*Thompson v. Bayer Corp.*,
    No. 4:07-cv-00017, 2009 WL 362982 (E.D. Ark. Feb. 12, 2009) .................................... 19

*True v. Conagra Foods, Inc.*,
    No. 07-cv-00770, 2011 WL 176037 (W.D. Mo. Jan. 4, 2011) ......................................... 19

*Valiente v. Publix Super Mkts., Inc.*,
    No. 22-cv-22930, 2023 WL 3620538 (S.D. Fla. May 24, 2023) ........................... 7, 8, 9, 11

*Wach v. Prairie Farms Dairy, Inc.*,
    No. 21-cv-2191, 2022 WL 1591715 (N.D. Ill. May 19, 2022) ......................................... 12

*Warren v. Coca-Cola Co.*,
    No. 22-cv-06907, 2023 WL 3055196 (S.D.N.Y. Apr. 21, 2023).................................... 13, 15, 16, 17

*Wynn v. Topco Assocs., LLC*,
    No. 19-cv11104, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ......................................... 13

*Yu v. Dr Pepper Snapple Grp., Inc.*,
    No. 18-cv-06664, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020) .............................. 14

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 9(b) ................................................................................................................................ 5

Rule 12(b)(1) .......................................................................................................................... 5

Rule 12(b)(2) ..................................................................................................................... 22, 23

Rule 12(b)(6) ................................................................................................................. 5, 22, 23

Rule 23 ............................................................................................................................ 6, 18, 19

## STATUTES

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 I.L.C.S. 505/1 *et seq.* ...................... 4

## OTHER AUTHORITIES

*About The Onion*, The Onion, *available at* https://www.theonion.com/about (last accessed June
    10, 2023)........................................................................................................................ 2

*Buffalo Wild Wings Sued Over Claim that 'Boneless Wings' Aren't Wings*, The Onion, *available at* https://www.theonion.com/buffalo-wild-wings-sued-over-claim-that-boneless-wings-1850225671 (last accessed June 10, 2023).............................................................................................. 2

https://www.today.com/food/news/buffalo-wild-wings-lawsuit-boneless-wings-rcna74738 (last accessed June 10, 2023) ....................................................................................................... 1

**INTRODUCTION**

Plaintiff has a bone to pick with Buffalo Wild Wings, Inc.'s ("BWW") Boneless Wings. He filed this putative class action alleging that BWW's Boneless Wings are not actually deboned wings reformed into bite-sized finger foods, but instead are all-white meat chicken that are deep-fried and tossed in consumers' favorite sauces or rubs.

The trouble with Plaintiff's suit, though, is that no one has been deceived. In a tweet, BWW responded:

> It's true.
> Our boneless wings are all white meat chicken.
> Our hamburgers contain no ham.
> Our buffalo wings are 0% buffalo.

Buffalo Wild Wings (@BWWings), *Twitter* (Mar. 13, 2023). But why stop there? Popcorn shrimp do not have popcorn; hotdogs have 0% dog; pork butt is actually pork shoulder; and Moon Pies are not handcrafted by the man in the moon. Boneless Wings are no different from any of these terms that do not—and cannot—fool reasonable consumers. Though these claims have certainly created media buzz, Plaintiff and his "attorneys neglected to consider whether the claims had any merit." *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551, 553 (7th Cir. 2017). Clearly, they do not.

The public's incredulous response to Plaintiff's allegations was immediate. Covering the lawsuit, anchors on the Today Show—one of America's most storied morning shows—did not try to hide their skepticism that BWW engaged in false and deceptive marketing and advertising, quipping, "Is this *The Onion*?" *Man Sues Buffalo Wild Wings*, Today, *available* at https://www.today.com/food/news/buffalo-wild-wings-lawsuit-boneless-wings-rcna74738 (last

accessed June 10, 2023). Speaking of *The Onion*—the biggest satire news outlet in the world[1]—it wrote with tongue firmly in cheek: "Restaurants have been cheating us out of bones for years." *Buffalo Wild Wings Sued Over Claim that 'Boneless Wings' Aren't Wings*, The Onion (Mar. 15, 2023), *available at* https://www.theonion.com/buffalo-wild-wings-sued-over-claim-that-boneless-wings-1850225671 (last accessed June 10, 2023).

There are more problems with Plaintiff's suit. Reasonable consumers account for "all the information available to consumers and the context in which that information is provided and used." *Chiappetta v. Kellogg Sales Co.*, No. 21-cv-03545, 2022 WL 602505, at *4 (N.D. Ill. Mar. 1, 2022). Had Plaintiff done the same, he would have realized Boneless Wings are actually *less expensive* than BWW's traditional wings and that he therefore lacks any cognizable Article III injury. And, as discussed below, Plaintiff's proposed nationwide unjust enrichment class and claims against Inspire Brands, Inc. ("Inspire") similarly fail.

Plaintiff's allegations fail to state a plausible claim for relief, and the Court should dismiss the Amended Complaint in its entirety and with prejudice.

## BACKGROUND

Plaintiff alleges that the name and description of BWW's Boneless Wings on its menu is false and misleading because the Boneless Wings are made of all-white chicken breast meat. Am. Compl. (Dkt. 6) ("Am. Compl.") ¶¶ 1-2, 30. The Boneless Wings are, in fact, made of small cuts of boneless all-white meat chicken. Nevertheless, Plaintiff asserts that BWW's menu (the "Menu") and the term "Boneless Wings" lead reasonable consumers "to believe that the Products are

---

[1] *The Onion* sarcastically boasts the impossible: that it "is the world's leading news publication, offering highly acclaimed, universally revered coverage of breaking national, international, and local news events. Rising from its humble beginnings as a print newspaper in 1756, *The Onion* now enjoys a daily readership of 4.3 trillion and has grown into the single most powerful and influential organization in human history." *About The Onion*, The Onion, *available at* https://www.theonion.com/about (last accessed June 10, 2023).

actually boneless wings"—chicken wings that have been deboned and then reformed into bite-sized shapes. Am. Compl. ¶¶ 30-31.

