**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

```
------------------------------------------------------  x
                                                        :
AIMEN HALIM, individually and on behalf                 :
of all others similarly situated,                       :     CASE NO. 1:23-cv-01495
                                                        :
                                                        :
                            Plaintiff,                  :
                                                        :      Honorable John J. Tharp, Jr.
                                                        :
              v.                                        :
                                                        :
BUFFALO WILD WINGS, INC. and                            :
INSPIRE BRANDS, INC.,                                   :
                                                        :
                            Defendants.                 :
                                                        :
------------------------------------------------------  x
```

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**AMENDED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF FACTS ..................................................................................... 2

III.   LEGAL STANDARD............................................................................................ 3

IV.   ARGUMENT ......................................................................................................... 3

    A.   Plaintiff Has Adequately Alleged That Reasonable Consumers Are Misled.................. 3

        1.  The Reasonable Consumer Standard……………..…………………………...3

        2.  Plaintiff Has Adequately Alleged That It Is Plausible For Reasonable Consumers To Be Misled By The Marketing Of The Products.………………….....……..……….4

        3.  The Context Of The Advertising Does Not Cure The Deceptive Conduct……….….9

    B.   Plaintiff Has Adequately Alleged He Suffered An Injury For Purposes Of Article III Standing ................................................................................................... 12

    C.   Plaintiff Can Maintain A Nationwide Unjust Enrichment Class At The Pleading Stage……………………………………………………………………………17

    D.   Plaintiff's Unjust Enrichment Claim Has Merit And Is Not Duplicative ...................... 19

V.    CONCLUSION.................................................................................................... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acosta-Aguayo v. Walgreen Co.*,
No. 22-CV-00177, 2023 WL 2333300 (N.D. Ill. Mar. 2, 2023)..............................................17

*Al Haj v. Pfizer Inc.*,
338 F. Supp. 3d 741 (N.D. Ill. 2018) .......................................................................................18

*Allegra v. Luxottica Retail N. Am.*,
341 F.R.D. 373 (E.D.N.Y. 2022) .............................................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................................3

*Beardsall v. CVS Pharmacy, Inc.*,
953 F.3d 969 (7th Cir. 2020) .....................................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................................3, 11

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) ........................................................................................2, 3, 8, 12

*Biffar v. Pinnacle Foods Grp., LLC*,
2016 WL 7429130 (S.D. Ill. Dec. 22, 2016)............................................................................13

*Brady v. Bayer Corp.*,
26 Cal. App. 5th 1156 (2018) ...................................................................................................11

*Calderon v. Procter & Gamble Co.*,
2023 WL 3627797 (N.D. Ill. May 24, 2023) .............................................................................8

*Camasta v. Omaha Steaks Int'l, Inc.*,
No. 12-CV-08285, 2013 WL 4495661 (N.D. Ill. Aug. 21, 2013) ...........................................14

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
516 F. Supp. 3d 370 (S.D.N.Y. 2021)........................................................................................5

*Carrol v. S.C. Johnsons & Son, Inc.*,
2018 WL 1695421 (N.D. Ill. Mar. 29, 2018)...........................................................................18

*Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020)........................................................................................................9

*Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*,
    24 F. Supp. 3d 750 (N.D. Ill. 2014) ...................................................................14

*Clark v. Blue Diamond Growers*,
    2023 WL 4351464 (N.D. Ill. July 5, 2023)........................................................16

*Cleary v. Philip Morris Inc.*,
    656 F.3d 511 (7th Cir. 2011) .............................................................................20

*Clemmons v. Upfield US Inc.*,
    2023 WL 2752454 (S.D.N.Y. Mar. 31, 2023) .....................................................11

*Dean v. Colgate-Palmolive Co.*,
    2018 WL 6265003 (C.D. Cal. Mar. 8, 2018).......................................................11

*In re Dial Complete Mktg. & Sales Pracs. Litig.*,
    312 F.R.D. 36 (D.N.H. 2015) .............................................................................15

*In re Dial Complete Mktg. & Sales Pracs. Litig.*,
    320 F.R.D. 326 (D.N.H. 2017) ...........................................................................15

*Donnellan v. Travelers Co., Inc.*,
    2022 WL 170046 (N.D. Ill. Jan. 18, 2022)........................................................6, 8

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
    326 F.R.D. 592 (N.D. Cal. 2018) .......................................................................16

*Flaherty v. Clinique Lab'ys LLC*,
    2021 WL 5299773 (N.D. Ill. Nov. 15, 2021) ......................................................18

*Geske v. PNY Techs., Inc.*,
    503 F. Supp. 3d 687 (N.D. Ill. 2020) ................................................................6, 8

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) ..............................................................16

*Haggerty v. Bluetriton Brands, Inc.*,
    No. CV2113904ZNQDEA, 2022 WL 17733677 (D.N.J. Dec. 16, 2022) ..............14

*Hobbs v. Gerber Prod. Co.*,
    2018 WL 3861571 (N.D. Ill. Aug. 14, 2018) ..........................................13, 14, 15

*Izquierdo v. Panera Bread Co.*,
    450 F. Supp. 3d 453 (S.D.N.Y. 2020)...................................................................5

*Jessani v. Monini N. Am., Inc.*,
    744 F. App'x 18 (2d Cir. 2018) ..........................................................................10

iv

*Johnston v. Kashi Sales, L.L.C.*,
  2022 WL 4103973 (S.D. Ill. Sept. 8, 2022) ...................................................................19

*Joseph v. TGI Friday's, Inc.*,
  2022 WL 17251277 (N.D. Ill. Nov. 28, 2022) .......................................................4, 5, 10, 18

*Kim v. Carter's Inc.*,
  598 F.3d 362 (7th Cir. 2010) ......................................................................................14

*Kinman v. Kroger Co.*,
  2022 WL 1720589 (N.D. Ill. May 27, 2022) .............................................................5

*Korte v. Pinnacle Foods Grp., LLC.*,
  2018 WL 1508855 (S.D. Ill. Mar. 27, 2018) .............................................................6

