**EIN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AIMEN HALIM, individually and on behalf of all others similarly situated, <br><br>        Plaintiff, <br><br>        vs. <br><br> BUFFALO WILD WINGS, INC. and INSPIRE BRANDS, INC., <br><br>        Defendants. | Case No. <br> 1:23-cv-01495 |

---

**BUFFALO WILD WINGS, INC. AND INSPIRE BRANDS, INC.'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

---

Douglas Alan Albritton (Bar #6228734)
Matthew John Kramer (Bar #6283296)
ACTUATE LAW LLC
641 West Lake
5th Floor
Chicago, Illinois 60661
(312) -579-3108
doug.albritton@actuatelaw.com
matthew.kramer@actuatelaw.com

Jason D. Rosenberg (Bar# 6275801)
Andrew G. Phillips (*pro hac vice*)
Alan Pryor (*pro hac vice*)
Sarah Parker (*pro hac vice*)
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000 (telephone)
(404) 881-7777 (facsimile)
jason.rosenberg@alston.com
andrew.phillips@alston.com
alan.pryor@alston.com
sarah.parker@alston.com

*Attorneys for Buffalo Wild Wings, Inc. and Inspire Brands, Inc.*

## TABLE OF CONTENTS

Page(s)

**INTRODUCTION** ............................................................................................... 1

**ARGUMENT AND CITATION TO AUTHORITY** ........................................ 2

**I.** **Conclusory Allegations Do Not—and Cannot—Establish that Plaintiff Has Article III Standing, *Especially* when the Pleadings Refute His Baseless Claims of Injury.** ................................................................................ 2

    A. *The Pleadings Establish that Plaintiff Received What He Paid For— Boneless, Deep-Fried Chicken that Is Less Expensive than Traditional Wings.* ................................................................................ 3

    B. *Conclusory Allegations that Plaintiff Would Not Have Bought Boneless Wings Had He Known the "Truth" Cannot Establish a Concrete Injury-In-Fact.* ................................................................................ 5

**II.** **Plaintiff Cannot Plausibly Allege that "Boneless Wings" Misleads Reasonable Consumers.** .................................................................. 6

    A. *Plaintiff Contorts the Reasonable-Consumer Standard Beyond Recognition.* ................................................................................ 6

    B. *Plaintiff Cannot Plausibly Allege that Reasonable Consumers Are Deceived by "Boneless Wings" When Available Information Demonstrates the Opposite.* ....................................................... 7

        1. Plaintiff's Interpretation of "Boneless Wings" Is Contrary to the Ordinary Experience of Reasonable Consumers. ..................... 8

        2. Plaintiff Cannot Credibly Claim Deception When the Context Surrounding His Purchase Prevents Any Unreasonable Understanding. ...................................................................... 10

    C. *Plaintiff Relies on Cases that Support Dismissal.* ....................... 12

**III.** **Plaintiff Cannot Maintain a Nationwide Unjust Enrichment Class.** ......... 14

**IV.** **Plaintiff's Unjust Enrichment Claim Falls with His ICFA Claim.** ........... 15

**CONCLUSION** .................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
    572 F.3d 440 (7th Cir. 2009) ................................................................................2

*Beardsall v. CVS Pharm., Inc.*,
    953 F.3d 969 (7th Cir. 2020) ...............................................................................7

*Bell v Publix Super Mkts., Inc.*,
    982 F.3d 468 (7th Cir. 2020) ...........................................................7, 8, 12, 13

*Benson v. Fannie May Confections Brands, Inc.*,
    944 F.3d 639 (7th Cir. 2019) ...............................................................................6

*Biffar v. Pinnacle Foods Grp.*,
    2016 WL 742913 (S.D. Ill. Dec. 22, 2016)....................................................3, 6

*Bober v. Glaxo Wellcome PLC*,
    246 F.3d 934 (7th Cir. 2001) .............................................................................16

*Bogi v. Rosenberg*,
    705 F.3d (7th Cir. 2013) .....................................................................................9

*Branham v. TrueAccord Corp.*,
    2023 WL 2664010 (N.D. Ill. Mar. 28, 2023)....................................................2

*Brown v. Auto-Owners Ins. Co.*,
    2022 WL 2442548 (N.D. Ill. June 1, 2022)................................................14, 15

*Camasta v. Jos A. Bank Clothiers, Inc.*,
    761 F.3d 735 (7th Cir. 2014) ...............................................................................6

*Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020)................................................................................9

*Chiappetta v. Kellogg Sales Co.*,
    2022 WL 602505 (N.D. Ill. Mar. 1, 2022)............................................... passim

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ...............................................................................8

*Fullerton v. Corelle Brands, LLC*,
    2019 WL 4750039 (N.D. Ill. Sep. 30, 2019) ....................................................15

*Geske v. PNY Techs., Inc.*,
    503 F. Supp. 3d 687 (N.D. Ill. 2020) ..................................................................2

*Harris v. Rust-Oleum Corp.*,
   2022 WL 952743 (N.D. Ill. Mar. 30, 2022)........................................................14, 15

