IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AIMEN HALIM, | ) |
| Plaintiff, | ) ) ) No. 23-cv-01495 |
| v. | ) ) Judge John J. Tharp, Jr. |
| BUFFALO WILD WINGS, INC., | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

What's in a name? If we called a wing by any other name, would it smell as sweet?[1] The plaintiff, Aimen Halim, says no. The defendant, Buffalo Wild Wings ("BWW"), sells a product it calls "boneless wings," which are essentially chicken nuggets: pieces of chicken breast meat, deep-fried and tossed in whatever sauce or dry seasoning the customer wants. Halim, apparently, found this confusing. He claims that he thought boneless wings were real chicken wings with the bones removed. He says BWW's product should be called something different, something like "chicken poppers." Halim sued BWW over his confusion, but his complaint has no meat on its bones. Halim does not plausibly allege that reasonable consumers are deceived by boneless wings, so he has failed to state a plausible claim for relief.

**BACKGROUND**

Halim purchased boneless wings from a BWW restaurant in January 2023. Am. Compl. 3–4 ¶ 13, ECF No. 6. Halim says he expected to receive "wings that were deboned (i.e., comprised entirely of chicken wing meat)." *Id.* at 4 ¶ 13. It's unclear what, exactly, Halim expected such wing fillets to look like, or how he thought they would be made, and the complaint does not allege that

---

[1] *See* William Shakespeare, *Romeo & Juliet* act 2, sc. 2, l. 47–48.

the "boneless wings" actually resembled traditional chicken wings (whether the drumettes, the flats, or both). It's also unclear when or how Halim learned that BWW's boneless wings aren't really made from wing meat. In any event, after visiting a BWW restaurant in Mt. Prospect, Illinois, Halim sued BWW, claiming he was deceived by BWW's marketing.

Halim brought this suit against BWW for violations of the Illinois Consumer Fraud Act ("ICFA"), breach of express warranty, common law fraud, and unjust enrichment. Halim says that BWW's use of the term "boneless wings" to describe what is really breast meat is fraudulent. He says that BWW fools its customers on purpose, calling its products boneless wings because breast meat is cheaper than wing meat. *Id.* at 7 ¶¶ 26, 28. Had he known what he was really eating, Halim claims, he would have paid less for the product or refused to buy it at all. *Id.* at 4 ¶ 14. And he says he's not the only one for whom BWW's boneless wings failed to "meat" expectations. Halim seeks to bring a nationwide class action on behalf of consumers who were allegedly duped into buying boneless wings thinking that they were actually de-boned chicken wings. *Id.* at 12–13 ¶ 46.

BWW seeks to dismiss Halim's claim. As an initial matter, BWW argues that Inspire Brands, Inc., which Halim does not identify and as to which he makes no allegations, should be dismissed as a defendant and that Halim lacks standing to seek injunctive relief. Halim concedes both points. BWW further argues that Halim does not have standing to bring his claim for damages and that he has not stated a claim under any of his legal theories. Halim contests those arguments, so the Court considers them below.

## **DISCUSSION**

On a motion to dismiss, the Court accepts the pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Kilborn v. Amiridis*, 131 F.4th 550, 554 (7th Cir. 2025). The Court does not, however, accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

2

(2009). Viewed in this light, a complaint must state a facially plausible claim to relief to overcome the motion to dismiss. *Id.*

### I. Standing

The Court must first determine if it has subject-matter jurisdiction to hear this case. Article III of the Constitution requires that a plaintiff have standing to bring his claim in federal court. In other words, Halim must have a real stake in the outcome of the case for this Court to have jurisdiction over his claim. BWW takes issue with the injury-in-fact component of standing, arguing that Halim did not suffer a "concrete and particularized" injury sufficient for standing. Mot. Dismiss Br. 6, ECF No. 20-1 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). BWW argues that Halim would need to plausibly allege that he "purchased a product that was actually worth less than what he paid for it," which he failed to do. *Id.* Halim replies that the allegation he would have paid less for the product or not bought it at all is sufficient to show injury at the pleading stage. Pl.'s Opp'n 13, ECF No. 26.

BWW characterizes Halim's allegations as utilizing a "benefit of the bargain" theory of standing—*i.e.*, Halim alleges he received less value than he bargained for, causing him economic injury. Mot. Dismiss Br. 7. BWW claims that to succeed on that theory, Halim would need to plausibly allege that the boneless wings' value was less than their cost. *Id.* at 6. But many of the cases BWW cites to support that claim discuss actual damages under the ICFA, not Article III standing. *See, e.g.*, *Kim v. Carter's Inc.*, 598 F.3d 362, 364 (7th Cir. 2010). Those cases therefore materially differ from the case at hand. *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013) ("The actual damages element of an ICFA claim is distinct from the Article III injury-in-fact requirement . . . ."). And even in the ICFA context, the idea that Halim's allegations

3

are insufficient is a minority view. *Gibson v. Albertsons Cos.*, 754 F. Supp. 3d 793, 810 (N.D. Ill. 2024).

