**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

```
----------------------------------------------------  x
                                                      :
Aimen Halim, on behalf of himself and all             :
others similarly situated,                            :     CASE NO. 1:23-cv-01495
                                                      :
                                                      :
            Plaintiff,                                :
                                                      :
                                                      :
    v.                                                :     SECOND AMENDED CLASS
                                                      :     ACTION COMPLAINT
Buffalo Wild Wings, Inc.,                             :
                                                      :     JURY TRIAL DEMANDED
            Defendant.                                :
                                                      :
----------------------------------------------------  x
```

Plaintiff Aimen Halim ("Plaintiff"), on behalf of himself and all others similarly situated, brings this consumer protection and false advertising class action against Defendant Buffalo Wild Wings, Inc. ("Defendant" or "Buffalo Wild Wings"), predicated on the false and deceptive marketing and advertising of Buffalo Wild Wings' Boneless Wings. Plaintiff makes the following allegations based on the investigation of his counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on his personal knowledge.

## INTRODUCTION

1.      This class action seeks to challenge the false and deceptive marketing and advertising of Buffalo Wild Wings' Boneless Wings (the "Products").

2.      Specifically, the name and description of the Products (i.e., as "Boneless Wings") lead reasonable consumers to believe the Products are *actually* chicken wings. In other words, that the Products are chicken wings that have simply been deboned, and as such, are comprised of entirely chicken wing meat.

1

3. Unbeknownst to Plaintiff and other consumers, the Products are not wings at all, but instead, they are slices of chicken **breast meat** deep-fried like wings. Indeed, the Products are more akin, in composition, to a chicken nugget than to a chicken wing.

4. This deceptive marketing practice defies reasonable consumers' expectations. Indeed, as described in further detail below, survey research demonstrates that 43% of Illinois consumers who purchased Buffalo Wild Wings' boneless wings in the past year believe the Products contain only wing meat. *See infra* Paragraphs 45-46. Separately, a YouGov poll of over 9,000 U.S. adults found that only 22% of Americans believe boneless wings made from chicken breast should be called "wings," and that 42% believe they should not be referred to as wings at all. *See infra* Paragraph 48.

5. Buffalo Wild Wings profits from this deception. As wholesale wing prices have risen, breast meat has become significantly cheaper, and Buffalo Wild Wings earns higher margins by labeling breast meat as "wings." The food industry's own analysts have called the practice "misleading." If Buffalo Wild Wings were being transparent, it could do what its competitors do. For example, Domino's Pizza calls its equivalent product "Boneless Chicken" and describes it as "100% whole white breast meat" and Walmart markets its equivalent product as "Boneless Buffalo Style Chicken **Wyngz**\*" (emphasis added) with a prominent disclaimer stating: "\*Contains No Wing Meat. Breaded Chicken Breast Chunks with Rib Meat Coated with a Spicy Sauce." A restaurant named Buffalo Wild "Wings" should be at least as careful.

6. Had Plaintiff and other consumers known that the Products are not actually chicken wings, they would have paid less for them, or would not have purchased them at all. Therefore, Plaintiff and consumers have suffered injury in fact, as a result of Defendant's deceptive practices.

2

7.      Plaintiff brings this class action lawsuit on behalf of himself, and all other similarly situated purchasers of the Products. Plaintiff seeks to represent a Nationwide Class and an Illinois Class (defined *infra* in paragraphs 52-53) (collectively referred to herein as the "Classes"). Plaintiff, on behalf of himself and other consumers, is seeking damages, restitution, and all other remedies the Court deems appropriate.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because (a) the proposed Classes, defined below, consist of more than one hundred members; (b) the parties are minimally diverse, as members of the proposed Classes are citizens of states different than Defendant's home state; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

9.      This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with the state of Illinois, conducts and transacts substantial business in Illinois, and/or otherwise intentionally avails itself of the markets in the state of Illinois by selling the Products in Illinois, to Illinois consumers.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Defendant regularly conducts business throughout this District, and a substantial part of the events giving rise to this action occurred in this District. Namely, Plaintiff purchased the Products in this District.