But the materials referenced in Plaintiff's Amended Complaint amply demonstrate that there is no risk of deception here, *see* Am. Compl. ¶¶ 21-27, 30, BWW has sold Boneless Wings since 2003, and Plaintiff points to no effort to hide BWW's practices or pass off Boneless Wings as "deboned wings." For good reason: an article cited in the Amended Complaint notes that "it is nearly impossible, mechanically, for processors to debone a real chicken wing[.]". *See Superbowl Boneless Chicken Wings*, The Counter, attached to Defendants' Motion for



Judicial Notice ("MJN") as **Exhibit A**. The Amended Complaint also cites an article from *The New York Times*—now over a decade old—that observed that the sale of "boneless wings, . . . slices of breast meat deep-fried like wings and serves with the same sauces[,]" was commonplace across the country since the early 2000s. *See* "Boneless Wings, the Cheaper Bite," *The New York Times*, attached to the MJN at **Exhibit B**. And according to countless recipes readily available online, reasonable consumers recognize that Boneless Wings are *not* deboned chicken wings, but instead are made using boneless all-white chicken breast meat. *See infra*, Argument at Part II.B.

Even giving a cursory glance at the Menu reveals that no deception is afoot. BWW's Menu has a large "WINGS" section that offers a variety of winged *and* unwinged Buffalo-style options: Traditional (winged); Boneless (not winged); Cauliflower (not winged); and Tenders (not winged). *See* Menu, attached to the MJN as **Exhibit C**. Whether a customer fancies winged, unwinged, or vegetable, the Menu promises only that these "WINGS" offerings will be prepared Buffalo-style: "Handspun In Your Favorite Sauces or Dry Seasoning" with customers' choice of among 19 sauces and 5 dry rubs. *Id.* The Menu also makes clear that Boneless Wings *cost less than traditional chicken wings*—anywhere between 10.8% to 18% less depending upon the quantity ordered. Am. Compl. ¶¶ 3, 30; *see* MJN Ex. C. For a product that Plaintiff allegedly believed went through *additional* preparation—"deboned" and then reformed into bite-sized pieces—it should cost *more* (not less) than traditional wings.

In short, consumers' ordinary experiences demonstrate that Plaintiff's professed belief— that the Boneless Wings are deboned wings and reformed into processed, bite-sized chunks—is as unreasonable as it is unappetizing.

## PROCEDURAL BACKGROUND

Plaintiff filed suit on March 10, 2023, asserting four claims against BWW and Inspire. After the Court dismissed the suit for failure to properly plead diversity jurisdiction, Plaintiff filed the operative Complaint on March 27, 2023, asserting the following causes of action: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 I.L.C.S. 505/1 *et seq.* ("ICFA"); (2) breach of express warranty; (3) common law fraud; and (4) common law unjust enrichment. *See* Am. Compl. ¶¶ 59-88. He seeks to certify an Illinois subclass for all of his claims and a nationwide unjust enrichment class. *Id.* at ¶¶ 46-58. Plaintiff seeks to recover compensatory, punitive, and treble damages, restitution and disgorgement, injunctive relief, attorneys' fees, and litigation expenses. *Id.* at Prayer for Relief.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot carry this burden with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* Instead, a complaint's ***factual*** allegations "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court also must "draw on its judicial experience and common sense" to determine whether a claim is plausible. *Iqbal*, 556 U.S. at 679. Claims sounding in fraud, including a claim alleging deceptive practices in violation of ICFA, must also meet the heightened particularity standard under Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

A plaintiff also bears the burden to establish that a court may exercise jurisdiction both over the case and over each defendant. Under Rule 12(b)(1), Plaintiff bears the burden of establishing each of the three elements of standing under the same pleading standard as in *Twombly* and *Iqbal*, that a "claim to relief [be] plausible on its face." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff bears the same burden to proffer factual allegations showing that the Court may exercise personal jurisdiction over each defendant. *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017); *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019).

**ARGUMENT AND CITATION TO AUTHORITY**

Plaintiff's claims should be dismissed in their entirety because the Amended Complaint fails to establish the fundamental components of his claims: (1) Plaintiff cannot identify any concrete economic harm (or allege that Plaintiff received anything other than his bargain) to

establish Article III standing; (2) BWW's "Boneless Wings" do not mislead reasonable consumers; (3) Plaintiff's nationwide class claim fails for lack of standing and under Rule 23; (4) Plaintiff's unjust enrichment claim fails as duplicative of Plaintiff's other claims; (5) Plaintiff lacks standing to pursue injunctive relief; and (6) Plaintiff asserts no basis whatsoever for Inspire to remain in this case.

## I. The Complaint Should Be Dismissed in its Entirety Because Plaintiff Cannot Establish Concrete Economic Harm Sufficient to Confer Article III Standing.

The irreducible constitutional minimum of standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is '***concrete and particularized***' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (emphasis added) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

To establish that he suffered a "concrete and particularized" economic injury,[2] Plaintiff must raise plausible allegations that he purchased a product that was actually worth less than what he paid for it. *See, e.g.*, *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 697 (N.D. Ill. 2020); *accord McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020); *Haggerty v. Bluetriton Brands, Inc.*, No. 21-13904, 2022 WL 17733677, at *4 (D.N.J. Dec. 16, 2022). Relying on nothing more than conclusory rhetoric and threadbare allegations, Plaintiff cannot meet this standard. *See Branham v. TrueAccord Corp.*, No. 22-cv-00531, 2023 WL 2664010, at *4 (N.D. Ill. Mar. 28,

---

[2] Plaintiff's purported injury is purely economic. He alleges that he and putative class members did not "receive what they are promised" and otherwise paid a price premium for the Boneless Wings. Am. Compl. ¶¶ 4, 44.

2023) ("[D]istrict courts in the Seventh Circuit regularly find that vague and conclusory assertions of financial or monetary harm are insufficient to demonstrate a concrete injury for purposes of Article III standing.").