*Lanovaz v. Twinings N. Am., Inc.*,
  2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) ...........................................................16

*Lesorgen v. Mondelez Glob., LLC*,
  No. 3:22-CV-50375, 2023 WL 3568686 (N.D. Ill. May 19, 2023).........................13

*Lett v. City of Chicago*,
  946 F.3d 398 (7th Cir. 2020) ......................................................................................3

*Lynch v. Tropicana Prod., Inc.*,
  2013 WL 2645050 (D.N.J. June 12, 2013) .................................................................11

*Martin v. Reid*,
  818 F.3d 302 (7th Cir. 2016) ......................................................................................17

*McDonnell v. Nature's Way Prod., LLC*,
  2017 WL 1149336 (N.D. Ill. Mar. 28, 2017)..............................................................13

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ....................................................................................4

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) .........................................................................................9

*Payton v. County of Kane*,
  308 F.3d 673 (7th Cir. 2002) ......................................................................................17

*Pella Corp. v. Saltzman*,
  606 F.3d 391 (7th Cir. 2010) ......................................................................................17

*Roberts v. City of Chicago*,
  817 F.3d 561 (7th Cir. 2016) ......................................................................................3

*Smith v. Keurig Green Mountain, Inc.*,
   393 F. Supp. 3d 837 (N.D. Cal. 2019) ........................................................14

*Tex. Hill Country Landscaping, Inc. v. Caterpillar, Inc.*,
   522 F. Supp. 3d 402 (N.D. Ill. 2021) .........................................................18

*Thompson v. Bayer Corp.*,
   2009 WL 362982 (E.D. Ark. Feb. 12, 2009) ..........................................18, 19

*True v. Conagra Foods, Inc.*,
   2011 WL 176037 (W.D. Mo. Jan. 4, 2011) .................................................19

*Valiente v. Publix Super Mkts., Inc.*,
   2023 WL 3620538 (S.D. Fla. May 24, 2023) ...............................................14

*Vital Proteins LLC v. Ancient Brands, LLC*,
   2023 WL 157956 (N.D. Ill. Jan. 11, 2023) ....................................................4

*Wagner v. Gen. Nutrition Corp.*,
   2017 WL 3070772 (N.D. Ill. July 19, 2017)................................................18

*Warren v. Coca-Cola Co.*,
   2023 WL 3055196 (S.D.N.Y. Apr. 21, 2023)................................................9

*Willard v. Tropicana Mfg. Co., Inc.*,
   577 F. Supp. 3d 814 (N.D. Ill. 2021) ..........................................................4

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008) .....................................................................4

**Statutes**

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*...3, 14, 19

**Court Rules**

Fed. R. Civ. P. 12(d) ..................................................................................6

Fed. R. Civ. P. 15 ....................................................................................20

Fed. R. Civ. P. 23 ....................................................................................17

Fed. R. Civ. P. 56 ......................................................................................6

## I.      INTRODUCTION

There is no question that Defendant's marketing is literally false. Buffalo Wild Wings ("BWW") sells "Boneless Wings" that are not wings at all, but instead, pieces of chicken breast, deep-fried like wings. BWW contends that no reasonable consumer would believe its Boneless Wings are deboned chicken wings, but there is no reason for consumers to think otherwise based on the name of the Products or the information on the menu. Plaintiff's allegations are all the more reasonable given that BWW is a national restaurant chain that specializes in selling chicken wings, and sells its Boneless Wings right alongside its actual wings. Indeed, "the first question they ask you is, 'would you like boneless wings, or our traditional.'" Am. Compl. ¶ 27.

In response to such allegations, BWW could have simply corrected its advertising by including a disclaimer on the menu, or perhaps by changing the name of the products from "Boneless Wings" to "Chicken Poppers," like its competitors. Instead, BWW decided to go low, issuing a brazen official response: "We don't give a s---."[1] Such hubris should not be rewarded, especially when BWW's motive is quite simple: profits. As detailed in the Amended Complaint, BWW sells "Boneless Wings" because the cost of chicken breast is cheaper than the cost of chicken wings. But a profit motive does not justify false advertising that puts the onus on consumers to ascertain whether the "Boneless Wings" are actually boneless wings.

BWW's legal response fares no better. BWW contends that reasonable consumers would know based on the price of the Boneless Wings that they cannot be made of wing meat because de-boning chicken wings is costly and requires additional processing. Similarly, BWW argues that reasonable consumers would not expect the Boneless Wings to contain wing meat because online recipes for boneless wings call for the use of chicken breast, not wing meat. As detailed below,

_____

[1] https://www.instagram.com/p/Csrb6kYuuJS/?igshid=YzcxN2Q2NzY0OA==

1

such arguments go beyond the four corners of the complaint, and rely on untested questions of fact regarding consumer knowledge, behaviors, and expectations—none of which are appropriate for resolution at the pleading stage. In any event, BWW's arguments are far removed from what consumers experience when they go to Buffalo Wild Wings. Consumers are not looking up online recipes, or researching the various factors that might be affecting the market price of BWW's Boneless Wings. Consumers are taking a few minutes to decide their orders, based on a generous range of options, and are relying on BWW's explicit representations. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020) ("Consumer-protection laws do not impose on average consumers an obligation to question the labels they see on food products and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product.") (citing *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019) ("[A] parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures . . . .Nor does the law expect this of the reasonable consumer.")).

Lastly, BWW's arguments as to Article III standing and injury fail because Plaintiff has adequately alleged that he would not have purchased "Boneless Wings" or would have paid significantly less for them, had he known the truth about them. For these reasons, and as further outlined below, BWW's Motion to Dismiss ("Motion" or "Mot.") should be denied.[2]

## II.    STATEMENT OF FACTS

This class action seeks to challenge the false and deceptive advertising of BWW's Boneless

---

[2] Plaintiff does not oppose the dismissal of Defendant Inspire Brands, Inc. Plaintiff will also not be opposing the dismissal of his claim for injunctive relief.