*Hobbs v. Gerber Prods. Co.*,
   2018 WL 3861571 (N.D. Ill. Aug. 14, 2018) ...................................................2, 3, 4

*Horist v. Sudler & Co.*,
   941 F.3d 274 (7th Cir. 2019) ............................................................................15

*Ibarrola v. Kind, LLC*,
   83 F. Supp. 3d 751 (N.D. Ill. 2015) ..................................................................15

*In re Bridgestone/Firestone, Inc.*,
   288 F.3d 1012 (7th Cir. 2002) ...........................................................................15

*In re Dairy Farmers of Am. Cheese Antitrust Litig.*,
   2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ......................................................15

*In re Kind LLC "Health & All Nat." Litig.*,
   627 F. Supp. 3d 269 (S.D.N.Y. 2022)................................................................14

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
   2012 WL 39766 (N.D. Ill. 2012) .......................................................................15

*In re Potash Antitrust Litig.*,
   667 F. Supp. 2d 907 (N.D. Ill. 2009) .................................................................15

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
   2021 WL 3666312 (S.D. Fla. Aug. 18, 2021).......................................................8

*Joseph v. TGI Friday's, Inc.*,
   2022 WL 17251277 (N.D. Ill. Nov. 28, 2022) ..............................................12, 13

*Kim v. Carter's Inc.*,
   598 F.3d 362 (7th Cir. 2010) ...............................................................................4

*Kubilius v. Barilla Am., Inc.*,
   2019 WL 2861886 (N.D. Ill. July 2, 2019)..........................................................14

*Kulcsar v. AutoZone, LLC*,
   2017 WL 1364135 (N.D. Ind. Feb. 24, 2017).......................................................9

*Lesorgen v. Mondelez Glob., LLC*,
   2023 WL 3568686 (N.D. Ill. May 19, 2023).........................................................3

*McDonnell v. Nature's Way Prods., LLC*,
   2017 WL 1149336 (N.D. Ill. Mar. 28, 2017).....................................................2, 3

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ......................................................................11, 12

*Parent v. MillerCoors LLC*,
2015 WL 6455752 (S.D. Cal. Oct. 26, 2015) ..............................................8

*Red v. Kraft Foods, Inc.*,
2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ..............................................12

*Reinitz v. Kellogg Sales Co.*,
2022 WL 1813891 (C.D. Ill. June 2, 2022) ..............................................9, 10

*Smith v. Illinois*,
2009 WL1515306 (N.D. Ill. May 27, 2009) ..............................................9

*Smith-Brown v. Ulta Beauty, Inc.*,
2019 WL 932022 (N.D. Ill. Feb. 26, 2019) ..............................................15

*Valiente v. Publix Super Mkts., Inc.*,
2023 WL 3620538 (S.D. Fla. May 24, 2023) ..............................................4

*Vital Proteins LLC v. Ancient Brands, LLC*,
2022 WL 157956 (N.D. Ill. Jan. 11, 2023) ..............................................7

*Warren v. Coca-Cola Co.*,
2023 WL 3055196 (S.D.N.Y. Apr. 21, 2023)............................8, 10, 11, 12

*Zapadinsky v. Blue Diamond Growers*,
2023 WL 5116507 (E.D. Wis. Aug. 7, 2023) .............................. passim

**FEDERAL RULES**

Federal Rule of Evidence 201 ..............................................................10

Federal Rule of Civil Procedure 8 ........................................................6

Federal Rule of Civil Procedure 23 ....................................................14, 15

**OTHER AUTHORITIES**

"Man Suing Buffalo Wild Wings . . .", *Insider* (Mar. 21, 2023),
https://www.insider.com/man-suing-buffalo-wild-wings-also-suing-toms-mouthwash-
kind-granola-hefty/ ..............................................................................1

## INTRODUCTION

Plaintiff is a serial consumer litigant. Plaintiff alleges in this case that BWW's Boneless Wings should have had bones. But over the past two years he claims to have been deceived by "High in Fiber" granola, mouthwash with a "natural" minty flavor, "recycling" bags, and even blankets.[1] His next lawsuit very well could accuse hushpuppies of being too noisy. Even well-respected plaintiffs' attorneys find his claims specious: "There's a thin line between consumer advocacy and just being annoying. It raises the issue about what's the real purpose here?" *See* "Man Suing Buffalo Wild Wings . . .", *Insider* (Mar. 21, 2023) https://www.insider.com/man-suing-buffalo-wild-wings-also-suing-toms-mouthwash-kind-granola-hefty/ (quoting food safety plaintiffs' attorney Bill Marler).