The Seventh Circuit has not adopted the "requirement" BWW advocates. To the contrary, courts in this district have recognized that a plaintiff adequately alleges an injury-in-fact by saying that he would have paid less or not bought the product absent misleading labeling. *Calchi v. TopCo Assocs., LLC*, 752 F. Supp. 3d 955, 960, 971 (N.D. Ill. 2024) ("The gist of the complaint is that Calchi would not have bought the cold medicine if she had known that it caused people to feel sleepy. . . . Calchi alleges that she bought TopCo's medicine and that she suffered an economic injury from misleading labeling. That is enough for standing for Article III purposes."); *Fuchs v. Menard, Inc.*, No. 17-cv-01752, 2017 WL 4339821, at *3 (N.D. Ill. Sept. 29, 2017) ("Plaintiffs assert that they would not have spent the money on the lumber (or would have insisted on paying less for it), and that sort of financial injury meets the Article III injury threshold for standing purposes."); *Muir*, 983 F. Supp. 2d 980, 986 (N.D. Ill. 2013). This Court agrees. Halim alleges that BWW's wrongful act caused him to part with hard-earned money that he would not otherwise have spent. Taken as true, he suffered monetary harm, a concrete injury for Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). Halim has standing to bring his claim.

## II.     Motion for Judicial Notice

In conjunction with its motion to dismiss, BWW asks this Court to consider the following documents: two news articles quoted in Halim's complaint, the BWW menu pictured in Halim's complaint, and fifteen online recipes for making boneless wings. Mot. Jud. Notice 1–2, ECF No. 21. The first news article is entitled "Boneless chicken wings: It's not a lie if you believe it," published in The Counter. Ex. A, ECF No. 21-1. The second is an article in the New York Times entitled "'Boneless' Wings, the Cheaper Bite." Ex. B, ECF No. 21-2. Typically, to consider

4

documents outside the complaint, a court would need to convert the motion to dismiss into one for summary judgment. Fed. R. Civ. P. 12(d). BWW argues that two exceptions to that rule apply. First, BWW says that this Court can take judicial notice of the documents under Federal Rule of Evidence 201. Second, it argues that the Court may consider the documents quoted in Halim's complaint under the incorporation-by-reference doctrine.

"The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). BWW suggests that online recipes establish that "reasonable consumers recognize that Boneless Wings are not deboned chicken wings, but instead are made using boneless all-white chicken breast meat." Mot. Dismiss Br. 3 (emphasis removed). But online recipes, standing alone and devoid of information about their reach or readership, do not indisputably establish what the reasonable consumer knows. The Court therefore declines to take judicial notice of the online recipes. And because the complaint does not mention them, there is also no basis to deem them to be incorporated into the complaint. Accordingly, the Court does not consider the online recipes in assessing the viability of the plaintiff's claim.

As to the news articles BWW asks the Court to notice, there is no need to assess whether judicial notice is appropriate because the incorporation-by-reference doctrine plainly permits the Court to consider them, as "they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). The two articles at issue are quoted extensively in the complaint (Am. Compl. 5–7 ¶¶ 21–28) to buttress the plaintiff's claim that BWW's sale of "boneless wings" is "intended to purposefully mislead consumers." As such, it is appropriate to treat the articles as part of the complaint.

5

So, too, the BWW menu. BWW asks this Court to consider the entire BWW menu because Halim included one page of it in his complaint. But the only relevant page (the one listing the boneless wings) is the one in the complaint, so there is nothing outside the complaint that this Court would need to reference; the Court may consider its content.

### III. Failure to State a Claim

The Court begins with Halim's ICFA theory. An ICFA claim has three elements: "1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). BWW contends that Halim has not plausibly alleged a deceptive act on BWW's part. "A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). As the movant, BWW must "demonstrate—as a matter of law—that [Halim's] reading is unreasonable." *Vital Proteins LLC v. Ancient Brands, LLC*, No. 22-cv-02265, 2023 WL 157956, at *5 (N.D. Ill. Jan. 11, 2023). If BWW succeeds, dismissal is justified. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020) ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified.").

BWW says a reasonable consumer would not be misled by the term "boneless wings" because context clues make clear that the nuggets cannot be made of wing meat. Reply 10, ECF No. 28. Halim first argues in opposition that the term "boneless wings" is "literally false" because the products are not wings. Pl.'s Opp'n 4. That's debatable. BWW argues that "wing" refers to the style of cooking in this context, not a chicken's body part. Reply 11. Words can have multiple

6

meanings—indeed, the term "buffalo wing" refers to the type of sauce on the wing, rather than indicating it is made of buffalo meat. And in any case, the Seventh Circuit has recognized that "[m]any literally false statements are not deceptive." *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512 (7th Cir. 2009). That court gave the example of a Graff Diamond ad calling its products "The Most Fabulous Jewels in the World." *Id.* While literally false, that statement is not misleading, because "no one is deceived." *Id.* So too here. Even if this Court were to decide that the term "boneless wings" is literally false, it is not deceptive, as discussed below.