## PARTIES

11.      Plaintiff Aimen Halim is an Illinois citizen and currently resides in Chicago, Illinois. In January 2023, Mr. Halim purchased Boneless Wings from a Buffalo Wild Wings in Mount Prospect, Illinois. Based on the name and description of the Products (i.e., "Boneless

3

Wings"), Mr. Halim, reasonably believed the Products were actually wings that were deboned (i.e., comprised entirely of chicken wing meat).

12.     Had Mr. Halim known that the Products are not chicken wings, he would not have purchased them, or would have paid significantly less for them. Therefore, Mr. Halim suffered a financial injury as a result of Defendant's false and deceptive conduct.

13.     Defendant Buffalo Wild Wings, Inc. is a corporation with its principal place of business in Atlanta, Georgia. Defendant Buffalo Wild Wings, Inc.'s state of incorporation is Minnesota. Defendant Buffalo Wild Wings, Inc., through its agents, is responsible for the composition, preparation, advertising, marketing, and sale of the Products in Illinois.

## BACKGROUND

14.     Buffalo Wild Wings is a casual dining restaurant and sports bar chain that specializes almost entirely in selling chicken wings.

15.     Founded in 1982 and franchising since 1991, Buffalo Wild Wings has become one of the largest casual dining restaurants in the world, with franchises in the U.S., Canada, India, Mexico, Oman, Panama, Philippines, Saudi Arabia, United Arab Emirates, and Vietnam.[1]

16.     There are over 500 Buffalo Wild Wings franchises in the U.S., as well as over 50 internationally. Buffalo Wild Wings also boasts over 650 company-owned locations.[2]

17.     Buffalo Wild Wings began selling Boneless Wings in or around 2003.[3] Today, Boneless Wings are one of the most popular items on the menu.

18.     The practice of selling boneless "wings" that are not actually wings grew out of

---

[1] https://www.entrepreneur.com/franchises/buffalowildwings/282167
[2] *Id*.
[3] https://www.nytimes.com/2009/10/13/business/economy/13wings.html

the rising costs for actual chicken wings, and the decreasing cost for chicken breast. Indeed, as reported by the New York Times:

". . .[I]n restaurants from Sarasota to Seattle, an improbable poultry part is showing up on menus: a little chunk of chicken breast that is fried and sauced and sold, with marketer's brio, as a "boneless wing." All this is happening because wholesale chicken prices have turned upside down. The once-lowly wing is selling at a premium over what has long been the gold standard of poultry parts, the skinless boneless chicken breast."[4]

19.     The dramatic rise in chicken wing prices was even recognized by Buffalo Wild Wings itself. Indeed, Mike Bell, the logistics and purchasing manager for Buffalo Wild Wings, has stated, "[b]asically a whole bunch of [poultry processors] are throwing their hands in the air and saying, 'I don't know what's going on. We've never seen it this way.'"[5]

20.     The rising cost for actual wings was caused, in part, by the Great Recession.[6] "Restaurants, normally big buyers of breast meat, slashed orders as millions of people cut back on eating out, and breast prices slumped. But demand for wings [] remained strong, partly because people perceived them as a cheap luxury."[7]

21.     Despite the recession, to capitalize on the continued demand by consumers for chicken wings, restaurants like Buffalo Wild Wings grew and posted increasing profits. "Adding to the demand [during the recession]. The brisk growth of restaurant chains focusing on wings, like Atomic Wings, Wingstop and Wing Zone. Several chains have been remarking

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

this year about how much business is up in the recession."[8] "The major public company in this group, Buffalo Wild Wings, reported a 27 percent earnings jump in the first half of the year."[9]

22.     Indeed, as noted in a 2018 food article with poultry analyst Russ Whiteman:

"In this time of high-flying wing prices, 'boneless' branding is emerging as a viable solution for processors desperate to push their record-low-priced white meat, and for retailers who can't afford the real ('traditional') thing. Take, for example, Buffalo Wild Wings. Whitman notes the chain replaced its half-price-Tuesday deals with a boneless promotion—a move that cut costs, boosted earnings, and temporarily staved off acquisition. (The chain's sales had slumped before the boneless bump.)"[10]

23.     "Now, 'the first question they ask you is, 'would you like boneless wings, or our traditional?' Whitman says."[11]

24.     Thus, it seems clear why Buffalo Wild Wings began selling boneless wings, and why it has continued to purposefully mislead consumers: a profit motive.