**A.** **Plaintiff Fails to Show He Received Anything *But* the Benefit of His Bargain: Boneless Wings that Are *Less Expensive* than Traditional Wings.**

Plaintiff cannot establish that he suffered a "concrete and particularized" economic injury for the simple reason that he purchased Boneless Wings that—across the board—are *less expensive* than BWW's traditional wings. *See* Ex. C. Plaintiff's benefit of the bargain theory rests on his subjective expectations that he was purchasing *deboned* chicken wings, *see, e.g.*, Am. Compl. ¶ 13, but Plaintiff cannot reconcile those unilateral assumptions with his actual experience. Restaurants already "pay extra to buy their wings pre-cut" to separate the flats from the drumettes. MJN Ex. B. To remove the bones from the wings entirely—which, make no mistake, is a practical impossibility (*see* MJN Ex. A)—would require even more preparation and even more costs. If Plaintiff truly expected deboned wings, he should have expected to pay *more* than traditional wings. Instead, he netted somewhere between 10 and 18% in savings by purchasing the Boneless Wings.

Plaintiff's savings have come home to roost, and they compel the dismissal of the Amended Complaint. ***First***, Plaintiff cannot square his conclusory allegations with the fact that the Boneless Wings are cheaper than BWW's traditional wings. *See, e.g.*, *Valiente v. Publix Super Mkts., Inc.*, No. 22-cv-22930, 2023 WL 3620538, at *5 (S.D. Fla. May 24, 2023); *see also Kim v. Carter's Inc.*, 598 F.3d 362, 364 (7th Cir. 2010). In *Valiente*, the court rejected similarly thin allegations that the plaintiff had been deprived of his bargain because the product (honey-lemon cough drops) lacked an appreciable amount of lemon. The court observed that the plaintiff did not adequately allege "that cough drops without images of lemons sell for less than those with such images" or

"even specifically allege that cough drops containing a non-*de minimis* amount of lemon have a higher fair market price." *Valiente*, 2023 WL 3620538, at *5. "[G]eneral allegations[,]" observed the court, fail to establish Article III standing because they do not "concretely tie the value of the cough drops to any of [the challenged] representations." *Id.* (emphasis in original).[3]

Here, Plaintiff raises no factual allegations demonstrating he received something less than what he paid for: a Boneless Wing, made of all-white meat chicken, fried, and then tossed in Plaintiff's favorite seasoning or sauce. Like in *Valiente* and *Kim*, the Amended Complaint "fails to concretely tie the value of the [Boneless Wings] to any of the[] purported representation[]" at issue in this suit. *Id.*; *Kim*, 598 F.3d at 365-66.

**Second**, Plaintiff cannot recast his unilateral assumptions as though they were included in the bargain for the Boneless Wings that he purchased. *See, e.g.*, *Valiente*, 2023 WL 3620538, at *5; *McGee*, 982 F.3d at 706 ("A plaintiff, however, must do more than allege that she did not receive the benefit she thought she was obtaining. The plaintiff must show that she did not receive a benefit for which she actually bargained."). The Boneless Wings are less expensive than traditional wings; the prices are listed right on the menu. *See* Ex. C. Plaintiff nevertheless assumed the impossible: that the Boneless Wings were chicken flats and drumettes that underwent *additional* preparation to be deboned and re-formed, but then sold at up to an 18% discount from the bone-in flats and drumettes. As the court in *Valiente* observed, Plaintiff's "allegations as to why he has been deprived of the benefit of his bargain all boil down to his subjective, personal

---

[3] The same principle holds true in other contexts. In *Kim*, the Seventh Circuit found that the plaintiffs "got the benefit of their bargain and suffered no actual pecuniary harm" because: (a) they agreed to pay a certain price for the defendant's clothing; (b) failed to plausibly allege the clothing was defective or worth less than what they paid for it; and (c) failed to allege that they "could have shopped around and obtained a better price in the marketplace." 598 F.3d at 365-66. Another court rejected benefit of the bargain allegations with the blunt analysis: "Plaintiffs paid for burritos; Plaintiffs received burritos." *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018).

expectations of what the [Boneless Wings] purported to [be]. This is not enough to plausibly allege a concrete economic injury. . ." *Valiente*, 2023 WL 3620538, at *5; *see also McGee*, 982 F.3d at 706 (the plaintiff's assumptions were "not part of the bargain to begin with"); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 281 (3d Cir. 2018) ("[B]uyer's remorse, without more, is not a cognizable injury under Article III of the United States Constitution.").

In short, Plaintiff paid for Boneless Wings. He received Boneless Wings. He does not and cannot establish that he has suffered any concrete injury sufficient to confer Article III standing.

## B. Plaintiff's Threadbare Allegations of a Price Premium Cannot Confer Standing.

Plaintiff's threadbare allegations similarly fail to establish that he paid a premium for the Boneless Wings. It is settled that a plaintiff must provide objective factual allegations supporting a claimed price premium. *See, e.g.*, *Valiente*, 2023 WL 3620538, at *5; *accord Sabo v. Wellpet, LLC*, 282 F. Supp. 3d 1040, 1041-42 (N.D. Ill. 2017); *Slawsby v. Champion Petfoods USA, Inc.*, No. 18-10701, 2023 WL 2647065, at *3 (D. Mass. Mar. 27, 2023). Conclusory rhetoric, such as reciting the word "premium," "does not make Plaintiff's injury any more cognizable." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016); *see also Haggerty*, 2022 WL 17733677, at *4 ("A plaintiff must do more than offer conclusory assertions of economic injury in order to establish standing.").

For instance, the court in *Haggerty* dismissed the case because the plaintiff failed to establish she suffered a concrete economic harm in purchasing the defendant's "100% Recyclable" bottled water products. It observed that the plaintiff failed "to put forth any facts regarding comparable or cheaper products to show [the p]laintiff paid a premium price." *Haggerty*, 2022 WL 17733677, at *10. Without additional facts, threadbare allegations—like "had a plaintiff known

about an alleged deficiency in a product, [she] would not have paid that price for said product"—
were insufficient to find an injury-in-fact. *Id.* at *9.