Wings (the "Products"). Amended Class Action Complaint ("Am. Compl.") (ECF No. 6) ¶ 1. Specifically, the name and description of the Products (i.e., as "Boneless Wings") leads reasonable consumers to believe the Products are actually chicken wings. In other words, that the Products are chicken wings that have been deboned, and as such, are comprised of chicken wing meat. *Id*. ¶ 2. Unbeknownst to Plaintiff and other consumers, the Products are not wings at all, but instead, chicken breast meat deep-fried like wings.

III.    **LEGAL STANDARD**

A complaint must "state a claim to relief that is plausible on its face." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept the complaint's factual allegations, and all reasonable inferences that can be drawn from those allegations in the plaintiff's favor, as true. *Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020).

IV.    **ARGUMENT**

A.    **Plaintiff Has Adequately Alleged That Reasonable Consumers Are Misled**

1.    The Reasonable Consumer Standard

Courts apply the reasonable consumer standard in evaluating the likelihood of deception, as required to establish violation of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); this standard requires a practical and fact-intensive approach to consumer behavior. 815 ILCS 505/1 *et seq*; *Bell*, 982 F.3d at 478. At the pleading stage, to meet the reasonable consumer standard, plaintiffs need only "nudge[ ] their claims across the line from conceivable to plausible." *Bell*, 982 F.3d at 476 (citing *Twombly*, 550 U.S. at 570). "[D]ismissal as a matter of law should

3

occur only in 'rare situations.'" *Willard v. Tropicana Mfg. Co.*, *Inc.*, 577 F. Supp. 3d 814, 833 (N.D. Ill. 2021) (citing *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).

Indeed, as noted by this Court, even if the defendant has its own reasonable reading of a label or advertisement, its burden in moving to dismiss is "to demonstrate—as a matter of law—*that [plaintiff's] reading is unreasonable*." *Vital Proteins LLC v. Ancient Brands, LLC*, 2023 WL 157956, at *5 (N.D. Ill. Jan. 11, 2023) (emphasis added) (citing *Bell*, 982 F.3d at 476-77).

2.    Plaintiff Has Adequately Alleged That It Is Plausible For Reasonable Consumers To Be Misled By The Marketing Of The Products

This is not one of those "rare situations" where BWW can demonstrate that Plaintiff's interpretation of the challenged claim is "unreasonable." *Willard*, 577 F. Supp. 3d at 831; *Williams*, 552 F.3d at 939. First, the name of the Products is literally false – they are called "Boneless Wings" when the Products are not wings at all. *See Joseph v. TGI Friday's, Inc.*, 2022 WL 17251277, at *6-7 (N.D. Ill. Nov. 28, 2022) (denying motion to dismiss, holding that plaintiff's interpretation of "Mozzarella Stick Snacks" as a product containing mozzarella cheese was plausible).

Furthermore, the Products are sold at a restaurant chain called Buffalo Wild ***Wings***,[3] which specializes almost entirely in selling chicken wings. Am. Compl. ¶ 18; *Joseph*, 2022 WL 17251277, at *7 ("If [the Mozzarella Stick Snacks do] not contain mozzarella cheese, why market it under the TGIF logo, which has a strong correlation to the hot appetizer mozzarella sticks, which presumably contain some quantity of mozzarella cheese?"); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020) ("Moreover, the brand name of [a product] itself could be misleading."). This says nothing of the fact that when consumers go to Buffalo Wild Wings, they

_____

[3] Per BWW's website, the name "Buffalo Wild Wings" is a reference to "Buffalo, New York-style wings." *See  https://careers.buffalowildwings.com/us/en/our-story*. Thus, it is reasonable for consumers to believe that the name Buffalo Wild Wings is a reference to chicken wings, and not a fanciful name, as BWW would contend.

4

are usually presented with one of two options—"would you like boneless wings, or our traditional." *Id*. ¶ 26. It is no accident that Boneless wings and regular wings are being sold side by side. If more were needed, there is nothing on the menu that could reasonably tip off consumers that the Products are only made of chicken breast. ¶ 30. For example, several restaurants use fanciful names (e.g., "chicken poppers") or clear disclaimers on the menu (e.g., "made with 100% whole white ***breast*** meat") to avoid misleading consumers. *Id*. ¶¶ 38-39. Without such cues, it is reasonable for consumers to rely on the name of the Products.

Based on similar allegations, several courts have found that reasonable consumers could be misled. *See Joseph*, 2022 WL 17251277, at *6-7; *Kinman v. Kroger Co.*, 2022 WL 1720589, at *6 (N.D. Ill. May 27, 2022) (denying motion to dismiss where a product labeled "smoked gouda" was not smoked because plaintiff's understanding was "not an inherently fanciful or unreasonable interpretation" and "the word 'smoked' has at least two meanings, one of which is the meaning plaintiff gave it"); *Izquierdo v. Panera Bread Co*., 450 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) ("I find it plausible that, as in *Mantikas*, the 'Blueberry' label, in context, falsely impl[ies] that the [blueberry] content is entirely or at least predominantly [blueberries] whereas in fact, taking Plaintiff's allegations as true, the imitation blueberry component exceeds the real blueberry component.") (internal quotation marks omitted); *Campbell v. Whole Foods Mkt. Grp., Inc*., 516 F. Supp. 3d 370, 383-85 (S.D.N.Y. 2021) (holding that reasonable consumers plausibly expect a product, which has a name that references specific ingredients, to not only contain that ingredient, but to be a predominant component of the product).