Reasonable minds may question whether Plaintiff is cynically shopping for lawsuits or sincerely believes himself to have been misled, and injured, by so many common commercial transactions. Nevertheless, the Court need not solve that particular mystery to dismiss this case. ***First***, Plaintiff lacks Article III standing because he did not pay a price premium and suffered no economic harm from paying *less* for Boneless Wings than for traditional chicken wings. ***Separately***, Plaintiff cannot state a plausible claim for relief because Plaintiff targets conduct that does not mislead reasonable consumers, relies on an interpretation of a product that no reasonable consumer could share, and serves those baseless allegations with a side of speculation that cannot make out a plausible claim. And Plaintiff's proposed nationwide unjust enrichment class fails under the settled law in the Seventh Circuit.[2]

---

[1] *See Halim, et al. v. Berkshire Blanket & Home Co.*, No. 3:23-cv-30068 (D. Mass. 2023); *Halim et al. v. Colgate-Palmolive*, No. 1:23-cv-00742 (S.D.N.Y. 2023); *Halim v. Kind LLC*, No. 1:22-cv-10979 (S.D.N.Y. 2022); *Halim v. Reynolds Consumer Prods.*, No. 1:21-cv-04194 (N.D. Ill. 2021).

[2] Plaintiff already concedes that he lacks standing to pursue injunctive relief and has asserted no basis whatsoever for Inspire to remain in this case. (Dkt. 26 ("Opp'n") at 2, n.2.) As such, Inspire should be dismissed from this action entirely, as should Plaintiff's request for injunctive relief.

The result remains immutable—dismissal of this frivolous case in its entirety and with prejudice.

## <u>ARGUMENT AND CITATION TO AUTHORITY</u>

**I.     Conclusory Allegations Do Not—and Cannot—Establish that Plaintiff Has Article III Standing, *Especially* When the Pleadings Refute His Baseless Claims of Injury.**

Plaintiff doubles down on conclusory allegations that courts—even those cited in Plaintiff's briefing—cautioned were speculative, "bare-bones," or "not factually robust." *See* Opp'n at 19 (citing *Hobbs v. Gerber Prods. Co.*, 2018 WL 3861571, at *9 (N.D. Ill. Aug. 14, 2018); *McDonnell v. Nature's Way Prods., LLC*, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017)). Yet Plaintiff argues that he need only claim that he "would not have purchased the [Boneless Wings] or would not have paid the same price for it had" he known they were not made from deboned chicken wing meat to establish Article III standing, regardless of the economic realities of his purchase. (Opp'n at 13.) Settled caselaw in the Seventh Circuit makes clear that argument cannot save Plaintiff's claim from dismissal.

Plaintiff bears the burden of showing that he has standing to pursue his claims: he must allege *well-pled facts* that he purchased a product that was actually worth less than what he paid. *See, e.g.*, *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 697 (N.D. Ill. 2020); *Branham v. TrueAccord Corp.*, 2023 WL 2664010, at *4 (N.D. Ill. Mar. 28, 2023). "[C]onclusory assertions of financial or monetary harm are insufficient to demonstrate a concrete injury," *Branham*, 2023 WL 2664010, at *4, and for that reason alone Plaintiff's conclusory allegations cannot establish standing. But when, as here, "*external facts* call the court's jurisdiction into question," the plaintiff must *also* point to "competent proof that standing exists." *Zapadinsky v. Blue Diamond Growers*, 2023 WL 5116507, at *4 (E.D. Wis. Aug. 7, 2023); *see Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). Plaintiff does not—and cannot—do that here.

2

**A.    The Pleadings Establish that Plaintiff Received What He Paid For—Boneless, Deep-Fried Chicken that Is Less Expensive than Traditional Wings.**

Plaintiff's Opposition rests on cases that denied dismissal on standing grounds only because the pleadings did not undermine the plaintiffs' benefit-of-the-bargain allegations. (*See* Opp'n at 19.)[3] These cases, however, stand for the unremarkable proposition that some courts reluctantly credited threadbare or conclusory allegations when nothing else pointed to the contrary. That reasoning does not apply here.



The Menu referenced in Plaintiff's own Amended Complaint exposes Plaintiff's standing allegations for what they are: fuss and feathers. (*See* Dkt. 20 ("Mot.") at 19; Dkt. 21-3 (Menu).) It makes clear that Plaintiff purchased Boneless Wing products that are *less expensive* than the product he claims he thought he was getting—BWW's traditional wings, deboned. (Dkt. 6 ("First Am. Compl.") ¶¶ 13, 30; *see also* Dkt. 21-3.) Despite Plaintiff's conclusory allegations that "he would have paid significantly less for [the Boneless Wings]," (First Am. Compl. ¶¶ 13-14), the Menu demonstrates he has already done just that. He paid between 10% to 18% less for Boneless Wings than he would have spent had he ordered traditional wings. (*Id.* ¶ 30; Dkt. 21-3.)