Halim says the facts that the restaurant is called "Buffalo Wild *Wings*" and that boneless wings are presented as an alternative to traditional wings mean that reasonable consumers would think boneless wings are made from wing meat. Pl.'s Opp'n 4–5. But Halim's arguments apply equally to cauliflower wings, as BWW points out. Reply 11. Cauliflower wings are sold at BWW, under the "wing" section of the menu, and are presented as an alternative to chicken wings. If Halim is right, reasonable consumers should think that cauliflower wings are made (at least in part) from wing meat. They don't, though. Even Halim concedes that point, saying that "'cauliflower wing' is clearly a fanciful name because cauliflowers do not have wings." Pl.'s Opp'n 12 n.8. This Court agrees. "Boneless wing" is also clearly a fanciful name, because chickens *do* have wings, and those wings have bones. As the Ohio Supreme Court recently put it, "[a] diner reading 'boneless wings' on a menu would no more believe that the restaurant was warranting the absence of bones in the items than believe that the items were made from chicken wings, just as a person eating 'chicken fingers' would know that he had not been served fingers." *Berkheimer v. REKM, L.L.C.*, 253 N.E.3d 1, 7 (Ohio 2024). A reasonable consumer would not think that BWW's boneless wings were truly deboned chicken wings, reconstituted into some sort of Franken-wing.

7

A few additional facts support the conclusion that a reasonable consumer would not think that boneless wings were made of wing meat. To start, the menu reflects that BWW sells boneless wings at a cheaper price than its traditional wings. Am. Compl. 8. BWW argues that this price differential tells customers that boneless wings are not, in fact, de-boned wings. Common sense tells consumers that a product made out of the same ingredients, but requiring more time and work to create, would cost more—but they do not. Moreover, boneless wings are not new; even putting aside the news articles that report that "boneless wings" have been around since before the turn of the century, Halim's complaint alleges BWW has sold them since 2003. *Id.* at 5 ¶ 21. Boneless wings are not a niche product for which a consumer would need to do extensive research to figure out the truth. Instead, "boneless wings" is a common term that has existed for over two decades.

Halim argues that neither of these factors shows that consumers aren't deceived—there could be other reasons for the lower price, and there's no proof that consumers are widely aware of how boneless wings are made. Pl.'s Opp'n 5–7, 9–12. It's true that neither is dispositive, and alone they would not be sufficient for BWW to prevail. But they do support the common-sense conclusion that reasonable consumers are not deceived by the marketing of "boneless wings." Because the Court finds that, as a matter of law, Halim's reading of "boneless wings" is unreasonable, he has failed to allege facts supporting the deceptive act element of his ICFA claim.

Halim's unjust enrichment, breach of express warranty, and common law fraud theories fail for the same reason his ICFA theory fails. In Illinois, a plaintiff seeking recovery under an unjust enrichment theory must "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Because Halim has not pled facts supporting his claim

that BWW made any deceptive statements, he has failed to state a claim for unjust enrichment. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 2001) ("[I]n the absence of any deception on the part of the defendants, the requisite violation of 'fundamental principles of justice, equity, and good conscience' is not present."). The same goes for his breach of express warranty and common law fraud claims. *See DeMaso v. Walmart Inc.*, 655 F. Supp. 3d 696, 704 (N.D. Ill. 2023) ("The Court's finding that a reasonable consumer would not be misled for purposes of the ICFA claim applies as well to the warranty claims."); *Slowinski v. BlueTriton Brands, Inc.*, 744 F. Supp. 3d 867, 884 (N.D. Ill. 2024) ("[A] common-law fraud claim can go nowhere without a plausible allegation of a false or deceptive statement." (citation modified)). Finally, because all of Halim's theories of relief fail, the Court need not reach BWW's arguments about his proposed class actions.

\* \* \*

Despite his best efforts, Halim did not "drum" up enough factual allegations to state a claim. Though he has standing to bring the claim because he plausibly alleged economic injury, he does not plausibly allege that reasonable consumers are fooled by BWW's use of the term "boneless wings." Halim asks this Court to allow him to amend his complaint, should it agree with BWW and grant the motion to dismiss. The federal rules indicate courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). If a plaintiff could conceivably allege facts sufficient to state a claim, courts should grant leave to amend. But where, as here, amendment would be futile, no such leave will be granted. *Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 520–21 (7th Cir. 2015). Accordingly, although it is difficult to imagine that Halim can provide additional facts about his experience that would demonstrate that BWW is committing a deceptive

9

act by calling its nuggets "boneless wings," but the Court will give him leave to try. Any amended complaint is due by March 20, 2026.

Date: February 17, 2026

John J. Tharp, Jr.
United States District Judge