25.     Other food articles have also commented on the profit motive driving the marketing, advertising, and sale of boneless wings:

"If you're planning to go to a bar — or feed your guests takeout — for the Super Bowl this year, you might notice your go-to chain is pushing a slightly different product when you order wings. Once the wallflower of the poultry world, chicken wings have become the belles of the finger food ball; and with the National Chicken Council expecting wing consumption to hit 1.42 billion pieces during the game this year, and chicken wing prices higher than ever, restaurants are turning to creative alternatives like

---

[8] *Id.*
[9] *Id.*
[10] https://thecounter.org/super-bowl-boneless-chicken-wings-poultry-economics/
[11] *Id.*

boneless chicken wings' for their promotional deals."[12]

**CHALLENGED REPRESENTATIONS**

26.     The Products challenged in this action are Buffalo Wild Wing's Boneless "Wings." *See image below*.



27.     Based on the name and description of the Products ("Boneless Wings"),

---

[12]     https://www.tastingtable.com/764812/the-real-reason-youre-seeing-more-boneless-wings-this-super-bowl/

reasonable consumers are led to believe that the Products are actually boneless wings. In other words, that the Products are chicken wings that have simply been deboned, and as such, are comprised of entirely chicken wing meat.

28.     Unbeknownst to Plaintiff and other consumers, the Products are not wings, but instead are slices of chicken breast meat.

29.     Thus, the marketing and advertising of the Products as "Boneless Wings" is false and misleading.

30.     The term "Boneless Wings" is not a fanciful name. The modifier "boneless," when applied to a named cut of meat, universally signals a processing modification to that cut, not a substitution of a different product. A "boneless pork chop" is a pork chop with the bone removed; it is not pork *loin* rebranded as a "pork chop." A "boneless ribeye" is a ribeye with the bone removed; it is not *sirloin* rebranded as a "ribeye." A "boneless chicken thigh" is a chicken thigh with the bone removed; it is not *breast meat* rebranded as a "thigh." Consumers apply the same linguistic logic to "boneless wings": they expect a wing with the bone removed.[13]

31.     Indeed, Russ Whitman, a poultry analyst at business publisher Urner Barry, which analyzes commodities, has stated:

---

[13] The term "Boneless Wings" is fundamentally different from "Cauliflower Wings," which also appears on Buffalo Wild Wings' menu. "Cauliflower" is a category-breaking modifier — everyone knows cauliflower is a *vegetable*, not poultry, so "cauliflower wing" is self-evidently metaphorical. By contrast, "boneless" is a processing modifier that describes something done to an existing product (removing the bone), not a substitution of an entirely different substance. Similarly, the analogy to "chicken fingers" is inapt. Chickens do not have fingers, making "chicken fingers" anatomically absurd and self-evidently fanciful. Chickens do have wings, and those wings can be deboned, so "boneless wings" describes a product that a consumer could reasonably expect to exist.

8

"I mean, no, it's not a wing at all. It's white meat, it's breast meat. Is it fair? I don't know what the rules are. It's misleading."[14]

32.     In fact, in 2020, a Nebraska consumer also called out restaurants like Buffalo Wild Wings for using the name "Boneless Wing." In the speech he made to his local city council, he stated:

"Nothing about boneless chicken wings actually come from the wing of a chicken. We would be disgusted if a butcher was mislabeling their cuts of meats but then we go around pretending as though the breast of the chicken is its wing."[15]

33.     In response, Buffalo Wild Wings refused to change its practices,[16] and has failed to acknowledge the very basic point the consumer was making—the Products should not be called Boneless "Wings" because they are not wings at all.