The Northern District of Illinois has applied the same principles to reject similarly
threadbare price premium claims:

> Still conspicuously absent from the  complaint are any straightforward assertions
> about the price of defendants' products; the price of comparable products not
> labeled 'Made in USA' (if, indeed such products exist, for the SAC does not allege
> that they do); or any other measurable criteria for comparing the position plaintiff
> and the class would have been in absent the alleged fraud with the position they
> were in as a result of their reliance on defendant's 'Made in USA' representation.

*Sabo*, 282 F. Supp. 3d at 1041-42; *Camasta v. Ohio Steaks Int'l, Inc.*, No. 12-cv-08285, 2013 WL
4495661, at *11 (N.D. Ill. Aug. 21, 2013) ("Aside from being speculative, these allegations do not
suggest that [the plaintiff] was denied the benefit of the bargain for there is no suggestion that [the
plaintiff] paid more than the actual value of the steaks."); *Camasta v. Jos. A. Bank, Clothiers, Inc.*,
2013 WL 474509, at *5 (N.D. Ill. Feb. 7, 2013) (concluding that a "conclusory allegation,
supported by no facts, does not support a plausible, not merely speculative, claim that [a plaintiff]
paid more than the [product's] value, rather than merely paying closer to the retail value than he
believed"). Still other courts agree that—at a minimum—objective, factual allegations are
necessary for a plausible price premium.[4]

Here, Plaintiff only asserts "threadbare allegations that, had a plaintiff known about an
alleged deficiency in a product, [he] would not have paid that price for said product, without more,

---

[4] *See, e.g.*, *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) ("A well pleaded
allegation that a plaintiff paid a premium may be sufficient to allege injury, however, plaintiff only
conclusorily asserts that [the defendant] charges a premium for its products and provides no facts regarding
what the premium was, what price he paid for the products, or the price of non-premium products."); *Izquierdo*, 2016 WL 6459832 at *7 (holding that merely alleging Sour Patch Watermelon candy is "more
expensive per ounce than other sweets on the market brings [plaintiffs] no closer to stating a claim for
injury" because "[c]omparing the Candy to Hot Tamales and Junior Mints is the saccharine equivalent of
comparing apples with oranges.").

[which are] insufficient to find an injury-in-fact." *Haggerty*, 2022 WL 17733677, at *4. Indeed, the Amended Complaint simply pecks at a circular allegation that Plaintiff paid a price premium because there is a price premium:

- "Thus, through the use of misleading representations, Defendants command a price that Plaintiff and the Classes would not have paid had they been fully informed." Am. Compl. ¶ 44.

- "Plaintiff and members of the Illinois Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the Illinois Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with the Products." *Id.* ¶ 72.

These allegations—**directly contradicted by the Menu showing that Boneless Wings are sold at a *discount*, rather than a *premium*, to traditional wings**—are exactly the sort of conclusory rhetoric that courts in the Seventh Circuit and across the country have found fail to establish a concrete injury. *See, e.g.*, *Sabo*, 282 F. Supp. 3d at 1041-42; *Haggerty*, 2022 WL 17733677, at *4; *Valiente*, 2023 WL 3620538, at *5 ("[Plaintiff] does not allege any facts by which one might measure the difference between the 'premium price' he claims to have paid and the [products'] fair market price.").

Put bluntly, Plaintiff's factual allegations are fully consistent with the conclusion that Plaintiff got what he purchased: boneless all-white chicken meat that is fried and handspun in Plaintiff's sauce or seasoning of choice. Consequently, Plaintiff does not—and cannot—establish that he has an injury in fact for Article III standing.

## II. The Complaint Should Be Dismissed in its Entirety Because Plaintiff Does Not—And Cannot—Plausibly Claim that "Boneless Wings" Misleads Reasonable Consumers.

Even if Plaintiff could establish Article III standing, the Court still should dismiss the Complaint in its entirety because the phrase "Boneless Wings" does not mislead reasonable consumers. All of Plaintiff's claims are premised on the notion that he was misled into believing

he was purchasing deboned chicken flats and drumettes. As Plaintiff apparently agrees, his claims are governed by the "reasonable consumer" standard but he comes nowhere close to satisfying it.[5] *See, e.g.*, Am. Compl. at ¶¶ 5, 6 (alleging the purported beliefs and expectations of "reasonable consumers").

## A.    The Reasonable Consumer Standard

To survive a motion to dismiss, Plaintiff must identify a particular statement or omission that is likely "likely to deceive reasonable consumers." *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 972-73 (7th Cir. 2020); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). To do so, Plaintiff must demonstrate "a probability that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled." *Chiappetta* 2022 WL 602505, at *3 (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). "Courts considering 'deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used.'" *Id.* at *4 (quoting *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020)). Moreover, an ordinary consumer's "day-to-day marketplace expectations" are highly relevant to the reasonable consumer analysis. *Wach v. Prairie Farms Dairy, Inc.*, No. 21-cv-2191, 2022 WL 1591715, at *5 (N.D. Ill. May 19, 2022) (quoting *Wynn v. Topco Assocs., LLC*, No. 19-cv11104, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021)).

---

[5] *See, e.g.*, *Robinson v. Walgreen Co.*, No. 20-cv-50288, 2022 WL 204360, at *6 (N.D. Ill. Jan. 24, 2022) (ICFA); *Reinitz v. Kellogg Sales Co.*, No. 21-cv-01239, 2022 WL 181391 at *6 (C.D. Ill. June 2, 2022) (fraud and express warranty); *Brodksy v. Aldi Inc.*, No. 20-cv-07632, 2021 WL 4439304, at *5 (N.D. Ill. Sept. 28, 2021) (express warranty); *Sneed v. Ferrero U.S.A., Inc.*, No. 22-cv-1183, 2023 WL 2019049, at *6 (N.D. Ill. Feb. 15, 2023) (unjust enrichment).