Still, BWW contends that Plaintiff's allegations are fanciful and implausible because consumers know through their ordinary experience that boneless wings are not made from deboned

wings.[4] Mot. at 13. In support, BWW relies on online recipes for boneless wings that call for boneless chicken breast, rather than deboned chicken wings. *Id*. However, this is outside the four corners of the complaint, and should not be considered on a motion to dismiss. *See Korte v. Pinnacle Foods Grp., LLC.*, 2018 WL 1508855, at *3 (S.D. Ill. Mar. 27, 2018) ("The picture is a matter outside the pleadings, and under *F.R.C.P.* 12(d), the Court may either exclude it from consideration or convert the motion to one for summary judgment under F.R.C.P. 56 and give the parties an opportunity to present materials pertinent to summary judgment."); *Donnellan v. Travelers Co., Inc.*, 2022 WL 170046, at *2 (N.D. Ill. Jan. 18, 2022) ("Normally, the court does not consider matters outside the pleadings in ruling on a motion to dismiss.") (citing Fed. R. Civ. P. 12(d)); *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 705 fn. 3 (N.D. Ill. 2020) ("[Defendant] goes outside the pleadings on a motion to dismiss, which is reason enough to deny the motion (on this point, at least)."). Regardless, the existence of online recipes is irrelevant to what consumers experience in store. Consumers are going to Buffalo Wild Wings because they enjoy eating wings, not because they enjoy ***cooking*** wings. The assertion that consumers look at online recipes for boneless wings is an assumption that cannot be reasonably drawn from Plaintiff's allegations, and at the very least, is an untested question of fact not suited for resolution at this stage.

BWW also argues that the sources cited in the Amended Complaint "accept as settled that boneless wings are made with all white chicken, *not* deboned chicken wings." Mot. at 14 (citing Am. Compl. ¶¶ 21-27; MJN Exs. A, B). Not so. The sources cited in the Amended Complaint

---

[4] BWW also relies on absurd analogies to support its motion, noting that "popcorn shrimp" does not contain popcorn, "hotdogs" have 0% dog, "pork butt" is actually pork shoulder, and "Moon Pies" are not handcrafted by the man in the moon. Mot. at 1. But these are clearly fanciful food names. No reasonable consumer would think that moon pies are crafted on the moon, that hotdogs contain actual dog meat, or that their shrimp dishes contain actual pieces of popcorn. Further, "popcorn shrimp" actually contains shrimp, whereas Boneless Wings contain no wing meat. As to pork butt, it is likely that reasonable consumers are also being deceived by the name of the product.

explain that companies like Buffalo Wild Wings began selling boneless wings due to the rising cost of actual chicken wings, and continued the practice because it was profitable. *See* Am. Compl. ¶¶ 21-27; MJN Ex. A ("'boneless' branding is emerging as a viable solution . . . for retailers who can't afford the real ('traditional') thing. Take, for example, Buffalo Wild Wings. Whitman notes the chain replaced its half-priced-Tuesday deals with a boneless promotion—a move that cut costs, boosted earnings, and temporarily staved off acquisition. (The chain's sales had slumped before the boneless bump.)."). However, never once do the sources state or imply that it is accepted **amongst consumers** that boneless wings are made with chicken breast, not deboned chicken wings. *See* Am. Compl. ¶¶ 21-27; MJN Exs. A, B. In fact, the sources cited in the Amended Complaint state the opposite. MJN Ex. A ("I mean, no, it's not a wing at all. . . Is it fair? I don't know what the rules are. ***It's misleading****. . . .* Truth in advertising be damned.") (emphasis added); MJN Ex. B ("Boneless wings, increasingly promoted by restaurants, are not wings at all, but slices of breast meat deep-fried like wings and served with the same sauces a bit like a spicy Chicken McNugget."). Thus, BWW's argument is unfounded.

Lastly, BWW contends that mainstream news outlets and one of the most prominent satire news websites show "that consumers' common understanding does *not* align with Plaintiff's professed beliefs." Mot. at 14. First, contrary to BWW's contention, most of the news covering Plaintiff's case has been unbiased, largely reciting Plaintiff's allegations and Buffalo Wild Wings' reaction to such claims.[5] Surely, this is because BWW has literally engaged in false advertising, and even though this case is about a food product (i.e., "boneless wings"), his claims are warranted. The fact that two news outlets poke fun at the idea that a case could be about boneless wings—

---

[5] *See e.g.*, https://twitter.com/CNN/status/1636823504644390928; https://www.foxbusiness.com/economy/buffalo-wild-wings-admits-boneless-wings-not-wings-after-lawsuit-its-true.

which overlooks the fact that advertising in the food industry is omnipresent—does not mean that Plaintiff's allegations are any less plausible. Further, BWW is attempting to bring in two news sources that should not be considered because they are outside the pleadings. *See Donnellan*, 2022 WL 170046, at *2; *Geske*, 503 F. Supp. 3d at 705 fn. 3. In contrast, the Amended Complaint includes cites to news outlets like the New York Times that support his allegations. Am. Compl. ¶¶ 22, 34, & ¶ 35.[6] In any event, the opinion of two news outlets, which are merely attempting to stir the pot to generate ratings, is hardly a representative sample of reasonable consumers, and whether such consumers are being misled should be based on Plaintiff's allegations. As BWW acknowledges, "what matters most is how ***real consumers*** understand and react to the advertising." *See Bell*, 982 F.3d at 476 (emphasis added).

The "reasonable consumer" standard requires a "practical and fact-intensive approach to consumer behavior," and thus, how reasonable consumers understand a label is usually a question of fact not resolved on a motion to dismiss. *Calderon v. Procter & Gamble Co.*, 2023 WL 3627797, at *6 (N.D. Ill. May 24, 2023) (citing *Bell*, 982 F.3d at 478, 483); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("'This determination of the likelihood of deception 'is an impressionistic one more closely akin to a finding of fact than a conclusion of law.'") (citing *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 762 (7th Cir. 2014)). Thus, it is plausible for

---

[6] BWW also states that prior to the filing of this case, it was widely publicized that its Boneless Wings were made from slices of breast meat deep-fried like wings. Mot. at 14-15. In support, BWW cites to the New York Times article referenced in the Amended Complaint, and states that the Amended Complaint concedes that BWW has sold Boneless Wings since at least 2003. Mot. at 15. First, even though BWW has been selling Boneless Wings since 2003, it can hardly be said that based on a single article from the New York Times that BWW's deceptive conduct was ***widely*** publicized. Further, the extent to which other articles exist discussing BWW's conduct, the popularity of such articles, accessibility of such information, and whether such information widely publicized BWW's conduct are all questions of fact not appropriate for resolution at the pleading stage. *See e.g.*, *Calderon*, 2023 WL 3627797, at *6 (citing *Bell*, 982 F.3d at 478, 483).

reasonable consumers to be misled by the name and description of the Products ("Boneless Wings"), and Plaintiff should be allowed to proceed with his claims.