Where "*external facts* call[] the court's jurisdiction into question"—*i.e.*, the prices found

---

[3] *Hobbs*, 2018 WL 3861571, at *9; *Lesorgen v. Mondelez Glob., LLC,* 2023 WL 3568686, at *2 (N.D. Ill. May 19, 2023); *McDonnell*, 2017 WL 1149336, at *3; *Biffar v. Pinnacle Foods Grp.*, 2016 WL 742913, at *4 (S.D. Ill. Dec. 22, 2016))

on BWW's Menu—Plaintiff must point to "competent proof that standing exists." *Zapadinsky*, 2023 WL 5116507, at *4 (emphasis in original); *accord Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *Valiente v. Publix Super Mkts., Inc.*, 2023 WL 3620538, at *5 (S.D. Fla. May 24, 2023). Rather than doing so, Plaintiff instead argues that "specific pricing allegations are not necessary" to sufficiently allege standing. (Opp'n at 14, n.11.) As courts have found in similar cases, Plaintiff's argument fails because he does not even attempt to reconcile conclusory price premium allegations with the materials referenced in his Amended Complaint that demonstrate that Plaintiff netted *savings*. (*See* Mot. at 7-9 (citing Dkts. 21-1, 21-2, and 21-3));[4] *see also Zapadinsky*, 2023 WL 5116507, at *5 (rejecting conclusory benefit-of-the-bargain allegations); *Valiente*, 2023 WL 3620538, at *5. Nor can he.

Plaintiff next criticizes the *Valiente* case as an out-of-circuit decision that is inconsistent with the Court's decision in *Hobbs*. (Opp'n at 20, n.11.) There is no inconsistency here, *see supra* at 3, and Plaintiff ignores that *Valiente* applies the same reasoning as the Seventh Circuit in *Kim*, 598 F.3d 362. (*See* Mot. at 19 (citing both *Kim* and *Valiente*)). Similar to *Valiente,* in *Kim,* the Seventh Circuit found that the plaintiffs "got the benefit of their bargain and suffered no actual pecuniary harm" because they: (a) agreed to pay a certain price for the defendant's clothing; (b) failed to plausibly allege the clothing was defective or worth less than what they paid for; and (c) failed to allege that they "could have shopped around and obtained a better price." 598 F.3d at 365-66; *accord Valiente*, 2023 WL 3620538, at *5 ("[U]nlike in most cases where courts have found overpayment allegations sufficient to confer Article III standing, Valiente fails to concretely tie the value of the cough drops to any of those purported representations."). If Plaintiff truly seeks

---

[4] Plaintiff's attempts to disparage the materials in Defendants' Motion (including the materials his allegations rely on) do not render Plaintiff's allegations any more plausible. *See infra* at Section II.B.1.

in-Circuit decisions, the Court need look no further than *Zapadinsky*, which just earlier this month rejected a similar reliance on conclusory price premium and benefit-of-the-bargain allegations because the external evidence demonstrated that the plaintiff "did not pay a price premium" and "received what he paid for." 2023 WL 5116507, at *5-6.

Regardless of the court, the same analysis applies. Plaintiff refuses to acknowledge the facts in the motion to dismiss record—including his own Amended Complaint—and hopes this Court will do the same. As a result, he does not and cannot plausibly allege that he has suffered any concrete injury sufficient to confer Article III standing.[5]

### B. Conclusory Allegations that Plaintiff Would Not Have Bought Boneless Wings Had He Known the "Truth" Cannot Establish a Concrete Injury-In-Fact.

Plaintiff argues, in the alternative, that he has adequately pled an injury-in-fact by alleging that he would not have purchased Boneless Wings "had he . . . known the truth about it." (Opp'n at 13.) Nowhere does Plaintiff adequately allege that the *product he received* is worth less than what he paid for it, and it is no response to stand on conclusory allegations that he "would not have purchased" the Boneless Wings. The Seventh Circuit has repeatedly considered—and rejected— the proposition that a plaintiff can establish Article III standing with naked allegations that he would not have purchased a product. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019); *Camasta v. Jos A. Bank Clothiers, Inc.*, 761 F.3d 735, 739-40 (7th Cir. 2014); *see also Zapadinsky*, 2023 WL5116507, at *7 ("Viewing [*Benson* and *Camasta*] alone,

---

[5] Plaintiff ultimately attempts to deflect, arguing that whether a price premium exists cannot be resolved at the motion to dismiss stage because it is "the subject of complex expert analysis based on econometric techniques" considering "multiple dynamic factors, including the attributes a certain product has or does not have." (Opp'n at 15-16.) But this contradicts Plaintiff's earlier plea that conclusory allegations of a price premium alone are sufficient. And BWW's opening brief highlights countless courts that have had little difficulty in dispensing similarly conclusory allegations. (Mot. at 9 (collecting cases).) Plaintiff's protests do not alter the facts in the pleadings that Plaintiff's purchase was at a discount, not a premium. *See Zapadinsky*, 2023 WL 5116507, at *5.

Plaintiff's allegations that he 'would not have bought' the Almonds fail to establish injury for purposes of Article III standing.").

Plaintiff's "would-not-have-purchased" theory of injury cannot confer standing without well-pled, *factual* allegations that Boneless Wings are worth less than the price he paid, allegations that are absent from the Amended Complaint. *Compare Benson*, 944 F.3d at 648 ("Neither Benson nor Smith has alleged that the seven ounces of chocolate in the box were worth less than the $9.99 that they paid . . . Instead, both . . . assert that they would not have purchased the candy if they had known the amount of slack-fill."), *with* Opp'n at 13 (citing *Biffar,* 2016 WL 7429130, at *4).