34.      Indeed, Buffalo Wild Wings' competitors acknowledge this basic fact and choose to play by the rules by naming and marketing their products accurately.

35.     For example, Domino's Pizza uses the name Boneless "Chicken" and is careful to conspicuously inform consumers that the product is made of "100% whole white ***breast meat***." *See image below.*

---

[14] https://thecounter.org/super-bowl-boneless-chicken-wings-poultry-economics/
[15] https://www.foxnews.com/food-drink/buffalo-wild-wings-wingstop-boneless-wings-viral-video-response
[16] *Id.*

# BONELESS CHICKEN



Breaded chicken made with 100% whole white breast meat. Customize with your choice of dipping cup: ranch, blue cheese, hot buffalo, honey BBQ or sweet mango habanero.

36.   It should be noted that Domino's Pizza also sells actual chicken wings, and that, a restaurant named Buffalo Wild "Wings" should be just as careful if not more in how it names its Products.

37.   To protect against this kind of consumer deception, USDA's Food Safety and Inspection Service ("FSIS") has adopted a labeling policy prohibiting the use of the term "wings" to describe products that are not made from the entire wing (excluding the wingtip). U.S. Dep't Agriculture, *askFSIS Public Q&A: Use of "Wyngz" on Poultry Product Labeling*,

ask.usda.gov (Sep. 10, 2025) (citing 9 CFR 381.170(b)(7)).[17] Instead, FSIS only permits the alternative spelling "wyngz" for processed products that are made from breast meat and shaped or styled like wings. In addition, FSIS requires that manufacturer using the term "wyngz" adhere to strict conditions intended to prevent consumers from being misled, including using an asterisk to link the term "wyngz" to a prominent disclaimer such as "*Contains No Wing Meat."

38.     Consistent with this federal policy, Walmart's Great Value brand sells a retail product labeled "Fully Cooked Breaded Boneless Buffalo Style Chicken Wyngz*" bearing a conspicuous asterisk disclaimer stating: "*Contains No Wing Meat – Breaded Chicken Breast Chunks with Rib Meat Coated with a Spicy Sauce." [18] *See image on the following page.* While this FSIS labeling policy applies to packaged products under federal inspection rather than to restaurant menus, it reflects the federal government's judgment that the word "wings" on a breast meat product is inherently misleading to consumers absent clear disclosure — the very deception that Buffalo Wild Wings practices on its menu without any disclaimer whatsoever.

---

[17] https://ask.usda.gov/s/article/askFSIS-Public-Q-A-wyngz
[18] https://www.walmart.com/ip/Great-Value-Buffalo-Style-Seasoned-Boneless-Fully-Cooked-Chicken-Wyngz-24-oz-Frozen/7696441



39.     Plaintiff and Class members did not know, and had no reason to know, that the

Products were not chicken wings because of how the Products are deceptively marketed and

advertised.

40.     Plaintiff's and other consumers' reasonable belief that the Products are chicken

wings was a significant factor, and therefore was material, in each of their decisions to purchase

12

the Products. Chicken wings are a more premium and desirable product than a product made of chicken breast meat.

41. As the entities responsible for the development, ingredients, preparation, advertising, marketing, and sale of the Products, Defendant knew or should have known that the Products are falsely and deceptively marketed and advertised. Moreover, Defendant knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on its representations of the Products and be deceived. Indeed, as discussed in paragraphs 32 and 33, Buffalo Wild Wings has responded to at least one customer complaint about the name of the Products being misleading.

42. As outlined herein, consumers are willing to pay more for the Products based on the belief that the Products are chicken wings. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that the truth about the Products. Thus, through the use of misleading representations, Defendant commands a price that Plaintiff and the Classes would not have paid had they been fully informed.

43. Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

**CONSUMER SURVEYS CONFIRM DECEPTION**

44. Multiple independent sources of empirical evidence confirm that a significant portion of consumers are misled by the term "Boneless Wings." These sources include a consumer survey of actual Buffalo Wild Wings customers, an online poll by YouGov, and

13

publicly available statements from consumers voicing their disappointment that boneless wings are not in fact made from chicken wings.