**B.      Reasonable Consumers Are Not Misled by BWW's "Boneless Wings".**

As courts across the country have held, a dismissal on the pleadings is well justified where (as here) a plaintiff's deceptive advertising claim is based on unreasonable or fanciful interpretations of the advertisement or where the information available to consumers dispels any such implausible understanding. *Chiappetta,* 2022 WL 602505, at *3; *see also, e.g.*, *Moore v. Trader Joe's Co.*, 4 F.4th 874, 883 (9th Cir. 2021); *Ebner*, 838 F.3d at 962; *Warren v. Coca-Cola Co.*, No. 22-cv-06907, 2023 WL 3055196, at *4-7 (S.D.N.Y. Apr. 21, 2023).

As the courts *Moore*, *Warren*, *Ebner*, *Daniel*, and others have found, the ordinary experience of and the information readily available to reasonable consumers make clear that Plaintiff's allegations are (at best) fanciful and implausible. ***First***, much like how "consumers know that Diet Dr Pepper is a different product from Dr Pepper" and does not guarantee weight loss, *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019), that pasta is not truly "natural" because "Buitoni Pastas are not springing fully formed from Ravioli trees and Tortellini bushes," *Pelayo v. Nestlé USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013), or even "the general mechanics of these dispenser tubes and further understands that some product may be left in the tube[,]" *Ebner*, 838 F.3d at 965, consumers also know in their ordinary experience that boneless wings are not made from deboned wings. A cursory review of any number of online recipes for "boneless wings" call for boneless chicken breast—not "deboned chicken wings"—and show that Plaintiff's interpretation is "not consistent with how the public understands and react to product advertising." *Reinitz v. Kellogg Sales Co.*, No. 21-cv-1239, 2022 WL 1813891, at *3 (C.D. Ill. June 2, 2022) (citing recipes to demonstrate that the plaintiff's interpretation is unreasonable); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (citing dictionary definitions to reject as implausible the plaintiff's claim that the term "steak" was deceptive and affirming dismissal). A selection of these recipes are collected as **Exhibit D** to the

MJN. Even the sources cited in the Amended Complaint accept as settled that boneless wings are made with all white chicken meat, *not* deboned chicken wings. *See* Am. Compl. ¶¶ 21-27; MJN Exs. A, B; *see also Axon v. Citrus World, Inc.*, No. 18-cv-04162, 2019 WL 8223527, at *2 (E.D.N.Y. Jan. 14, 2019) (rejecting "[t]he conclusions plaintiff draws from" materials cited and attached to the complaint but they do not support the plaintiff's conclusions); *Yu v. Dr Pepper Snapple Grp.*, Inc., No. 18-cv-06664, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020) (concluding that the plaintiff failed assert a plausible claim when the study the plaintiff relied on was only "tangentially related to Plaintiff's claims").[6] Indeed, the court need not look any further than mainstream news outlets and one of the most prominent satire news websites to conclude that consumers' common understanding does *not* align with Plaintiff's professed beliefs. *See supra,* at 1; *Chiappetta*, 2022 WL 602505, at *4 ("What matters most is how real consumers understand and react to the advertising.").

*Second*, Plaintiff cannot accuse BWW of a purported lack of "transparen[cy]" when it has sold Boneless Wings to the public for *over two decades*. Courts have rejected similar claims that reasonable consumers are deceived because the so-called deceptive practice "has been widely publicized[.]" *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, No. 20-cv-23392, 2021 WL 3666312, at *10 (S.D. Fla. Aug. 18, 2021) (dismissing consumer claim that the defendant misrepresented that it was only a "locally owned craft brewery, rather than by a subsidiary of the world's largest brewer" because its corporate ownership "has been widely publicized since the

---

[6] Plaintiff relies on a handful of news clippings, a commodities analyst, and a viral video of a Nebraska-based city council, but these one-off anecdotes only paint Plaintiff as an outlier. They do not—and cannot—make it plausible "that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled." *Chiappetta* 2022 WL 602505, at *3; *see, e.g.*, *Reinitz*, 2022 WL 1813891, at *3 ("Whether or not experts agree, Plaintiff fails to support that the average consumer would believe a fudge product must, of necessity, contain milkfat."); *see also Becerra* 945 F.3d at 1230 ("Just because some consumers may unreasonably interpret the term differently does not render the use of 'diet' in a soda's brand name false or deceptive.") (citing *Ebner*, 838 F.3d at 966).

brewery's inception"); *Parent v. MillerCoors LLC*, No. 3:15-cv-1204, 2015 WL 6455752, at *8 (S.D. Cal. Oct. 26, 2015) (concluding that no reasonable consumer could be misled into believing that Blue Moon was an "independently brewed, hand-crafted beer" when MillerCoors's ownership was publicly disclosed online, including on MillerCoors's website); *Suero v. NFL*, No. 22-cv-31, 2022 WL 17985657, at *13 (S.D.N.Y. Dec. 16, 2022) (rejecting false advertising claims challenging defendant's representations about access to a football stadium, "particularly given that route information, including actual travel time, is publicly available"). Here, Plaintiff cites a 14-year-old New York Times article about the proliferation of "boneless wings" made from "slices of breast meat deep-fried like wings and serves with the same sauces" since the 2000s. Am. Compl. ¶ 26 n. 3; MJN Ex. B. In fact, the Amended Complaint concedes, BWW has sold Boneless Wings since at least 2003. Am. Compl. ¶ 21. Plaintiff cannot now complain that he was tricked simply because he chose to ignore two decades of culinary history.