        3.     <u>The Context Of The Advertising Does Not Cure The Deceptive Conduct</u>

BWW also relies on a litany of cases to argue that the price of the Products alone is sufficient to dispel any misconception because the Products cost anywhere between 10% to 18% less than traditional wings. Mot. at 15. BWW contends that this belies Plaintiff's allegations because if reasonable consumers believed the Products were actually wings that went through additional processing, they would cost more, not less than traditional wings. *Id.*

As an initial matter, in none of the cases cited by BWW was the price of the product alone sufficient to dispel consumer deception. Instead, a multitude of factors were considered that collectively made it impossible for reasonable consumers to have been misled. *See, e.g., Warren v. Coca-Cola Co.*, 2023 WL 3055196, at *4-7 (S.D.N.Y. Apr. 21, 2023) (finding that a "Margarita Hard Seltzer" did not mislead reasonable consumers because plaintiff's arguments reflected a strained reading that is inconsistent with the product's labeling and common sense, the product's labeling contrasts sharply with the labels of products that contain tequila, and had plaintiff "lived in New York for any length of time, she would know that cocktails containing hard liquor are not and cannot be sold in grocery stores."); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021) (affirming dismissal of claims challenging "100% New Zealand Manuka Honey" based on *inter alia* the FDA's Honey Guidelines, the fact that it is impossible for bees to forage from one floral source, and a sticker on the product disclosing to consumers the concentration of honey derived from Manuka flower nectar); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500–01 (2d Cir. 2020) (finding that a beef patty marketed as Angus Steak was not misleading because *inter alia* the word steak is defined as "ground beef" and the beef patty contained some "Angus beef.");

*Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (finding that an olive oil product could not mislead reasonable consumers into believing it contained real truffles because the product's ingredient list contains no reference to the word truffle, the front label described the product as only being "Truffle ***Flavored***," and plaintiff admitted truffles are "the most expensive food in the world.").

Here, unlike the cases cited by BWW, there are no additional context clues like a disclosure (e.g., "made with all-white chicken breast") or a fanciful name (e.g., "Boneless Wyngz") that could reasonably tip off consumers that the Products are not wings. Am. Compl. ¶ 30. Without these basic indications, it is plausible for reasonable consumers to be misled by a menu that plainly states "Boneless Wings."

BWW also asserts that "Plaintiff defies logic by asserting that reasonable consumers would believe that the Boneless Wings are traditional wings that have gone through *additional processing* to remove the bone, yet cost less than traditional wings." Mot. at 16. But this argument is flawed for several reasons. First, there are approximately 1,150 Buffalo Wild Wing locations in the United States. Am. Compl. ¶ 20. Reasonable consumers could plausibly believe that a company of this size and experience has a process to readily and inexpensively debone the Products, or that BWW purchases the Products wholesale, from a manufacturer that benefits from economies of scale and as a result, can debone the Products inexpensively. To the extent BWW is contending that it is not possible to cheaply debone the Products, reasonable consumers are not expected to know these limitations, or understand the capabilities of a company's manufacturing process, especially at the pleading stage. *See Joseph*, 2022 WL 17251277, at *7 ("Defendants' only argument against this interpretation is that because the Product is a 'shelf-stable, crunchy snack product,' it could not feasibly contain mozzarella cheese. Defendants' common sense approach must fail under

10

prevailing caselaw at this stage of the case. The Seventh Circuit's decision in *Bell* is on point. In that case, the Court of Appeals rejected the district court's 'common sense' argument that a reasonable consumer could not reasonably assume that shelf-stable parmesan cheese would be nothing but parmesan cheese.") (citing *Bell*, 982 F.3d at 482); *Clemmons v. Upfield US Inc.*, 2023 WL 2752454, at *7 (S.D.N.Y. Mar. 31, 2023) ("And to the extent [defendant] asserts that it is impossible to make 'plant butter' where olive oil is the predominant oil, a reasonable consumer is not expected to have an intimate understanding of the chemical properties of olive oil vis-à-vis the other vegetable oils or a sense of what ratio of oils is feasible."); *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1173 (2018) ("A reasonable consumer might very well think it possible, in the early 21st Century, to package a full day's supply of vitamins in one gummie. Certainly this court—made up of reasonable consumers—has no sense of whether that is or is not possible."); *Lynch v. Tropicana Prod., Inc.*, 2013 WL 2645050, at *7 (D.N.J. June 12, 2013) (finding no evidence that consumers understand the "intricacies relating to the shelf life and processing of the orange juice" when reading the "100% pure and natural" representation on the label).

Additionally, there are a multitude of reasons why BWW might sell the Products at a discounted price. For example, reasonable consumers could plausibly believe that the Products are discounted for promotional reasons, to increase overall sales (e.g., through increased alcohol sales), to build customer loyalty, to attract new customers, or to compete with other businesses.[7] *See e.g.*, *Dean v. Colgate-Palmolive Co.*, 2018 WL 6265003, at *9 (C.D. Cal. Mar. 8, 2018) (". . .

---

[7] BWW states that "the Amended Complaint asks that the Court suspend disbelief and ignore that 'it is nearly impossible, mechanically, for processors to debone a real chicken wing.'" Mot. at 16 fn 7 (citing MJN Ex. A). This contention is misplaced because the Products can be ***manually*** deboned by a chef or cook. BWW does not contend that this process would be "nearly impossible" or so expensive that it would be "impossible" for reasonable consumers to believe the Products are wings. Thus, there is nothing in the preparation of a boneless wing that would make unreasonable for consumers to be misled.

competitor pricing, advertising, promotional activity, packaging, and product development, all of which are competitive forces [defendant's expert] has admitted can influence market prices."). Thus, it should not be assumed that reasonable consumers see that the Products are slightly cheaper and that they immediately leap to the conclusion that the Products are not chicken wings. Indeed, a six count of Boneless Wings is only $1.20 cheaper than BWW's traditional wings.[8]

In any event, the Seventh Circuit has held that while the context surrounding an advertisement can play a role in deciding whether reasonable consumers have been misled, such an inquiry is usually a question of fact that is not appropriate for resolution at the pleading stage. *Bell*, 982 F.3d at 476 ("We agree with the district court that the context of the entire packaging is relevant. We disagree about applying that principle in this case as a matter of law on the pleadings."). Thus, Plaintiff has adequately alleged consumer deception, and the context of the Products does not show otherwise, particularly at the pleading stage.