The Amended Complaint alleges only that Boneless Wings are worth less than traditional wings, not that Boneless Wings are worth less than what Plaintiff paid for them. Thus, Plaintiff's conclusory allegation that he simply "would not have bought them" fails to confer standing.

## II. Plaintiff Cannot Plausibly Allege that "Boneless Wings" Misleads Reasonable Consumers.

### A. Plaintiff Contorts the Reasonable Consumer Standard Beyond Recognition.

Although Plaintiff agrees that the "reasonable consumer" standard governs each of his claims (Opp'n at 3), he repeatedly calls for the Court to apply a standard based only on his subjective belief. Plaintiff turns the reasonable consumer standard (and Rule 8) on its head by claiming that Defendants bear the burden to demonstrate that Plaintiff's claim of deception is fanciful. (*Id.*) Plaintiff then argues that the information available to consumers and the context in which that information is provided are not relevant to his imaginary reasonable consumer. (*Id.* at 15-18.) Finally, Plaintiff baselessly asserts that the purported "literal falsity" of the name "Boneless Wings" is sufficient to survive a motion to dismiss. (*Id.* at 3.)

Plaintiff's so-called "reasonable consumer" standard has no place in this Circuit. The burden remains firmly with Plaintiff to show that his allegations plausibly demonstrate "a

probability that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled" by the name Boneless Wings. *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *3 (N.D. Ill. Mar. 1, 2022); *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). As noted in Defendants' opening brief, in determining whether Plaintiff has met this burden, the Court "should take into account all the information available to consumers and the context in which that information is provided and used." *Bell v Publix Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020). What matters "is how consumers actually behave—how they perceive advertising and how they make decisions." *Id.* at 481. "[D]ismissal on the pleadings may well be justified" if deception claims are based on "unreasonable or fanciful interpretations of labels or other advertising."[6] *Id.* at 477; (*see also* Mot. at 12).

Despite the Seventh Circuit's clear directive, Plaintiff persists in arguing that his claims have merit under his imaginary standard. This failure to apply the actual reasonable consumer standard undermines Plaintiff's arguments in their entirety.

**B.**     **Plaintiff Cannot Plausibly Allege that Reasonable Consumers Are Deceived by "Boneless Wings" When Available Information Demonstrates the Opposite**

Plaintiff concedes that "what matters most is how real consumers understand and react to the advertising," *Bell*, 982 F.3d at 476, but his Opposition makes no meaningful attempt to establish that his claims are plausible under this standard. Even though they had no obligation to do so, Defendants have provided a detailed analysis about how reasonable consumers are *not*

---

[6] Plaintiff plucks out of context a line from this Court's Order in *Vital Proteins LLC v. Ancient Brands, LLC*, 2022 WL 157956 (N.D. Ill. Jan. 11, 2023), to argue that Defendants bear the burden to demonstrate that "***plaintiff's reading is unreasonable***." (Opp'n at 4 (emphasis in original).) But *Vital Proteins* involved a straightforward application of the reasonable consumer standard, in which this Court concluded that the plaintiff's interpretation of "10g per serving" was plausible. 2022 WL 157956, at *5. This language simply indicated that the defendant's emphasis of an alternative interpretation did not undermine the plausibility of the plaintiff's claims. This Court did ***not*** disturb the parties' settled burdens on a motion to dismiss, and here, unlike in *Vital Proteins*, Plaintiff cannot even manage to proffer a plausible claim in the first instance.

deceived by Boneless Wings. (*See* Mot. at 13-18.) The actual information available to reasonable consumers demonstrates that their common understanding of Boneless Wings—boneless pieces of all white-meat chicken prepared buffalo-wing style—is precisely what BWW delivers.

> 1.   Plaintiff's Interpretation of "Boneless Wings" Is Contrary to the Ordinary Experience of Reasonable Consumers.

As pointed out in Defendants' Motion, the materials referenced in the Amended Complaint make clear that the sale of boneless wings has been commonplace across the country since the early 2000s, that BWW began selling boneless wings in 2003, and that it is "nearly impossible, mechanically," to make the product Plaintiff claims he wanted. (Mot. at 3 (citing Am. Compl. ¶¶ 21-27, 30); Dkt. 21-1, 21-2.) Courts have needed far less to conclude that a plaintiff's claimed deception is unreasonable and runs contrary to the experience of reasonable consumers. *See, e.g.*, *Warren v. Coca-Cola Co.*, 2023 WL 3055196, at \*4-7 (S.D.N.Y. Apr. 21, 2023) (reasonable consumers recognize that hard seltzers are "distinct from cocktails like margaritas"); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016) (reasonable consumers know of the "general mechanics of [lip balm] dispenser tubes"); *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at \*10 (S.D. Fla. Aug. 18, 2021) (reasonable consumers know of news articles and press releases about corporate ownership).