45.     Indeed, Plaintiff and his counsel commissioned an online survey from an independent third party to confirm that consumers are deceived. The survey was conducted among a demographically representative sample of 400 Illinois residents who had visited a Buffalo Wild Wings restaurant and purchased Boneless Wings within the past 12 months. As part of the Survey, among other tasks, respondents were shown an image of Buffalo Wild Wings' actual menu depicting the "WINGS" section with "BONELESS," "TRADITIONAL," and "CAULIFLOWER WINGS" subcategories, along with pricing, calorie counts, and sauce options. Respondents were then asked: "When viewing the image above, what part of the chicken do you believe is in Buffalo Wild Wings' Boneless Wings?" To respond, respondents were provided six answer choices: Leg, Breast, Wing, Thigh, Neck, and "More than one part of the chicken."

46.     The results confirmed that consumers are deceived by Defendant's use of the term "Boneless Wings." *43.0% of respondents (172 of 400) stated they believe the Products contain exclusively wing meat.* An additional 14.8% (59 of 400) stated they believe the Products contain more than one part of the chicken, and of that group, 61.0% (36 of 59) included wing meat among their selections. In total, approximately 52% of all surveyed Buffalo Wild Wings' Boneless Wing purchasers believed the Products contain wing meat. A true and correct copy of the Survey results is attached hereto as Exhibit A.

47.     Notably, the menu shown to respondents contains every contextual cue that might inform a consumer's understanding of the Products. Despite having access to all of the

14

contextual cues on the menu, 43% of actual Buffalo Wild Wings customers still believed the Products contained exclusively wing meat.

48.     Independent polling corroborates the survey findings. On March 16, 2023, YouGov, one of the most widely recognized public opinion research firms in the world, conducted an online poll of 9,251 U.S. adults.[19] YouGov asked: "Should boneless chicken wings that are made from chicken breast, rather than the chicken wing, be referred to as 'wings' or not?" ***Only 22% of respondents said they should be referred to as "wings." By contrast, 42% said they should not be referred to as "wings."*** The remaining respondents expressed no opinion (30%) or were not sure (6%). Among those with an opinion, respondents opposed the "wings" label by a nearly two-to-one margin.[20]

49.     Taken together, the empirical evidence demonstrates that a significant portion of the consuming public is misled by the term "boneless wings." Courts in this District and elsewhere have found comparable survey results sufficient to support a claim of deception. *See Vanzant v. Hill's Pet Nutrition Inc.*, 2023 WL 6388300, at *10 (N.D. Ill. Sept. 29, 2023) (finding plaintiff's theory of deception was not "idiosyncratic or possibly unique" where survey showed 22-46% of respondents shared plaintiff's perception and where deceived by product labeling); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018) (finding 40.59% deception rate "is still a legally significant percentage of people who would be mislead"). Indeed, courts have found even lower net confusion rates to be sufficient in analogous contexts. *See, e.g., United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 532 (S.D.N.Y. 2011) (net confusion rates of 17.8%-27.8%

---

[19] https://yougov.com/en-us/daily-results/20230316-a69e2-2

[20] The results were even more pronounced in the Midwest, the region that includes Illinois: only 19% of Midwest respondents said boneless chicken wings made from breast meat should be referred to as "wings," while 43% said they should not.

sufficient); *EnergyBrands, Inc. v. Beverage Mktg. USA, Inc.*, 2002 WL 826814, at *2 (S.D.N.Y. May 1, 2002) (17% net confusion sufficient). These survey results in paragraphs 45-48 are especially telling because those surveys employed plurality-response formats (offering respondents a multitude of answer choices rather than two options, e.g. agree or disagree). Under such conditions, the statistical likelihood of any single response option being selected by chance is substantially lower than in a two-option survey, meaning the 42% and 43% deception rates reported here reflect a far stronger signal of genuine consumer deception than those figures would in a binary yes-or-no poll.