     *Third*, Plaintiff cannot claim that he was deceived by the Boneless Wings while ignoring the very information that would dispel any unreasonable understanding. *Chiappetta*, 2022 WL 602505, *4 (observing that considering "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used."); *accord Warren*, 2023 WL 3055196, at *4 ("The allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff and the context of the packaging as a whole must be considered in evaluating whether deception has occurred." (quoting *Seljak v. Pervine Foods, LLC*, No. 21-cv-9561, 2023 WL 2354976, at *13 (S.D.N.Y. Mar. 3, 2023))). Specifically, courts have routinely rejected deception claims because the price of the challenged product should have put the plaintiff on notice. *See, e.g., Warren,* 2023 WL 3055196, at *4 (observing that the "context provided by the term 'Hard Seltzer' is critical and fatal to

Plaintiff's claim," including the $1.50 price for a product because "surely [the plaintiff] knew that nobody sells a margarita for $1.50"); *Moore*, 4 F.4th at 884 (rejecting the plaintiff's interpretation that "100% New Zealand Manuka Honey" meant the honey was derived from bees foraging exclusively on manuka plants in part because of the low cost of defendant Trader Joe's product, which was notably less expensive than "purer" manuka honey offerings); *Chen v. Dunkin' Brands, Inc.,* 954 F.3d 492, 501 (2d Cir. 2020) ("Chen bought her Angus Sandwich for less than $4 and her Angus Wrap for less than $2. As the television advertisements themselves demonstrate, the Products are marketed as grab-and-go products that can be consumed in hand, without the need for a fork and knife. A reasonable consumer purchasing one of the Products from Dunkin Donuts in that context would not be misled into thinking she was purchasing an 'unadulterated piece of meat.'"); *Jessani v. Monini N.A., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (noting that no reasonable consumer would believe a bottle of truffle flavored olive oil contained real truffles, "the most expensive food in the world," in part because of its inexpensive price).

Here, BWW's menu pricing alone is sufficient to dispel any illogical assumption about the Boneless Wings because they cost anywhere between 10% and 18% *less* than traditional wings. *See* MJN Ex. C. Under Plaintiff's imagined reality, deboned chicken flats and drumettes would cost *more* than traditional wings because they would require further preparation, time, and cost than traditional wings. Plaintiff defies logic by asserting that reasonable consumers would believe that the Boneless Wings are traditional wings that have gone through *additional processing* to remove the bone, yet cost less than traditional wings.[7]

---

[7] What's more, the Amended Complaint asks that the Court suspend disbelief and ignore that "it is nearly impossible, mechanically, for processors to debone a real chicken wing." *See* MJN Ex. A. Given the sheer implausibility of Plaintiff's interpretation of the Products, a consumer of any level of sophistication could not reasonably interpret BWW's menu as Plaintiff claims. *See Moore*, 4 F. 4th at 883-84; *In re Subway Footlong*, 869 F.3d at 556-57 (dismissing proposed settlement because "consumers know . . . [that 'Subway

The context does not end there. The layout and other product names displayed in the "WINGS" section of the Menu also prevent any reasonable consumer from believing that Boneless Wings are composed of deboned chicken wings. Also included in the "WINGS" section are other products that no reasonable consumer would reasonably believe consist of chicken wing meat: cauliflower wings and chicken tenders. It would defy reason for a consumer to believe that a "cauliflower wing" is somehow made from the non-existent "wing" piece of a cauliflower. *See, e.g.*, *Sarr v. BEF Foods, Inc.*, No 18-cv-6409, 2020 WL 729883, at *5 (E.D.N.Y. Feb. 13, 2020) (rejecting challenge to "farm-fresh goodness" claim because common sense dictated that a mashed potatoes product "obviously requires some amount of processing between the cultivation of its ingredients on a farm and its arrival on the dinner table"); *Moore*, 4 F. 4th at 882-83 ("other available information about Trader Joe's Manuka Honey would quickly dissuade a reasonable consumer from the belief that [it] was derived from 100% Manuka flower nectar," regardless of any message conveyed by the product); *Warren*, 2023 WL 3055196, at *5 ("[C]ursory observation of the other items on sale in the beverage section of the ShopRite supermarket where she purchased the Product would have revealed soft drinks, beer, and hard ciders/lemonades/seltzers, but no hard liquor, cocktails, or wine. . . [G]iven those circumstances, it is simply not plausible that Plaintiff thought she was buying a product containing tequila."). So too here. Reasonable consumers would realize that, given the layout of the Menu, accompanying product names, and comparative price to traditional wings, Boneless Wings are exactly what reasonable consumers expect them to be: pieces of boneless, all-white chicken that are deep fried and "handspun in your favorite sauce or dry seasoning[.]" MJN Ex. C.

---

will never be able to guarantee that each loaf of bread will always be exactly 12 inches or greater in length after baking'] as a matter of common sense"); *Pelayo,* 989 F. Supp. 2d at 978.

In short, "[w]hat matters most is how real consumers understand and react to the advertising." *Chiappetta*, 2022 WL 602505, at \*4. Reasonable consumers would only believe that the term Boneless Wings refers to the style in which it is made, *not* that they are made with deboned chicken flats and drumettes. *Dumas v. Diageo PLC*, No. 15-cv-1681, 2016 WL 1367511, at \*4-6 (S.D. Cal. Apr. 6, 2016); *Steinberg v. Icelandic Provisions, Inc.*, No. 21-cv-05568, 2022 WL 220641, at \*6 (N.D. Cal. Jan. 25, 2022) ("[T]he word 'traditional Icelandic' on the package, [is] a term akin in function to 'Jamaican style' in *Dumas*."). Consumers' common understanding of the Product is precisely in line with what BWW delivers, and Plaintiff's allegation to the contrary should be dismissed as fanciful and implausible.

## III. Plaintiff's Claims Fail for Multiple, Independent Reasons

Although the previously discussed defects merit dismissing the Amended Complaint in full, the bulk of Plaintiff's claims and requested relief independently fail for additional reasons.

### A. Plaintiff's Nationwide Unjust Enrichment Class Should Be Dismissed on Article III Standing and Rule 23 Grounds

As multiple decisions in this District already have held, Plaintiff's nationwide unjust enrichment class—much like Boneless Wings—cannot even get off the ground.