**B.    Plaintiff Has Adequately Alleged He Suffered An Injury For Purposes Of Article III Standing**

BWW also contends that Plaintiff has failed to allege that he suffered an economic injury for purposes of Article III standing because Plaintiff relies "on nothing more than conclusory rhetoric and threadbare allegations." Mot. at 6. Not so. Plaintiff alleges that he was financially injured because he purchased the Products based on the "Boneless Wings" representation, reasonably believing that the Products contained wing meat, and had he known the truth about the

---

[8] BWW also contends that the name of other products on the menu prevents reasonable consumers from being misled. Mot. at 17. Specifically, BWW states the reasonable consumers would not believe the Products consist of wing meat because products like "cauliflower wing" and "chicken tenders" also appear in the "WINGS" section of the menu, which would tipoff consumers. *Id*. But "cauliflower wing" is clearly a fanciful name because cauliflowers do not have wings. Furthermore, the name "chicken tenders" undermines BWW's argument because chicken tenders are often made from chicken tenderloin.

Products, he "would not have purchased them, or would have paid significantly less for them." Amended Compl. ¶¶ 13-14, 42.[9] For this reason, Plaintiff has suffered an injury in fact and lost money as a result of BWW's false and deceptive practices. *Id.* ¶ 43.

This is all that is required at the pleading stage. A plaintiff adequately pleads injury for purposes of Article III standing by alleging that he or she would not have purchased the challenged product or would not have paid the same price for it had he or she known the truth about it. *See Hobbs v. Gerber Prod. Co.*, 2018 WL 3861571, at *9 (N.D. Ill. Aug. 14, 2018) (Tharp, J.) (holding that plaintiff has adequately alleged pecuniary loss by pleading that "she would not have purchased [the challenged products] at all, or would not have purchased it at the price at which it was sold, absent Gerber's allegedly false and misleading statements") (citing cases); *Lesorgen v. Mondelez Glob., LLC*, No. 3:22-CV-50375, 2023 WL 3568686, at *2 (N.D. Ill. May 19, 2023) ("Although [defendant] narrowly focuses on Ms. Lesorgen's subjective belief, the standing inquiry is not as limited. A simple statement that Ms. Lesorgen would not have purchased the Trident "Original Flavor," or would have paid less for it, if not for [defendant's] alleged misrepresentations is sufficient to confer standing.") (dismissed on other grounds). *McDonnell v. Nature's Way Prod., LLC*, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017) (allegations that plaintiff "paid more for the products than they were actually worth" and "would not have purchased the vitamins at the price she paid if she had known that they contained foreign-sourced vitamins" sufficed to plead actual pecuniary loss); *Biffar v. Pinnacle Foods Grp., LLC*, 2016 WL 7429130, at *4 (S.D. Ill. Dec. 22, 2016) (holding that plaintiff's allegation that price of muffin mix was "more than the value of the muffin mix as sold and that she would not have purchased it or would have paid less

---

[9] BWW conveniently omits these specific allegations in describing Plaintiff's price premium allegations. Mot. at 11.

for it had she known it contained synthetic ingredients" was sufficient to plead a plausible theory of actual damages).[10] As such, Plaintiff has sufficiently alleged injury and Article III standing.[11]

Still, BWW contends that Plaintiff has not adequately alleged injury because the Products are purportedly "less expensive than BWW's traditional wings." Mot. at 7. BWW also contends that Plaintiff failed to include additional facts, including pricing of competitor products, to show that Plaintiff paid a price premium. Mot. at 9. But whether the Products cost less, equal to, or more than BWW's traditional wings or competitor products is irrelevant to Plaintiff's allegation that he would have paid significantly less *for the Products* had he known the truth about them. In other words, this allegation is based on his belief that the Products were wings, not on the price of BWW's traditional wings, or even the price of competitor products. *Smith v. Keurig Green*

---

[10] While some of these cases addressed injury under the ICFA, the same analysis has been applied by this Court in addressing Article III standing. *See, e.g., Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*, 24 F. Supp. 3d 750, 756 (N.D. Ill. 2014) (Tharp, J.) (holding that plaintiff had sufficiently alleged Article III standing by alleging that it paid more for the challenged product than it otherwise would have had it known the truth).

[11] BWW rely heavily on *Valiente v. Publix Super Mkts., Inc.*, 2023 WL 3620538 (S.D. Fla. May 24, 2023) and *Haggerty v. Bluetriton Brands, Inc.*, No. CV2113904ZNQDEA, 2022 WL 17733677, at *1 (D.N.J. Dec. 16, 2022) in support of its position. Mot. 7-9. But *Valiente* and *Haggerty* are unpublished, out of circuit decisions that are inconsistent with this Court's decision in *Hobbs*, as well as the weight of the authority in this Circuit, which has held that specific pricing allegations are not necessary to allege Article III standing, particularly at the pleading stage.

BWW's reliance on *Kim v. Carter's Inc*., 598 F.3d 362, 363 (7th Cir. 2010) and *Camasta v. Omaha Steaks Int'l, Inc*., No. 12-CV-08285, 2013 WL 4495661 (N.D. Ill. Aug. 21, 2013), both of which were "false sale" cases, is equally unavailing because the alleged damages in *Kim* and *Camasta* were based on the plaintiffs purchasing "sale" products with a fictitious regular price that never existed. The courts held that the plaintiffs had not suffered a pecuniary loss because they agreed to purchase items for a certain price and did not allege that the value of what they received was less than the value of what they were promised. *Kim*, 598 F.3d at 365; *Camasta*, 2013 WL 4495661 at *11. Boiled down, the plaintiffs' allegations were that they did not receive as much of a discount as expected, which was insufficient to establish injury. Here, Plaintiff alleges that the value of what he received (a product that did not contain wing meat), was less than what he paid for (a boneless wing), because he would have paid less for it had he known the truth about it. As such, *Kim* and *Camasta* are distinguishable.