Plaintiff chose to incorporate these materials by reference in his Amended Complaint, yet he now attempts to call them into question with even more speculation and conjecture. First, Plaintiff criticizes his own 2009 New York Times article because it does not identify BWW by name, but he cannot wave away that, over a decade ago, millions of subscribers were told that boneless wings are made from "slices of breast meat deep-fried like wings and served with the same sauces." (Dkt. 21-2.) Second, Plaintiff deflects from his own *The Counter* article—which makes clear that "deboned Boneless Wings" are commercially and mechanically impractical—by

speculating about what consumers might think could be possible.[7] *See Kulcsar v. AutoZone, LLC*, 2017 WL 1364135, at *6 (N.D. Ind. Feb. 24, 2017) (speculation in plaintiff's response brief insufficient to defeat motion to dismiss); *Smith v. Illinois*, 2009 WL1515306, at *4 (N.D. Ill. May 27, 2009) (rejecting speculation in response brief on question of jurisdiction). More fundamentally, Plaintiff cannot escape that the materials in his own pleading contradict his claims. *See Zapadinsky*, 2023 WL 5116507, at *6; *Bogi v. Rosenberg*, 705 F.3d, 603, 609 (7th Cir. 2013) (observing that an exhibit generally controls when it contradicts the allegations in the complaint).

Plaintiff also dismisses the recipes referenced in Defendants' Motion, which demonstrate that Plaintiff's interpretation is "not consistent with how the public understands and react to product advertising." *Reinitz v. Kellogg Sales Co.*, 2022 WL 1813891, at *3 (C.D. Ill. June 2, 2022) (citing recipes to reject the plaintiff's interpretation as implausible); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (citing dictionary definitions to reject plaintiff's claim that the term "steak" was deceptive). He argues these recipes are irrelevant "because [consumers] enjoy eating wings, not . . . cooking wings." (Opp'n at 12.) That distinction is both illusory and would unravel any number of recent decisions that dismissed similar claims. *See, e.g.*, *Chiappetta*, 2022 WL 602505, at *3; *Reinitz*, 2022 WL 1813891, at *3; *Warren*, 2023 WL 3055196, at *4. Nor does it alter the conclusion. BWW provided the first fifteen results returned in a Google search for "boneless wing recipes." That each recipe calls for boneless chicken breast—not deboned chicken wings—makes clear that Plaintiff's claims have no plausible tie to

---

[7] Plaintiff favors a quote from a poultry industry expert that the term "boneless wings" is "misleading[,]" but, unlike the *national* audiences of the articles at issue, one-off quotes do not make it plausible "that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled." *Chiappetta*, 2022 WL 602505, at *3; *see also Reinitz*, 2022 WL 1813891, at *3.

reality.[8]

Finally, Plaintiff disingenuously posits that because one of BWW's competitors uses a term ("poppers") other than "boneless wings" to describe Buffalo-style chicken breast chunks, BWW's nomenclature is deceptive. (Opp'n at 5.) But Plaintiff's exception merely proves the rule—industry wide, for decades, leading national wing chains (including Anchor Bar – the Buffalo, New York inventor of the "Buffalo wing") have unanimously termed these products "boneless wings." *See* Ex. A (table of leading wing restaurants and nomenclature). To be clear, the point is not that 14 wrongs make a right—but rather that reasonable wing fans harbor no misconception about a product that has been identically and accurately branded, decade-after-decade, coast-to-coast. *Id.*

### 2. Plaintiff Cannot Credibly Claim Deception When the Context Surrounding His Purchase Prevents Any Unreasonable Understanding.

Plaintiff's alleged deception is based on his "selective interpretation of individual words from [the Menu's] labeling," and is "plainly inconsistent" with the surrounding context, available information, and common sense. *Warren*, 2023 WL 3055196, at *6. Incredibly, Plaintiff ignores the bulk of Defendants' briefing to claim that, aside from the price, there "are no additional context clues" to "tip off consumers that the Products" are not deboned wings. (Opp'n at 16.) To be clear, courts considering "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Chiappetta*, 2022 WL 602505, at *4; *accord Warren*, 2023 WL 3055196, at *4.

A selection of that context includes: **Price.** Plaintiff's argument that the price differential does not warrant dismissal is wrong on two counts. (Opp'n at 15-16.) First, courts have found

---

[8] Although Plaintiff argues that these recipes should not be considered (Opp'n at 12), he does not dispute their authenticity. *See* Fed. R. Evid. 201. In any event, the Court need not take judicial notice that the cited recipes are the "right" way to make boneless wings, but rather that these recipes exist and call for boneless chicken breast (not for deboned wings).

pricing allegations compelling in dismissing claims of deception as fanciful, particularly when (like here) those prices are readily available to consumers on a Menu or at purchase. (*See* Dkt. 21-3); *see also, e.g., Zapadinsky*, 2023 WL 5116507, at *10 (observing that consumers "would not be fooled" when they knew that almonds with smoke flavoring cost less than those made in a smokehouse); *Warren,* 2023 WL 3055196, at *4 (observing the $1.50 price for the hard seltzer product was a strong indication of the fanciful nature of plaintiff's interpretation that the product contained tequila because "nobody sells a margarita for $1.50"); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 884 (9th Cir. 2021). Second, that BWW sells Boneless Wings at a discount relative to bone-in wings—at a minimum—communicates to reasonable consumers that Boneless Wings are a different type of product than traditional wings.