50. Publicly available statements from consumers on social media platforms, online forums, and in published commentary reflect widespread surprise, disappointment, and feelings of deception upon learning that "boneless wings" are not made from wing meat. Representative examples, collected from X.com, Quora, ResetEra, and other public sources, are attached hereto as Exhibit B. These statements include consumers describing their first boneless wing purchase as "deceptive advertising," expressing that they expected "deboned wing meat put into some kind of nugget form," calling the practice a "scam," and stating that boneless wing sales "would plummet if they had to be called chicken nuggets." One consumer, replying directly to Buffalo Wild Wings' own social media account, wrote: "Your wings should be real. Stop being deceptive." These are not isolated complaints. They are consistent with the survey evidence described above.

51. Indeed, even absent the empirical evidence, the question of what consumers reasonably expect is properly one for the finder of fact. As Justice Donnelly of the Ohio Supreme Court observed in dissent: "Jurors likely have eaten boneless wings, some will have fed boneless wings to their children, and jurors have common sense. They will be able to

determine, better than any court, what a consumer reasonably expects when ordering boneless wings." *Berkheimer v. REKM, L.L.C., 253 N.E. 3d 1,7* (Ohio 2024) (Donnelly, J. dissenting).

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of himself and all persons in the United States, who within the relevant statute of limitations periods, purchased any of the Products ("Nationwide Class").

53.     Plaintiff also seeks to represent a subclass of all Illinois residents who purchased any of the Products in the state of Illinois within the relevant statute of limitations period ("Illinois Class").

54.     Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

55.     Plaintiff reserves the right to modify or amend the class definitions with greater specificity after having had an opportunity to conduct discovery.

56.     Numerosity: The proposed classes and subclass are so numerous that joinder of all members would be impractical. The Products are sold in numerous states across the country, including Illinois, at numerous Buffalo Wild Wings restaurants. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is

17

impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable through discovery.

57.     Common Questions Predominate: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

   a. Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the advertising, marketing, and sale of the Products;

   b. Whether reasonable consumers are likely to be deceived by Defendant's marketing, advertising, and sale of the Products;

   c. Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

   d. Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

   e. Whether Plaintiff and the Classes are entitled to damages and/or restitution, and in what amount; and

   f. Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

58.     Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a

common nucleus of operative fact, namely, Defendant's deceptive marketing, advertising, and sale of the Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Class members have been exposed to the same or substantially similar deceptive practice, as each of the Products have the same core deceptive name and description ("Boneless Wings"). Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

59.     Superiority: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

60.     Typicality: Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

61.     Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and his counsel.

62.     Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

19

63.     This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the Classes predominate over any questions that affect only individual members, and because the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.

**FIRST CLAIM FOR RELIEF**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"),**
**815 ILCD 505/1, *et seq.***
**(*for the Illinois Class*)**

64.     Plaintiff repeats the allegations contained in Paragraphs 1-63 above as if fully set forth herein.

65.     Plaintiff brings this claim individually and on behalf of the members of the proposed Illinois Class.

66.     As alleged herein, Defendant misrepresented that the Products were chicken wings.

67.     Plaintiff believed the Products he purchased were chicken wings, even though they were not.

68.     Defendant's false and deceptive representations and omissions about the meat in the Products are material in that they influence consumer purchasing decisions.

69.     Plaintiff and the Illinois Class relied on the representations and omissions and were deceived as a result. Plaintiff and the Illinois Class members would not have purchased the Products or paid as much if the true facts had been known about Products. As a result, they suffered damages and are entitled to all remedies available under the ICFA.

**SECOND CLAIM FOR RELIEF**
**Breach of Express Warranty**
(*for the Illinois Class*)

70.     Plaintiff repeats the allegations contained in Paragraphs 1-63 above as if fully set forth herein.

71.     Plaintiff brings this claim individually and on behalf of the members of the proposed Illinois Class.

72.     Uniform Commercial Code 810 ILCS 5/2-313 provides that: (a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise; and (b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

73.     As alleged herein, Defendant has expressly warranted in the marketing and advertising of the Products that they are chicken wings.