***First***, Plaintiff lacks standing to bring claims under the laws of states where he did not purchase the Boneless Wings—i.e., every state ***other than*** Illinois. *See* Am. Compl. ¶ 13 (alleging that Plaintiff resides in and purchased the Boneless Wings in Illinois). To be sure, "[t]he Article III standing inquiry remains the same even if the case is proceeding as a class action." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-3690, 2013 WL 4506000, at \*8 (N.D. Ill. Aug. 23, 2013). "Courts in this District routinely dismiss or strike class claims where named plaintiffs seek to represent proposed class members from other states." *Brown v. Auto-Owners Ins. Co.*, No. 21-cv-02597, 2022 WL 2442548, at \*2 (N.D. Ill. June 1, 2022). Thus, because Plaintiff

attempts to assert class claims under the laws of the states in which he did not purchase the Boneless Wings—states in which he did not suffer any injury-in-fact—those claims should be dismissed. *In re Dairy Farmers*, 2013 WL 4506000, at *6-8 (collecting cases).

**Second**, Plaintiff's proposed nationwide unjust enrichment class fares no better under Rule 23 because the multiple, material conflicts among the 50 states' unjust enrichment laws would render the class unmanageable and subject litigants to different (and conflicting) legal rules. *See, e.g.*, *Cowen v. Lenny & Larry's, Inc.*, No. 17-cv-1530, 2017 WL 4572201, at *4-5 (N.D. Ill. Oct. 12, 2017) (rejecting nationwide class for unjust enrichment claim). Indeed, the Northern District of Illinois has routinely found that nationwide unjust enrichment classes are improper because of the "material conflicts among the fifty states' laws with respect to unjust enrichment claims." *See Harris v. Rust-Oleum Corp.*, No. 21-cv-01376, 2022 WL 952743, at *5 (N.D. Ill. Mar. 30, 2022) (collecting cases); *see Fullerton v. Corelle Brands, LLC*, No. 18-cv-4152, 2019 WL 4750039, at *14 (N.D. Ill. Sep. 30, 2019) ("As multiple courts in the Seventh Circuit have commented, district courts remain reluctant to manage nationwide classes for these types of claims [like unjust enrichment].").[8]

**Finally**, as many courts in this District have determined, the Court should conclude that Plaintiff's nationwide unjust enrichment class fails at the motion to dismiss stage. For starters, "there is plainly ample reason at this juncture to question whether [Plaintiff] will be able to pursue

---

[8] These conflicts span a range of substantive issues, including: (a) the lack of a single, controlling definition of unjust enrichment and its substantive elements, *True v. Conagra Foods, Inc.*, No. 07-cv-00770, 2011 WL 176037, at *9 (W.D. Mo. Jan. 4, 2011); (b) the applicable limitations period and when it begins, *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 519 (D. Minn. 2014); (c) the degree of misconduct necessary to state an unjust enrichment claim, *Thompson v. Bayer Corp.*, No. 4:07-cv-00017, 2009 WL 362982, at *4 (E.D. Ark. Feb. 12, 2009); and (d) additional injury requirements, *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1088-89 (D. Minn. 2015), *as amended* (Apr. 15, 2015). Putting it simply, "unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states." *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05-cv-2623, 2006 WL 3754823, at *1 n.3 (N.D. Ill. Dec. 18, 2006).

claims based on statutory causes of action created by states where [Plaintiffs] neither lived nor [were] injured." *Smith-Brown v. Ulta Beauty, Inc.*, No. 18-cv-610, 2019 WL 932022, at *5 (N.D. Ill. Feb. 26, 2019); *Richburg v. Conagra Brands, Inc.*, No. 22-cv-2420, 2023 WL 1818561, at *6 (N.D. Ill. Feb. 8, 2023) ("The court agrees with defendant that plaintiffs have not established standing for the nationwide classes because they have not alleged an injury in fact in those jurisdictions."); *In re Dairy Farmers*, 2013 WL 4506000, at *7 ("An Article III standing inquiry 'focuses on whether the plaintiff is the proper party to bring this suit.'"). Similarly, the Court should also conclude that Plaintiff cannot pursue a nationwide unjust enrichment class "at the pleading stage because the difficulty in Plaintiff['s] claims stem from the variance in the substantive law, which discovery cannot cure." *Fullerton*, 2019 WL 4750039, at *14; *accord Harris*, 2022 WL 952743, at *5 ("In fact, several courts in this District have found class treatment of unjust enrichment claims unsupportable at the pleading stage."); *Muir v. Nature's Bounty, Inc.*, No. 15-cv-9835, 2017 WL 4310650, at *8-9 (N.D. Ill. Sep. 28, 2017).

Plaintiff's nationwide unjust enrichment class, thus, should be dismissed.

### B. Plaintiff's Unjust Enrichment Claim Should Be Dismissed as Duplicative of Plaintiff's Other Claims

What's more, Plaintiff's claim for unjust enrichment fails on the merits. ***First***, Plaintiff's claim should be dismissed because it rests on the same deficient allegations as his other claims. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001) ("in the absence of any deception . . . the requisite violation of 'fundamental principles of justice, equity, and good conscience' [necessary for unjust enrichment] is not present"); *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007). ***Second***, an unjust enrichment claim is not an independent cause of action under Illinois law and cannot serve as a catchall when other claims fail. *See Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) ("Unjust enrichment is not a separate cause of action

under Illinois law."); *Ibarrola v. Kind, LLC,* 83 F. Supp. 3d 751, 761 (N.D. Ill. 2015) ("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery."). In this case, there is no meaningful distinction between Plaintiff's unjust enrichment claim and the other claims he raises. Therefore, no plausible basis exists for this claim to survive.