*Mountain, Inc.*, 393 F. Supp. 3d 837, 844 (N.D. Cal. 2019) ("that Keurig's recyclable and non-recyclable pods cost the same does not negate Plaintiff's alleged injury, as the price of Keurig brand substitutes does not change that Plaintiff alleges she paid more for the Pods than she otherwise would have because she thought they were recyclable."). Indeed, in *Hobbs*, this Court rejected a similar argument that plaintiff must allege "what other infant formulas were selling for" in order to establish injury, aptly noting that such argument "confuses price and value:"

> [plaintiff] is uniquely situated to know whether she would have purchased [the challenged product] at the same price absent the allegedly false and misleading statements; she says she would not have and the Court is bound to accept that statement for purposes of evaluating the motion to dismiss. And an allegation that the purchase would not have been made, at all, or at the same price, absent the fraud renders at least some portion of the purchase a loss.

2018 WL 3861571, at *9.

> Moreover, as noted in *In re Dial Complete Mktg. & Sales Pracs. Litig.*:[12]

> The term "premium" is better described as the amount of money consumers pay to acquire a certain attribute of a product. Assuming the allegations in this case to be true, [class members] have paid to purchase antibacterial attributes of Dial Complete they did not receive, and they have thus been damaged as a result thereof. ***This is true whether the price of the product is higher, lower, or the same as other products without the attribute***. The costs of including the anti-bacterial agent becomes embodied in the price of the product in the same way all other costs such as packaging, advertising[,] etc. and are paid for by all class members regardless of the reasons they may have purchased the product.

312 F.R.D. 36, 77 n. 25 (D.N.H. 2015) (emphasis added).

The same is true here. There are various attributes that ultimately comprise the end price of the Products, including the "Boneless Wings" representation, which has a value to Plaintiff and

---

[12] The court in *In re Dial* initially denied class certification because plaintiffs had "provided insufficient detail regarding their proposed methodologies for calculating classwide damages." 312 F.R.D. at 78. Ultimately, the plaintiffs filed a renewed motion for class certification, which was granted by the court. *In re Dial Complete Mktg. & Sales Pracs. Litig.*, 320 F.R.D. 326, 337 (D.N.H. 2017). Plaintiffs are confident that at the class certification stage, they will be able to provide the Court with a damages model sufficiently tied to their theory of liability.

other consumers. This is true regardless of whether the price of the Products is higher, lower, or the same as BWW's traditional wing products.

Prices are the result of multiple dynamic factors, including the attributes a certain product has or does not have. A simplistic price comparison does not control for any of these differences or other factors, and therefore cannot say anything about whether the "Boneless Wings" claim carries value in the Products. *See Lanovaz v. Twinings N. Am., Inc.*, 2014 WL 1652338, at *6 (N.D. Cal. Apr. 24, 2014) (holding that an expert's damages model which "would compare the price of [the challenged product] to the price of 'comparable' products that do not have the antioxidant label. . . has no way of linking the price difference, if any, to the antioxidant label[.]"); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 604 (N.D. Cal. 2018) ("But as a matter of common sense, it would not be conceptually sound to simply compare prices as [defendant] suggests, because this would not account for any of the range of other possible reasons for these products to be priced so similarly."). Moreover, as noted in *Allegra v. Luxottica Retail N. Am.*:

> A defendant's own pricing behavior does not necessarily provide a perfect beforeand-after scenario for observing whether consumers did, in fact, pay a price premium because [s]uch a test does not take into account economic harm *or the potential benefit to a defendant in increased market share caused by a misrepresentation* that induces consumers to purchase a product they otherwise would not have purchased.

341 F.R.D. 373, 445 (E.D.N.Y. 2022) (internal quotation marks omitted) (emphasis added).

In any event, BWW's argument is wholly premature as the amount of any price premium is necessarily the subject of complex expert analysis based on econometric techniques such as conjoint analysis or hedonic regression. *See, e.g., Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1104-11 (N.D. Cal. 2018) (discussing such techniques). This analysis can take place only after sufficient discovery and months of expert work. *See, e.g., Clark v. Blue Diamond Growers,* 2023 WL 4351464, at *2 (N.D. Ill. July 5, 2023) (rejecting argument that "no price premium exists

because [defendant] sells all its flavored almonds for the same price," reasoning that such a contention is "a matter for summary judgment, not a motion to dismiss."). As such, the Court should reject this argument and hold that Plaintiff has sufficiently alleged Article III standing.

### C. Plaintiff Can Maintain A Nationwide Unjust Enrichment Class At The Pleading Stage

BWW proffers a few reasons why it believes Plaintiff cannot maintain his unjust enrichment claims. First, BWW claims that Plaintiff cannot seek to represent a nationwide unjust enrichment class because he purportedly lacks standing to pursue claims under the laws of states where he did not purchase the Products. Mot. at 18. BWW is conflating the standing inquiry with the inquiry under Rule 23 regarding Plaintiff's suitability to serve as a class representative. Courts, including the Seventh Circuit, have rejected attempts to apply a *standing inquiry* to prematurely eliminate putative multi-state class claims. Indeed, "[i]n *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), the Seventh Circuit distinguished the standing inquiry from 'the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative.'" *Acosta-Aguayo v. Walgreen Co.*, No. 22-CV-00177, 2023 WL 2333300, at *8 (N.D. Ill. Mar. 2, 2023) (quoting *Payton*, 308 F.3d at 677).