**The Menu.** Reasonable consumers realize that, given the layout of the Menu, accompanying product names, and comparative price of traditional wings, Boneless Wings are exactly what they expect them to be. *Moore*, 4 F.4th at 882-83; *Warren*, 2023 WL 3055196, at *5. By arguing that no consumer would mistake a cauliflower wing for traditional wings, Plaintiff ignores the structure of the Menu itself. (*See* Opp'n at 12, n.8.) Boneless Wings are in the Menu's "WINGS" section, just like cauliflower wings, chicken tenders, and traditional wings. Of course, no reasonable consumer would confuse cauliflower wings as anything other than something prepared in the same style as the other "WINGS" products: deep-fried and sauced. (Dkt. 21-3.) The same conclusion follows for Boneless Wings: BWW delivers a product that, consistent with the Menu, is served buffalo wing-style. *See Warren*, 2023 WL 3055196, at *5.

**20+ Years of Consumer Experience**. Plaintiff again ignores that the "information available to a consumer is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging." *Moore*, 4 F.4th at 882 (citing *Bell*, 982 F.3d at

476). With that information—a nationwide culinary practice in existence for at least 20 years (Dkt. 21-2), reasonable consumers would not understand BWW to promise a product that is not served at national chain restaurants and for which it is "nearly impossible, mechanically," to make on a commercial scale. (Dkt. 21-1); *see Warren*, 2023 WL 3055196, at *5 (reasonable consumers "would know that cocktails containing hard liquor are not and cannot be sold in grocery stores") *Moore*, 4 F.4th at 883 ("A reasonable consumer would not understand [the] label here as promising something that is impossible to find."); *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("[A] reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables").

Plaintiff's supposed confusion as to the nature of the products he is purchasing appears to be a recurring problem. *See supra* at 1. Rather than dismissing context out of hand, Plaintiff would be better served to evaluate all available information presented to him regarding the products he purchases before claiming that he again has been the victim of purportedly deceptive practices.

### C.    Plaintiff Relies on Cases that *Support* Dismissal.

Plaintiff relies heavily on *Bell*, 982 F.3d 468, and *Joseph v. TGI Friday's, Inc.*, 2022 WL 17251277 (N.D. Ill. Nov. 28, 2022), to argue that his interpretation of Boneless Wings is reasonable. In reality, far from supporting Plaintiff's position, both cases support dismissing Plaintiff's claims because his interpretation of "Boneless Wings" is fanciful and unreasonable.

The Seventh Circuit in *Bell* recognized that dismissal on the pleadings is well justified "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretation of labels or other advertising." 982 F.3d at 477. This action is one of these cases. *See supra* at Section II.B. In considering the "WINGS" section of the Menu (Dkt. 21-3), the lower cost of Boneless Wings compared to traditional wings (*id.*), the widespread publication of the fact that restaurants

nationwide offer buffalo wing-style boneless chunks of breast meat as "boneless wings" (Dkt. 21-2), and consumers' ordinary experience with boneless wings (Dkts. 21-1 & 21-4), no reasonable consumer could conclude that BWW (or any restaurant) debones traditional chicken wings before reshaping and frying them, only to offer them at a price lower than traditional wings. "What matters is how real consumers understand and react to" Boneless Wings, and Plaintiff's subjective beliefs have no role in this analysis. *Chiappetta,* 2022 WL 602505, at *3 (citing *Bell*, 982 F.3d at 476).

The courts' conclusions in *Bell* and *Joseph* also support dismissal because they consider allegations and circumstances that appear nowhere in this case. There, consumers could plausibly conceive in their day-to-day marketplace experience that Publix's unrefrigerated "100% Grated Parmesan Cheese" or TGI Friday's bag of "mozzarella sticks snacks" contain 100% parmesan cheese or real mozzarella cheese because similar products were readily available for purchase. *Bell,* 982 F.3d at 482-83; *Joseph,* 2022 WL 17251277, at *3. Unlike the plaintiffs in those cases, Plaintiff's belief that Boneless Wings are deboned chicken wings is implausible. Not only does Plaintiff fail to provide any factual allegations to support this interpretation, but the materials attached to his Amended Complaint make clear he *presupposes a product of his imagination.* Plaintiff does not allege that this deboned chicken wing is available at any restaurants or in any stores. His own evidence demonstrates that his interpretation is a commercial impossibility. (*See* Dkt. 21-1.) Further, none of the recipes submitted by BWW reference deboning chicken wings as even an alternate way of preparing boneless wings. (Dkt. 21-4.)

In short, "[r]ather than determining how reasonable consumers understand the ["Boneless Wings"] claim, Plaintiff is "supplying the standard and then arguing that consumers were deceived." *In re Kind LLC "Health & All Nat." Litig.*, 627 F. Supp. 3d 269, 291 (S.D.N.Y. 2022). Plaintiff's claims should therefore be dismissed with prejudice.