74.     These representations: (1) are affirmations of fact or promises made by Defendant to consumers that the Products are in fact chicken wings; (2) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representations; and (3) created an express warranty that the Products would conform to those affirmations of fact or promises. In the alternative, the representations about the Products ("Boneless Wings") are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the Products' name and description.

75.     Plaintiff and members of the Illinois Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those

21

warranties.

76.     Defendant has breached the express warranty made to Plaintiff and members of the Illinois Class by failing to make the Products with chicken wing meat.

77.     Plaintiff and members of the Illinois Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the Illinois Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with the Products.

78.     As a result, Plaintiff and members of the Illinois Class were injured as a direct and proximate result of Defendant's breach, and deserve to recover all damages afforded under the law.

79.     In or around January 2023, Plaintiff discovered Defendant's breach of express warranty. On January 26, 2023, Plaintiff, on behalf of himself and all other class members, sent Defendant a letter notifying Defendant of its breach.

**THIRD CLAIM FOR RELIEF**
**Common Law Fraud**
(*for the Illinois Class*)

80.     Plaintiff repeats the allegations contained in Paragraphs 1-63 above as if fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of the members of the proposed Illinois Class.

82.     As alleged herein, Defendant has willfully, falsely, and knowingly misrepresented the Products as being boneless chicken wings.

83.     Defendant's misrepresentations were material (i.e., they affected the purchasing decisions of Plaintiff and members of the Illinois Class), because the misrepresentations relate

to the Products' composition and/or ingredients.

84. Defendant knew or recklessly disregarded the fact that the Products are not chicken wings. Defendant intended to have Plaintiff and members of the Illinois Class rely on the Boneless Wing representations and purchase the Products as a result.

85. Plaintiff and members of the Illinois Class have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products, and if Plaintiff and members of the Illinois Class had known the truth about the Products, they would not have paid monies for the Products or would have paid less monies for the Products.

86. For these reasons, Plaintiff and members of the Illinois Class have suffered monetary losses, including interest they would have accrued on these monies, as a direct and proximate result of Defendant's fraudulent conduct.

**FOURTH CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
**(*for the Nationwide Class; in the alternative Illinois Class*)**

87. Plaintiff repeats the allegations contained in Paragraphs 1-63 above as if fully set forth herein.

88. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, Illinois Class against Defendant.

89. As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the Nationwide/Illinois Class, to induce them to purchase the Products. Plaintiff and members of the Nationwide/Illinois Class have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendant. Plaintiff and members of the Nationwide/Illinois Class therefore have been induced by Defendant's misleading and deceptive representations about the Products, and paid more

23

money to Defendant for the Products than they otherwise would and/or should have paid.

90. Plaintiff and members of the Nationwide/Illinois Class have conferred a benefit upon Defendant as Defendant has retained monies paid to it by Plaintiff and members of the Nationwide/Illinois Class.

91. The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Nationwide/Illinois Class– i.e., Plaintiff and members of the Nationwide/Illinois Class did not receive the full value of the benefit conferred upon Defendant.

92. Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon it without paying Plaintiff and the Nationwide/Illinois Class back for the difference of the full value of the benefits compared to the value actually received.

93. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Nationwide/Illinois Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully prays for following relief:

A. Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representatives, and appointment of his counsel as Class counsel;

B. An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and

24

unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

  C.  An award of all economic, monetary, actual, consequential, compensatory, and treble damages caused by Defendant's conduct;

  D.  An award of punitive damages;

  E.  An award to Plaintiff and his counsel of his reasonable expenses and attorneys' fees;

  F.  An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

  G.  For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: March 20, 2026

         **TREEHOUSE LAW, LLP**

         By:   */s/ Ruhandy Glezakos*

         Ruhandy Glezakos
         Benjamin Heikali
         3130 Wilshire Blvd., Suite 555
         Santa Monica, CA 90403
         Telephone: (310) 751-5948
         rglezakos@treehouselaw.com
         bheikali@treehouselaw.com

         *Attorneys for Plaintiff and the*
         *Putative Classes*