### C.   Plaintiff Lacks Standing to Pursue Injunctive Relief Because There Is No Risk He Will Again Be "Deceived"

Plaintiff lacks Article III standing to pursue injunctive relief because he does not face any risk of future harm. It is settled in the Seventh Circuit that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740-41 (7th Cir. 2014). Similarly, a plaintiff cannot establish he has Article III standing where, as here, he "is now aware of [the challenged] sales practices" and thus "is not likely to be harmed by the practices in the future." *Id.* at 741.

Plaintiff's prayer for injunctive relief fails as a matter of law.  In his Amended Complaint, Plaintiff concedes that he knows that the Boneless Wings contain all-white meat chicken. *See, e.g.*, Am. Compl. ¶ 3. Thus, regardless of whether Plaintiff previously held a sincere—yet irrational—misunderstanding about the Boneless Wings, that confusion now has been disabused by his admitted actual knowledge. *See, e.g.*, *Conrad v. Boiron, Inc.*, 869 F.3d 536, 542 (7th Cir. 2017) (Now "fully aware of the fact that [the product] is nothing but sugar water," plaintiff lacked standing to seek injunctive relief); *accord Camasta*, 761 F.3d at 741; *Cristia v. Trader Joe's Co.*, No. 22-cv-1788, 2022 WL 17551552, at *2 (N.D. Ill. Dec. 9, 2022). Moreover, Plaintiff's claims about his professed "desire to purchase the Products in the future" and metaphysical "doubt" about the future are failed allegations that myriad courts have rejected as insufficient to establish standing. *See, e.g.*, *Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1112-13 (S.D. Ill. 2022) (rejecting allegations that the plaintiff "intends to, seeks to, and will purchase the [products] again

when she can do so with the assurance its representations are consistent with its composition");
*Richburg*, 2023 WL 1818561, at *5 (dismissing prayer for injunctive relief because the plaintiffs
"indicate only that they would purchase the products again if defendant '[took] corrective action.'
This allegation presupposes injunctive relief, rather than compelling it.").

The Court should, therefore, dismiss Plaintiff's prayer for injunctive relief.

### D.      Inspire Should Be Dismissed under Rules 12(b)(2) and 12(b)(6) Because the Complaint Contains No Factual Allegations About It

The deficiencies in Plaintiff's Complaint do not stop there. Indeed, apart from a passing
reference to Inspire's state of incorporation (Delaware) and principal place of business (Atlanta,
Georgia), the Amended Complaint does not even try to allege facts about Inspire. The paucity of
allegations against Inspire do not—and cannot—provide a plausible basis for why Inspire should
remain in this case.

*First*, Plaintiff's barebones allegations cannot satisfy his burden to assert a prima facie case
for exercising personal jurisdiction over Inspire. *See Smith v. SMS Grp., Inc.*, No. 22-cv-1303,
2022 WL 15460279, at *4 (S.D. Ill. Oct. 27, 2022); *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th
Cir. 2010). The Amended Complaint simply lumps Inspire in with BWW under the label
"Defendants," *see generally* Am. Compl., but "[c]onclusory and unsupported allegations of the
involvement of all defendants" are not the sort of "well-pleaded facts that are taken as true in a
dispute over jurisdiction." *Curry v. Revolution Labs., LLC*, No. 17-cv-2283, 2020 WL 1548504,
at *1 (N.D. Ill. Apr. 1, 2020). Indeed, Plaintiff' allegations do not demonstrate that "Inspire Brands
directed its actions at Illinois, that [Plaintiff's] alleged injuries arise out of those actions, or that
Inspire Brands exercises" any sort of control over BWW. *Bakhtiari v. Doe*, No. 22-cv-2406, 2022
WL 17593027, at *7 (N.D. Ill. Dec. 13, 2022) (dismissing Inspire for lack of personal jurisdiction).

Just last year, this Court dismissed Inspire on personal jurisdiction grounds for a similarly uninspired effort. *See id.* It should do so again here and dismiss Inspire under Rule 12(b)(2).

*Second*, there are no factual allegations linking Inspire to the challenged conduct in this case, the Boneless Wings, or to Plaintiff's idiosyncratic beliefs or experience. *See Kunz v. Liebovich Bros.*, No. 15-cv-50279, 2016 WL 3093045, at *3 (N.D. Ill. May 31, 2016) (dismissing all claims against co-defendant where the complaint failed to include any factual allegations concern that defendant's conduct); *see also Davis v. Bank of Am. Corp.*, No. 16-cv-5993, 2017 WL 569159, at *1 (N.D. Ill. Feb. 13, 2017) (dismissing complaint that lumped the defendants together and failed to specify each individual defendant's conduct, observing that "[l]iability is personal . . . [and that e]ach defendant is entitled to know what he or she did that is asserted to be wrongful") (quoting *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)). Because of Plaintiff's abject failure to raise any factual allegations about Inspire, his claims against Inspire also should be dismissed under Rule 12(b)(6) for failure to state a claim.

## CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiff's claims in their entirety with prejudice.

Dated: June 27, 2023    Respectfully submitted,

        By: */s/ Jason D. Rosenberg*
           Jason D. Rosenberg (IL Bar# 6275801
           Andrew G. Phillips (*pro hac vice*)
           Alan F. Pryor (*pro hac vice*)

           Alston & Bird LLP
           1201 W. Peachtree Street
           Atlanta, Georgia 30309
           Phone: (404) 881-7000
           Fax: (404) 881-7777
           jason.rosenberg@alston.com
           andrew.phillips@alston.com
           alan.pryor@alston.com

           Douglas Alan Albritton (Bar #6228734)
           Matthew John Kramer (Bar #6283296)
           ACTUATE LAW LLC
           641 West Lake
           5th Floor
           Chicago, IL 60661
           (312) -579-3108
           doug.albritton@actuatelaw.com
           matthew.kramer@actuatelaw.com

           *Counsel for Buffalo Wild Wings, Inc. and Inspire Brands, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was filed on June 27, 2023, with the Court and served electronically through the CM/ECF system to all counsel of record registered to receive a Notice of Electronic Filing for this case.


<u>*/s/ Jason D. Rosenberg*</u>
Jason D. Rosenberg