Further, it is abundantly clear that the Seventh Circuit has never held "that nationwide classes are impermissible as a matter of law," and instead has "found certification to be appropriate for" other consumer class actions. *Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2016). The Seventh Circuit has explicitly stated that "there is not and should not be a rule" to that effect. *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010).

BWW further argues that even if the nationwide unjust enrichment class was analyzed under Rule 23, the Court should dismiss Plaintiff's claims because of purported variations among different states' unjust enrichment laws. Mot. at 19. Not so. First, BWW fails to mention that

"courts 'in this district have largely declined to strike nationwide class allegations at the pleading stage *where a party argued that a variation in state laws made a nationwide class impracticable*.'" *Flaherty v. Clinique Lab'ys LLC*, 2021 WL 5299773, at \*7 (N.D. Ill. Nov. 15, 2021) (emphasis added). This is primarily because, at the pleading stage, the record is inadequately developed to properly determine whether there are truly any conflicts *material enough* to preclude certification. *Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at \*9 (N.D. Ill. July 19, 2017) (concluding that it would be "sensible to wait to conduct the relevant [class certification] analysis until the issues are fully briefed and the record is fully developed"); *Tex. Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 409–12 (N.D. Ill. 2021) (concluding that it was premature to strike class allegations where movant offered a superficial choice of law analysis, and the issues raised would benefit from discovery); *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 757–58 (N.D. Ill. 2018) (declining to strike class allegations at the pleading stage); *Carrol v. S.C. Johnsons & Son, Inc.*, 2018 WL 1695421, at \*5 (N.D. Ill. Mar. 29, 2018) (denying defendant's motion to strike nationwide class claims as premature).

Here, BWW has only cited various authorities declining to certify nationwide unjust enrichment classes, but that does not meet its burden on a motion to dismiss. *See* Mot. at 19. BWW has failed to demonstrate whether any variances in unjust enrichment laws make a difference *in this case*. *See Joseph*, 2022 WL 17251277, at \*9 (denying defendants' attempt to dismiss nationwide class, noting that "Defendants further fail to offer an 'in-depth analysis of the many ways in which the laws of the states that comprise the proposed classes conflict.'") (citation omitted). BWW's authorities prove this point. *See* Mot. at 19. For example, BWW relies on *Thompson v. Bayer Corp.*, 2009 WL 362982, at \*4 (E.D. Ark. Feb. 12, 2009), where defendants "submitted a ***nationwide review*** of the law of unjust enrichment" to show that "there are ***actual***

18

conflicts . . . ." *Id.* at *3. BWW also cites to *True v. Conagra Foods, Inc.*, 2011 WL 176037, at *9 (W.D. Mo. Jan. 4, 2011), but there, the court noted a discrepancy in the unjust enrichment laws of particular states when *applied to the case at hand*. Specially, the court stated that there "is an important legal distinction **in this case** because there is no evidence that any Plaintiff purchased a pot pie directly from ConAgra; instead, the Plaintiffs indirectly conferred a benefit on ConAgra by purchasing the pot pies from a retailer." *Id.*[13] Given that consumers cannot purchase the Products from other retailers (e.g., McDonalds), but only Buffalo Wild Wings, this purported variation is inconsequential in this case. Given BWW's failure to demonstrate that any purported differences are material *in this case*, BWW's argument in this regard is unavailing.

Thus, Plaintiff should be permitted to proceed with his nationwide unjust enrichment claim because BWW has failed to offer a true analysis of any purported variations among different states' unjust enrichment laws.

### D.    Plaintiff's Unjust Enrichment Claim Has Merit And Is Not Duplicative

Next, BWW argues that Plaintiff's unjust enrichment claim fails because Plaintiff's other claims purportedly fail. Mot. at 20. However, as detailed *supra*, Plaintiff has set forth a plausible interpretation of the Products' marketing, sufficient to withstand a motion to dismiss. Under Illinois law, if a plaintiff's ICFA claim survives, so does his unjust enrichment claim. *Johnston v. Kashi Sales, L.L.C.*, 2022 WL 4103973, at *13 (S.D. Ill. Sept. 8, 2022).

BWW also argues that because unjust enrichment is purportedly not an independent cause of action under Illinois law, the Court should dismiss Plaintiff's unjust enrichment claim. Mot. at 20-21. First, Plaintiff has provided ample authority in the previous section where Illinois courts

---

[13] Supporting Plaintiff's previous argument that BWW's argument is premature, the *True* decision was dealing with class certifications briefing, not at the pleading stage. *See True*, 2011 WL 176037.

19

have routinely permitted unjust enrichment claims to proceed past the pleading stage despite concurrently-plead consumer protection claims. Further, BWW is incorrect that there is no standalone cause of action for unjust enrichment in Illinois. "The Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (citing *Raintree Homes, Inc. v. Vill. of Long Grove*, 209 Ill.2d 248, 282 (2004)). After surveying numerous Illinois Supreme Court cases, the Seventh Circuit has noted that "[f]rom these cases, it appears that the Illinois Supreme Court recognizes unjust enrichment as an independent cause of action." *Cleary*, 656 F.3d at 516. Thus, while some courts have recognized that unjust enrichment is not a standalone cause of action, they are in the minority and are inconsistent with the law of the Illinois Supreme Court. Thus, Plaintiff's unjust enrichment claim is an independent cause of action, and he should be allowed to proceed with his claim.

## V.      CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny BWW's Motion in its entirety, except as to the dismissal of Defendant Inspire Brands, Inc. and Plaintiff's claim for injunctive relief, as noted in footnote 2, *supra*. If the Court is however inclined to grant any other part of the Motion, Plaintiff respectfully requests leave to amend pursuant to Rule 15.


DATED: July 27, 2023                          **TREEHOUSE LAW, LLP**

                                              By:     /s/ *Ruhandy Glezakos*

                                              Ruhandy Glezakos
                                              Benjamin Heikali
                                              10250 Constellation Blvd., Suite 100
                                              Los Angeles, CA 90067
                                              Telephone: (310) 751-5948
                                              rglezakos@treehouselaw.com
                                              bheikali@treehouselaw.com

20

*Attorneys for Plaintiff and the*
*Putative Classes*