### III.     Plaintiff Cannot Maintain a Nationwide Unjust Enrichment Class.

Plaintiff complains that it is premature to strike Plaintiff's nationwide unjust enrichment class, but in doing so he ignores that courts "routinely dismiss or strike class claims where named plaintiffs seek to represent proposed class members from other states." *Brown v. Auto-Owners Ins. Co.*, 2022 WL 2442548, at *2 (N.D. Ill. June 1, 2022). Indeed, "the text of Rule 23 provides that the determination of whether a class should be certified must be made 'at an early practicable time,' which may be at the pleadings stage. *Kubilius v. Barilla Am., Inc.*, 2019 WL 2861886, at *2 (N.D. Ill. July 2, 2019). Similarly, "the Seventh Circuit has addressed standing as 'an antecedent legal issue' to be resolved before class certification." *Brown*, 2022 WL 2442548, at *2. Moreover, discovery cannot fix that Plaintiff has no injury in states where he did not purchase Boneless Wings and cannot remedy the "material conflicts among the fifty states' laws with respect to unjust enrichment claims." *Harris v. Rust-Oleum Corp.*, 2022 WL 952743, at *5 (N.D. Ill. Mar. 30, 2022); *Brown*, 2022 WL 2442548, at *3.

Plaintiff next argues that the Court necessarily must delve into the many ways in which the unjust enrichment laws of the fifty states vary before dismissal is appropriate under Rule 23. (Opp'n at 24-25.) But this analysis has previously been undertaken by the courts of this District, who have routinely found that nationwide unjust enrichment classes are improper because of the "material conflicts among the fifty states' laws with respect to unjust enrichment claims." *See, e.g., Harris*, 2022 WL 952743, at *5 (collecting cases); *see also Fullerton v. Corelle Brands, LLC*, 2019 WL 4750039, at *14 (N.D. Ill. Sep. 30, 2019) ("As multiple courts in the Seventh Circuit have commented, district courts remain reluctant to manage nationwide classes for these types of claims [like unjust enrichment]."); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules").

14

Finally, Plaintiff is wrong that BWW "conflat[es] the standing inquiry with the inquiry under Rule 23." (Opp'n at 17.) Indeed, courts criticize the position that Plaintiff takes here, observing that standing is a separate question. *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 924 (N.D. Ill. 2009); *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022, at *5 (N.D. Ill. Feb. 26, 2019). "To have standing plaintiffs must possess the same interest and suffer the same injury shared by all members of the class they represent." *Brown*, 2022 WL 2442548, at *2. In *Brown*, the court rejected the argument that plaintiffs "may assert out-of-state-class claims so long as they have standing for their own in-state claims." *Id.* at *3; *see also In re Plasma-Derivative Protein Therapies Antitrust Litig.,* 2012 WL 39766, at *6 (N.D. Ill. 2012); *In re Dairy Farmers of Am. Cheese Antitrust Litig.*, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013).

Plaintiff's nationwide unjust enrichment class, therefore, should be dismissed.

## IV. Plaintiff's Unjust Enrichment Claim Falls with His ICFA Claim.

Illinois law is clear that Plaintiff cannot assert unjust enrichment as an independent cause of action. *See Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) ("Unjust enrichment is not a separate cause of action under Illinois law."); *Ibarrola v. Kind, LLC,* 83 F. Supp. 3d 751, 761 (N.D. Ill. 2015). Yet Plaintiff concedes that his unjust enrichment claim is governed by the same standard as his ICFA claim. Because Plaintiff's ICFA claim fails as a matter of law, so too does his claim for unjust enrichment. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 2001).

## <u>CONCLUSION</u>

For the reasons set forth herein and in Defendants' Motion, Defendants respectfully request that the Court dismiss Plaintiff's claims in their entirety with prejudice.

Dated: August 24, 2023                    Respectfully submitted,

By:    */s/ Jason D. Rosenberg*
       Jason D. Rosenberg (Bar# 6275801)
       Andrew G. Phillips (*pro hac vice*)
       Alan F. Pryor (*pro hac vice*)
       Sarah H. Parker (*pro hac vice*)

       Alston & Bird LLP
       1201 W. Peachtree Street
       Atlanta, Georgia 30309
       Phone: (404) 881-7000
       Fax: (404) 881-7777
       jason.rosenberg@alston.com
       andrew.phillips@alston.com
       alan.pryor@alston.com
       sarah.parker@alston.com

       Douglas Alan Albritton (Bar #6228734)
       Matthew John Kramer (Bar #6283296)
       ACTUATE LAW LLC
       641 West Lake
       5th Floor
       Chicago, IL 60661
       (312) -579-3108
       doug.albritton@actuatelaw.com
       matthew.kramer@actuatelaw.com

       *Counsel for Buffalo Wild Wings, Inc. and Inspire
       Brands, Inc.*

16

## <u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was filed on August 24, 2023, with the Court and served electronically through the CM/ECF system to all counsel of record registered to receive a Notice of Electronic Filing for this case.

*/s/ Jason D. Rosenberg*
Jason D. Rosenberg
