**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AIMEN HALIM, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>BUFFALO WILD WINGS, INC.,<br><br>        Defendant. | Case No.<br>1:23-cv-01495 |

---

**BUFFALO WILD WINGS, INC.'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT AND BRIEF IN SUPPORT**

---

Jason D. Rosenberg (Bar #6275801)
Andrew G. Phillips (*pro hac vice*)
Alan Pryor (*pro hac vice*)
Sarah Parker (*pro hac vice*)
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000 (telephone)
(404) 881-7777 (facsimile)
jason.rosenberg@alston.com
andrew.phillips@alston.com
alan.pryor@alston.com
sarah.parker@alston.com

*Attorneys for Buffalo Wild Wings, Inc.*

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.    The Court Already Dismissed Plaintiff's FAC Because His Theory of Deception Failed to State a Plausible Claim for Relief. ............................................................ 2

II.   Plaintiff's Second Amended Complaint Provides No Additional Allegations About His January 2023 Purchasing Experience. ...................................................... 3

III.  Plaintiff's Second Amended Complaint Adds Deeply Flawed Allegations that Cannot Support Plaintiff's Claimed Deception from Years Earlier. ................................ 6

LEGAL STANDARD.......................................................................................................... 6

ARGUMENT AND CITATION TO AUTHORITY ........................................................... 7

I.    Plaintiff's Survey Allegations Cannot Salvage His Implausible Claims of Deception. ....................................................................................................... 7

     A.    Plaintiff's After-the-Fact Survey Cannot Support His Claimed Deception From Years Earlier. ............................................................................. 8

     B.    Plaintiff's Survey Allegations Do Not Change the Conclusion that Reasonable Consumers Are Not Misled by BWW's "Boneless Wings." ............ 11

          1.    Consumers' Ordinary Experience Confirms There Is No Deception. ................................................................................... 12

          2.    Plaintiff's Allegations Establish that "Boneless Wings" Have Existed in the Public Consciousness for Decades. ................................... 13

          3.    The Context Surrounding Plaintiff's Allegations Confirms There Is No Deception. ..................................................................... 14

II.   Plaintiff's Other Attempts at New Allegations Cannot Salvage His Facially Deficient Claims. .............................................................................................. 17

     A.    The Online Poll Does Not Support Plaintiff's Theory of Deception. ................... 17

     B.    A Handful of Online Comments Does Not Support Plaintiff's Theory of Deception. ................................................................................... 18

     C.    Irrelevant Federal "Labeling Policy" Does Not Support Plaintiff's Theory of Deception. ............................................................................ 20

i

III.   Plaintiff's Nationwide Unjust Enrichment Claim Fails. .................................................... 21

     A.   Plaintiff's Nationwide Class Fails on the Pleadings. ............................................ 21

     B.   Plaintiff's Unjust Enrichment Claim Still Fails as a Matter of Law..................... 22

IV.   The Court Should Deny Plaintiff Leave to Amend His Complaint Again. ....................... 23

CONCLUSION .................................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................6

*Axon v. Citrus World, Inc.*,
No. 18-cv-04162, 2019 WL 8223527 (E.D.N.Y. Jan. 14, 2019) ...........................12

*Beardsall v. CVS Pharm., Inc.*,
953 F.3d 969 (7th Cir. 2020) ...........................................................................7, 19

*Beardsall v. CVS Pharm., Inc.*,
No. 16 C 6103, 2019 WL 1168103 (N.D. Ill. Mar. 13, 2019)...............................19

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) .................................................................11, 12, 13

*Beers v. Mars Wrigley Confectionery US, LLC*,
No. 21-CV-2 (CS), 2022 WL 493555 (S.D.N.Y. Feb. 17, 2022) ...........................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................6

*Bell v. Publix Super Mkts., Inc.*,
982 F.3d 468 (7th Cir. 2020) ...........................................................................7, 21

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ...............................................................................6

*Berkheimer v. REKM, L.L.C.*,
253 N.E.3d 1 (Ohio 2024)..................................................................................13

*Bermudez v. Colgate-Palmolive Co.*,
667 F. Supp. 3d 24 (S.D.N.Y. 2023)....................................................................8

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) .............................................................................22

*Brodsky v. Aldi Inc.*,
No. 20-cv-07632, 2021 WL 4439304 (N.D. Ill. Sept. 28, 2021)............................7

*Callahan v. Proctor & Gamble Co.*,
No. 23 CV 2072, 2024 WL 2892838 (N.D. Ill. June 10, 2024)............................18

*Cerretti v. Whole Foods Mkt. Grp., Inc.*,
No. 21 CV 5516, 2022 WL 1062793 (N.D. Ill. Apr. 8, 2022)..............................21

*Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020)..................................................................................................15

*Chiappetta v. Kellogg Sales Co.*,
No. 21-CV-3545, 2022 WL 602505 (Mar. 1, 2022).......................................................7, 12, 14

*Cowen v. Lenny & Larry's, Inc.*,
No. 17-cv-1530, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017) ................................................21

*Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urb. Dev.*,
383 F.3d 552 (7th Cir. 2004) ................................................................................................23

*Cristia v. Trader Joe's Co.*,
No. 22 CV 1788, 2022 WL 17551552 (N.D. Ill. Dec. 9, 2022) ..............................................19

*Culver v. Unilever U.S. Inc.*,
No. CV 19-9263-GW-RAOx, 2021 WL 10382839 (C.D. Cal. Jan. 21, 2021)..........................9

*Deetsch v. Lei*,
No. 22-cv-1166-RSH-BLM, 2023 WL 6373073 (S.D. Cal. July 21, 2023)............................19

*Dumas v. Diageo PLC*,
No. 15-cv-1681, 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016) ................................................17

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .......................................................................................7, 12, 19

*Engram v. GSK Consumer Healthcare Holdings (US) Inc.*,
No. 19-CV-2886(EK)(PK), 2021 WL 4502439 (E.D.N.Y. Sept. 30, 2021).............................9

*Fullerton v. Corelle Brands, LLC*,
No. 18-cv-4152, 2019 WL 4750039 (N.D. Ill. Sep. 30, 2019)...............................................22

*Harris v. Rust-Oleum Corp.*,
No. 21-cv-01376, 2022 WL 952743 (N.D. Ill. Mar. 30, 2022) ..............................................22

*Hillen v. Blistex, Inc.*,
No. 17 C 2074, 2017 WL 2868997 (N.D. Ill. July 5, 2017) ...................................................19

*Horist v. Sudler & Co.*,
941 F.3d 274 (7th Cir. 2019) ................................................................................................23

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
No. 05-cv-2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006)...............................................22

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
No. 20-cv-23392, 2021 WL 3666312 (S.D. Fla. Aug. 18, 2021) ...........................................13

*Jessani v. Monini N.A., Inc.*,
744 F. App'x 18 (2d Cir. 2018) ...................................................................................15

*Kardovich v. Pfizer, Inc.*,
97 F. Supp. 3d 131 (E.D.N.Y. 2015) .............................................................................8

*Karlinski v. Costco Wholesale Corp.*,
616 F. Supp. 3d 753 (N.D. Ill. 2022) ..........................................................................18

*Kennard v. Kellogg Sales Co.*,
No. 21-cv-07211-WHO, 2022 WL 4241659 (N.D. Cal. Sep. 14, 2022) ...................10

*Khoday v. Symantec Corp.*,
93 F. Supp. 3d 1067 (D. Minn. 2015), *as amended* (Apr. 15, 2015) ........................22

*La Barbera v. Olé Mexican Foods Inc.*,
No. EDCV 20-2324 ........................................................................................................9

*Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
912 F.3d 1049 (7th Cir. 2019) ....................................................................................23

*Midwest Grinding Co. v. Spitz*,
716 F. Supp. 1087 (N.D. Ill. 1989), *aff'd,* 976 F.2d 1016 (7th Cir. 1992) ...............23

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ..........................................................................12, 15, 16

*Muir v. Nature's Bounty, Inc.*,
No. 15-cv-9835, 2017 WL 4310650 (N.D. Ill. Sep. 28, 2017)...................................22

*Nacarino v. Chobani, LLC*,
No. 20-cv-07437-EMC, 2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ......................11

*Parent v. MillerCoors LLC*,
No. 3:15-cv-1204, 2015 WL 6455752 (S.D. Cal. Oct. 26, 2015)...............................14

*Parham v. Aldi, Inc.*,
No. 19 Civ. 8975 (PGG), 2021 WL 4296432 (S.D.N.Y. Sept. 21, 2021) ...........8, 9, 11

*Pelayo v. Nestlé USA, Inc.*,
989 F. Supp. 2d 973 (C.D. Cal. 2013) ...................................................................12, 16

*Procter & Gamble Co. v. Ultreo, Inc.*,
574 F. Supp. 2d 339 (S.D.N.Y. 2008)............................................................................9

*Puri v. Costco Wholesale Corp.*,
No. 5:21-CV-01202-EJD, 2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) ............11, 18

*Rapp v. Green Tree Servicing, LLC*,
    302 F.R.D. 505 (D. Minn. 2014)............................................................................22

*Reinitz v. Kellogg Sales Co.*,
    No. 21-cv-01239, 2022 WL 181391 (C.D. Ill. June 2, 2022)...........................7, 12

*Robinson v. Walgreen Co.*,
    No. 20-cv-50288, 2022 WL 204360 (N.D. Ill. Jan. 24, 2022).............................7

*Sarr v. BEF Foods, Inc.*,
    No. 18-cv-6409, 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ............................16

*Seljak v. Pervine Foods, LLC*,
    No. 21-cv-9561, 2023 WL 2354976 (S.D.N.Y. Mar. 3, 2023)............................15

*Sneed v. Ferrero U.S.A., Inc.*,
    No. 22-cv-1183, 2023 WL 2019049 (N.D. Ill. Feb. 15, 2023)............................7

*Steinberg v. Icelandic Provisions, Inc.*,
    No. 21-cv-05568, 2022 WL 220641 (N.D. Cal. Jan. 25, 2022)..........................17

*Suero v. NFL*,
    No. 22-cv-31, 2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022) ............................14

*Thompson v. Bayer Corp.*,
    No. 4:07-cv-00017, 2009 WL 362982 (E.D. Ark. Feb. 12, 2009).........................22

*True v. Conagra Foods, Inc.*,
    No. 07-cv-00770, 2011 WL 176037 (W.D. Mo. Jan. 4, 2011)............................22

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021)...........................................................8, 11

*Van Holt v. Liberty Mut. Fire Ins. Co.*,
    163 F.3d 161 (3d Cir. 1998)...............................................................................19

*Warren v. Coca-Cola Co.*,
    670 F. Supp. 3d 72 (S.D.N.Y. 2023)..................................................12, 14, 15, 16

*Weaver v. Champion Petfoods USA Inc.*,
    No. 18-CV-1996-JPS, 2019 WL 7370374 (E.D. Wis. Dec. 31, 2019)...................10

*Wertymer v. Walmart, Inc.*,
    No. 23 CV 14700, 2024 WL 2126732 (N.D. Ill. Feb. 22, 2024)...........................12

*Yu v. Dr Pepper Snapple Grp., Inc.*,
    No. 18-CV-06664-BLF, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020)...................11

**RULES**

Fed. R. Civ. P. 9(b) ..................................................................................................................6

Fed. R. Civ. P. 15(a)(2)........................................................................................................3, 23

Fed. R. Civ. P. 12(b)(6)............................................................................................................6

**STATUTES**

21 U.S.C. § 457(b) ..................................................................................................................20

**OTHER AUTHORITIES**

9 C.F.R. § 381.10(d)(1)............................................................................................................21

*Buffalo Wild Wings Launches First-Ever Holiday Campaign 'Hank the Halls' with Limited-Edition Blind Box* Drop, INSPIRE STORIES (DEC. 2, 2025), https://stories.inspirebrands.com/buffalo-wild-wings-launches-holiday-hank-the-halls-blind-box/ ................................................................................................................2

*Buffalo Wild Wings Sued Over Claim that 'Boneless Wings' Aren't Wings,* THE ONION (Mar. 15, 2023), https://www.theonion.com/buffalo-wild-wings-sued-over-claim-that-boneless-wings-1850225671............................................................................................2

Joseph Lamour, *Man Sues Buffalo Wild Wings,* TODAY (Mar. 13, 2023), https://www.today.com/food/news/buffalo-wild-wings-lawsuit-boneless-wings-rcna74738............................................................................................................................2

Sam Bloch, *Boneless Chicken Wings: It's Not a Lie if You Believe It*, THE COUNTER (Feb. 1, 2018) .........................................................................................................................4

William Neuman, '*Boneless' Wings, the Cheaper Bite*, N.Y. TIMES (Oct. 12, 2009)...............3, 14

**INTRODUCTION**

This Court already dismissed Plaintiff Aimen Halim's ("Plaintiff") First Amended Complaint ("FAC") against Buffalo Wild Wings, Inc. ("BWW") because its theory of deception was wholly implausible. *See generally* Memorandum Opinion and Order (Dkt. 35) ("Dismissal Order"). Plaintiff claims that he purchased BWW's Boneless Wings because he was purportedly duped into believing they were made from deboned meat from chicken wings. But as the Court found, this theory of deception "has no meat on its bones." Dismissal Order at 1. "Boneless wings," this Court observed, "are not a niche product" that could deceive reasonable consumers into thinking that "BWW's boneless wings were truly deboned chicken wings, reconstituted into some sort of Franken-wing." *Id.* at 7. Rather, "boneless wings" is a "common term that has existed for over two decades." It no more represents that boneless wings are truly de-boned wings than the term "chicken fingers" represents that a diner has "been served fingers." *Id.* at 7–8.

Plaintiff does nothing to fix these deficiencies in his Second Amended Complaint. *See* Dkt. 36 ("SAC"). ***First***, Plaintiff adds allegations about a survey he commissioned shortly after the Court's Dismissal Order, but that survey cannot salvage claims that are implausible on their face. To the contrary, the survey actually *rejects* Plaintiff's theory of deception, reporting that a majority of survey respondents purportedly expressed belief that anything from chicken breasts to necks to thighs to legs (to even an amalgamation of cuts) are in BWW's Boneless Wings. This flawed exercise does not and cannot serve as a proxy for the reasonable consumer. ***Second***, Plaintiff's additional allegations of selected online comments about what boneless wings *should* be called similarly fail to take flight because they do not demonstrate that any reasonable person—let alone a significant portion of the consuming public—believes that BWW's Boneless Wings are deboned chicken wings. ***Third***, Plaintiff cannot revive his implausible claims by relying on an irrelevant, one-off soundbite from a federal agency that does not regulate restaurant menu items.

Ultimately, Plaintiff is left still tilting at windmills as he again fights against "a common term that has existed for over two decades" (Dismissal Order at 8)—an effort already ridiculed by leading news outlets, both real and satirical alike. *See* Joseph Lamour, *Man Sues Buffalo Wild Wings,* TODAY (Mar. 13, 2023), https://www.today.com/food/news/buffalo-wild-wings-lawsuit-boneless-wings-rcna74738; *Buffalo Wild Wings Sued Over Claim that 'Boneless Wings' Aren't Wings,* THE ONION (Mar. 15, 2023), https://www.theonion.com/buffalo-wild-wings-sued-over-claim-that-boneless-wings-1850225671 (on-air anchor asking, "Is this The Onion?"). The Court should dismiss the SAC in its entirety and with prejudice.

## **BACKGROUND**

**I.    The Court Already Dismissed Plaintiff's FAC Because His Theory of Deception Failed to State a Plausible Claim for Relief.**

The operative facts for Plaintiff's claims remain the same as those that this Court dismissed. BWW is a "casual dining restaurant and sports bar chain," FAC ¶ 18; SAC ¶ 14, known for its winged, witty, and imaginary spokes-buffalo named Hank.[1] Plaintiff alleges that in January 2023 he purchased Boneless Wings from a BWW restaurant located in Mount Prospect, Illinois. FAC ¶ 13; SAC ¶ 11. Ignoring the irony of a winged buffalo hawking buffalo wings, Plaintiff nevertheless claims that BWW's Boneless Wings deceive consumers because he unilaterally "believed the [Boneless Wings] were actually wings that were deboned (i.e., comprised entirely of chicken wing meat)." *Id.* The Court dismissed this theory of deception because Plaintiff "did not 'drum' up enough factual allegations to state" a claim for relief. Dismissal Order at 8.

In doing so, the Court first rejected Plaintiff's claim that the term "boneless wings" is "'literally false' because the products are not wings[,]" observing that this argument is "debatable."

---

[1] *Buffalo Wild Wings Launches First-Ever Holiday Campaign 'Hank the Halls' with Limited-Edition Blind Box* Drop, INSPIRE STORIES (DEC. 2, 2025), https://stories.inspirebrands.com/buffalo-wild-wings-launches-holiday-hank-the-halls-blind-box/.

*Id.* at 6. In any event, even assuming "that the term 'boneless wing' is literally false," the Court still found that "it is not deceptive[.]" *Id.* at 7. It rejected Plaintiff's argument that BWW's presentation of Boneless Wings as an alternative to traditional wings deceives reasonable consumers. Just like "cauliflower wing"—which appears in the same "wings" section on the Menu—the term "boneless wing" is "clearly a fanciful name" that would not deceive a reasonable consumer. Finally, the Court found that additional facts supported this "common-sense conclusion": (1) "a product made out of the same ingredients, but requiring more time and work to create [de-boned wings], would cost more—but [Boneless Wings] do not"; and (2) "boneless wings" is nothing new and "is a common term that has existed for over two decades." *Id.* at 8.

At bottom, the Court held, a "reasonable consumer would not think that BWW's boneless wings were truly deboned chicken wings, reconstituted into some sort of Franken-wing." *Id.* at 7. Although the Court found it "difficult to imagine" that Plaintiff could plead any additional facts to support a plausible claim of deception, it granted him "leave to try" to do so. *Id.* at 9–10 (citing the liberal amendment standard under Fed. R. Civ. P. 15(a)(2)).

**II.     Plaintiff's Second Amended Complaint Provides No Additional Allegations About His January 2023 Purchasing Experience.**

Even though Plaintiff had ample opportunity to amend, his SAC simply reiterates the same theory of deception that the Court has already rejected. *See* SAC ¶¶ 17–23, 26. Notably, the SAC raises the same allegations and cites the same articles that undermine Plaintiff's claimed deception. One such piece—a *New York Times* article that is now well over a decade old—observed that the sale of "boneless wings, . . . slices of breast meat deep-fried like wings and served with the same sauces[,]" has been commonplace across the country since the early 2000s. *See* William Neuman, *'Boneless' Wings, the Cheaper Bite*, N.Y. TIMES (Oct. 12, 2009), Mot. for Judicial Notice ("MJN") **Exhibit B**. Indeed, Plaintiff concedes that BWW has sold its Boneless Wings since 2003, two

3

decades *before* he filed his complaint. *See* SAC ¶ 17. Thus, and as Plaintiff himself seems to acknowledge, boneless wings are neither new nor a "niche product," but rather "is a common term that has existed for over two decades." Dismissal Order at 8.

For a product that has been in the public consciousness and "one of the most popular items on [BWW's] menu," Plaintiff still raises no allegation that BWW concealed its practices or passed off Boneless Wings as "deboned wings." SAC ¶ 17. That is because—as this Court has already found—the term "boneless wing" is "clearly a fanciful name." Dismissal Order at 7. Even the very notion of a deboned chicken wing borders on the absurd: "it is nearly impossible, mechanically, for processors to debone a real chicken wing[.]" *See* Sam Bloch, *Boneless Chicken Wings: It's Not a Lie if You Believe It*, THE COUNTER (Feb. 1, 2018), MJN **Exhibit A**. Taking these allegations together, the SAC confirms that reasonable consumers recognize that Boneless Wings are *not* deboned chicken wings, but instead are made using boneless all-white chicken breast meat. *See infra*, Argument at Part I.B.

Even a cursory glance at the Menu reveals that no deception is afoot. BWW's Menu has a large "WINGS" section that offers a variety of winged *and* unwinged Buffalo-style options: Traditional (winged); Boneless (not winged); Cauliflower (not winged); and Tenders (not winged). *See* Menu, MJN **Exhibit C**. Whether a customer fancies winged, unwinged, or vegetable, the Menu promises only that these "WINGS" offerings will be prepared Buffalo-style: "Handspun In Your Favorite Sauces or Dry Seasoning" with customers' choice of among 19 sauces and 5 dry rubs. *Id.* The Menu also makes clear that Boneless Wings *cost less than traditional chicken wings*— anywhere between 10.8% to 18% less depending upon the quantity ordered:



*See* SAC ¶¶ 3, 26; MJN Ex. C. For a product that Plaintiff allegedly believed went through *additional* preparation—"deboned" and then reformed into bite-sized pieces—it should cost *more* (not less) than traditional wings. In short, consumers' ordinary experiences demonstrate that Plaintiff's professed belief—that the Boneless Wings are deboned wings and reformed into processed, bite-sized chunks—is as unreasonable as it is unappetizing.

5

**III.     Plaintiff's Second Amended Complaint Adds Deeply Flawed Allegations that Cannot Support Plaintiff's Claimed Deception from Years Earlier.**

In substance, the SAC makes only modest changes. Plaintiff changed the SAC only to add (1) the results of a survey that Plaintiff allegedly commissioned just weeks after the Court's Dismissal Order, SAC ¶¶ 4, 44–49 & Ex. A; (2) the results of an online opinion poll that does not test for deception, SAC ¶¶ 4, 44, 48; (3) excerpts of comments made on online forums about boneless wings, SAC ¶ 50 & Ex. B; and (4) allegations that other industry participants call their "equivalent product[s]" "Boneless Chicken" or "Wyngz" in a manner supposedly consistent with a now-removed remark by the USDA's Food and Safety Inspection Service, SAC ¶¶ 5, 35, 38. None of these additional allegations, however, nudge his allegations from unfounded to plausible.

## LEGAL STANDARD

In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). ***First***, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). ***Second***, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In addition, where, as here, a plaintiff alleges claims based on fraud, the complaint must also satisfy Federal Rule of Civil Procedure 9(b)'s requirement to "state with particularity the circumstances constituting" the alleged fraud. Fed. R. Civ. P. 9(b); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

6

## ARGUMENT AND CITATION TO AUTHORITY

As Plaintiff agrees and this Court has held, Plaintiff's claims are governed by the "reasonable consumer" standard.[2] *See, e.g.*, SAC at ¶¶ 2, 4, 6 (alleging the purported beliefs and expectations of "reasonable consumers"); Dismissal Order at 1, 6–9. To survive a motion to dismiss under this standard, Plaintiff must identify a particular statement or omission that is "likely to deceive reasonable consumers." *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). To do so, Plaintiff must demonstrate "a probability that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled." *Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *3 (Mar. 1, 2022) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). "Courts considering 'deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used.'" *Id.* at *4 (quoting *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020)).

Here, Plaintiff's SAC still comes nowhere close to satisfying this standard, and the Court should dismiss Plaintiff's claims in their entirety with prejudice because the SAC again fails to establish that BWW's Boneless Wings mislead reasonable consumers.

## I. Plaintiff's Survey Allegations Cannot Salvage His Implausible Claims of Deception.

The Court has already observed that "[b]oneless wings are not a niche product for which a consumer would need to do extensive research to figure out the truth." Dismissal Order at 8. That term, which has "existed for over two decades," is "clearly a fanciful name, because chickens *do*

---

[2] *See, e.g.*, *Robinson v. Walgreen Co.*, No. 20-cv-50288, 2022 WL 204360, at *6 (N.D. Ill. Jan. 24, 2022) (ICFA); *Reinitz v. Kellogg Sales Co.*, No. 21-cv-01239, 2022 WL 181391, at *6 (C.D. Ill. June 2, 2022) (fraud and express warranty); *Brodsky v. Aldi Inc.*, No. 20-cv-07632, 2021 WL 4439304, at *5 (N.D. Ill. Sept. 28, 2021) (express warranty); *Sneed v. Ferrero U.S.A., Inc.*, No. 22-cv-1183, 2023 WL 2019049, at *6 (N.D. Ill. Feb. 15, 2023) (unjust enrichment).

have wings, and those wings have bones," and a "reasonable customer would not think that BWW's boneless wings were truly deboned chicken wings, reconstituted into some sort of Franken-wing." Dismissal Order at 7–8.

**A.      Plaintiff's After-the-Fact Survey Cannot Support His Claimed Deception From Years Earlier.**

Undeterred by the Court's holding, Plaintiff commissioned a post hoc "online survey" conducted by an unnamed "independent third party," which he alleges demonstrates a reasonable consumer would be deceived by BWW's Boneless Wings. But courts consistently reject attempts to rely on "'studies in an effort to raise plausible inferences' that marketing is deceptive, and 'the studies cited do not' support [the plaintiff's] claims." *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 37 (S.D.N.Y. 2023) (quoting *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 141 (E.D.N.Y. 2015)). Indeed, Plaintiff's after-the-fact "survey" here is so "flawed that it does not . . . render [his] claims plausible." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 164 (S.D.N.Y. 2021); *see, e.g.*, *Parham v. Aldi, Inc.*, No. 19 Civ. 8975 (PGG), 2021 WL 4296432, at *7–8 (S.D.N.Y. Sept. 21, 2021).

*First*, and fundamentally, Plaintiff's survey is irrelevant because it fails to test Plaintiff's theory of liability. *See, e.g.*, *Twohig*, 519 F. Supp. 3d at 163 (observing that survey allegations did "not plausibly support Plaintiffs' claim" because it did not address "what Plaintiffs allege"); *Parham*, 2021 WL 4296432, at *7–8 (similar). According to the SAC, Plaintiff does not simply assert his perceptions and beliefs, but rather that he was *deceived* by BWW's use of the term "Boneless Wings" on the Menu. *See, e.g.*, SAC ¶¶ 40–45. But Plaintiff's survey—which only showed respondents a portion of the Menu displaying the "WINGS" section and asked, "When viewing the image above, what part of the chicken you believe is in Buffalo Wild Wings' Boneless Wings?" SAC, Ex. A at 12–13—does not test whether survey respondents are actually deceived.

8

Plaintiff may attempt to downplay this blunder, but the Central District of California observed that a similarly constructed survey—commissioned by a plaintiffs' lawyer who represents Plaintiff here—"is wholly inadequate to provide any meaningful evidence for this case." *Culver v. Unilever U.S. Inc.*, No. CV 19-9263-GW-RAOx, 2021 WL 10382839, at *14 (C.D. Cal. Jan. 21, 2021). In dismissing plaintiff's challenge to a purportedly deceptive origin claim, the court observed that "asking the respondent where he or she believes the product is made is essentially asking the respondent to venture a guess based on insufficient information." *Id.* at *44.

So too here. Without more information about whether respondents were actually *deceived* by the label, the survey did not "push [Plaintiff's] reasonable consumer allegation over the plausibility line." *Id.* at *45; *see also La Barbera v. Olé Mexican Foods Inc.*, No. EDCV 20-2324 JGB (SPx), 2023 WL 4162348, at *20 n.4 (C.D. Cal. May 18, 2023) ("Another central problem is that the survey fails to provide adequate factual detail as to why a consumer might believe the Products were made in Mexico."); *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-CV-2886(EK)(PK), 2021 WL 4502439, at *6 (E.D.N.Y. Sept. 30, 2021) (observing that a survey cannot support a plausible claim for deception because it "posed a somewhat different question from the dispositive question in the case"). Indeed, by failing to give respondents the option of stating they "don't know" or "don't have an opinion" about BWW's Boneless Wings— in other words, inviting "guessing by those who did not get any clear message at all"—the survey cannot support Plaintiff's claims of deception. *Parham*, 2021 WL 4296432, at *8 (quoting *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 352 (S.D.N.Y. 2008)); *accord Culver*, 2021 WL 10382839, at *15 & n.29.[3]

---

[3] It is precisely for this reason that courts routinely exclude surveys that lack a control group because it is vital to determining whether or not a challenged representation actually deceived respondents. *See, e.g.*, *Culver*, 2021 WL 10382839, at *15 n.29 (observing that a response would be thrown out if a respondent

*Second*, the survey lacks any indicia of a sound methodology. The SAC does not reveal who conducted the survey, how the respondents were identified, what methodology it employed, the validation methods used, or how the respondents were identified and verified (much less whether they were a true "representative sample," SAC ¶ 45). Similarly, the survey provides no detail about how it presented the cropped image of the BWW Menu. While Plaintiff now claims that the survey "contains every contextual cue that might inform a consumer's understanding of the Products," SAC ¶ 47, he does not explain how these "contextual cues" compare to consumers' actual experiences at a BWW restaurant. *See, e.g.*, *Kennard v. Kellogg Sales Co.*, No. 21-cv-07211-WHO, 2022 WL 4241659, at *3–4 (N.D. Cal. Sep. 14, 2022) (explaining that product packaging should be examined in its full context because it would be unreasonable to cherry-pick discrete statements to prove deception). The fact that some respondents reported believing that BWW's Boneless Wings contained chicken neck meat undermines the seriousness of the survey's results. *See* SAC Ex. A, Question Nos. 8 & 9.

*Third*, Plaintiff's new survey allegations (if anything) underscore the implausibility of his claims. Even construing Plaintiff's survey in the best possible light, it indicates that a majority of consumers (57%) actually *rejected* Plaintiff's theory of deception by affirming that they believe that Boneless Wings contain something *other than* deboned wings. *See* SAC Exhibit A, at 13. Thus, even setting aside its other flaws, the survey confirms that respondents understand what Plaintiff does not—that a "reasonable consumer would not think that BWW's boneless wings were truly deboned chicken wings, reconstituted into some sort of Franken-wing." Dismissal Order at

---

identified another reason outside of the challenged representation); *see also Weaver v. Champion Petfoods USA Inc.*, No. 18-CV-1996-JPS, 2019 WL 7370374, at *5 (E.D. Wis. Dec. 31, 2019) (observing that control groups provide important context for a survey's results). Without a valid control group, the Court cannot conclude that the survey is reliable or relevant to Plaintiff's allegations. *Weaver*, 2019 WL 7370374, at *5.

10

7; *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) ("At bottom, the survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean or make plausible the allegation that reasonable consumers are misled by the term 'diet.'").

In short, Plaintiff's purported survey results are so "flawed that [they] do[] not contribute enough to render the claims plausible." *See Parham*, 2021 WL 4296432, at *8. Consequently, the end result is the same as before, and the Court should again dismiss Plaintiff's claims.

> **B.      Plaintiff's Survey Allegations Do Not Change the Conclusion that Reasonable Consumers Are Not Misled by BWW's "Boneless Wings."**

Even if the Court were to overlook the survey's flaws, that survey cannot resurrect an otherwise implausible claim. Courts have consistently held that consumer surveys cannot transform inconceivable allegations (like those here) into plausible claims. *See, e.g.*, *Twohig*, 519 F. Supp. 3d at 163 ("[A]dding surveys cannot alone salvage implausible claims." (quoting *Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-CV-06664-BLF, 2020 WL 5910071, at *5 (N.D. Cal. Oct. 6, 2020))); *Parham*, 2021 WL 4296432, at *7–8 (same); *Becerra*, 945 F.3d at 1231 (holding that survey about respondents' understanding of the term "diet" cannot "shift the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean or make plausible the allegation that reasonable consumers are misled by the term 'diet'"); *Puri v. Costco Wholesale Corp.*, No. 5:21-CV-01202-EJD, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021) ("[O]therwise facially implausible consumer deception claims cannot be redeemed by survey allegations alone.").

The same conclusion follows here, and the Court should dismiss the SAC because Plaintiff's survey "cannot rescue [his] claims from the zone of implausibility where implausibility is otherwise so clear." *Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2021 WL 3487117, at

11

*8 (N.D. Cal. Aug. 9, 2021). As this Court already found, the ordinary experience of and the information readily available to reasonable consumers confirm that Plaintiff's allegations are (at best) fanciful and implausible. Dismissal Order at 6–10; *see, e.g.*, *Chiappetta,* 2022 WL 602505, at *4–5; *Moore v. Trader Joe's Co.*, 4 F.4th 874, 883–85 (9th Cir. 2021); *Ebner*, 838 F.3d at 965–66; *Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, *81–85 (S.D.N.Y. 2023).

          1.        Consumers' Ordinary Experience Confirms There Is No Deception.

Much like how consumers know that "Diet Dr Pepper is a different product from Dr Pepper" and does not guarantee weight loss, *Becerra*, 945 F.3d at 1229, that pasta is not truly "natural" because "Buitoni Pastas are not springing fully formed from Ravioli trees and Tortellini bushes," *Pelayo v. Nestlé USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (cleaned up), or even that because of "the general mechanics of [lip balm] dispenser tubes . . . some product may be left in the tube," *Ebner*, 838 F.3d at 965, consumers also know in their ordinary experience that boneless wings are not made from deboned wings. Even the sources cited in the SAC accept as settled that boneless wings are made with all-white chicken meat, *not* deboned chicken wings. *See* SAC ¶¶ 17–23; MJN Exs. A, B; *see also Axon v. Citrus World, Inc.*, No. 18-cv-04162, 2019 WL 8223527, at *2 (E.D.N.Y. Jan. 14, 2019) (rejecting "[t]he conclusions plaintiff draws from" materials cited and attached to the complaint because they do not support the plaintiff's conclusions); *Wertymer v. Walmart, Inc.*, No. 23 CV 14700, 2024 WL 2126732, at *3 (N.D. Ill. Feb. 22, 2024) (concluding plaintiff failed to state a plausible claim where he relied on a report that undermined his allegations).[4]

---

[4] Plaintiff relies on a handful of news clippings, a commodities analyst, and a viral video of a Nebraska-based city council, but these one-off anecdotes only paint Plaintiff as an outlier. They do not—and cannot—make it plausible "that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled." *Chiappetta*, 2022 WL 602505, at *3 (quoting *Ebner*, 838 F.3d at 965); *see, e.g.*, *Reinitz*, 2022 WL 1813891, at *3 ("Whether or not experts agree, Plaintiff fails to support that the

12

So too here. The Court has already dismissed Plaintiff's very same allegations as implausible. *See generally* Dismissal Order. And it is not the only one. As the Court recognized in its Dismissal Order, the Ohio Supreme Court similarly found:

> And regarding the food item's being called a "boneless wing," it is common sense that that label was merely a description of the cooking style. A diner reading "boneless wings" on a menu would no more believe that the restaurant was warranting the absence of bones in the items than believe that the items were made from chicken wings, just as a person eating "chicken fingers" would know that he had not been served fingers. The food item's label on the menu described a cooking style; it was not a guarantee.

*Berkheimer v. REKM, L.L.C.*, 253 N.E.3d 1, 7 (Ohio 2024). Even the dissent agreed with this "common sense" conclusion, stating that "you have to give the majority its due; it realizes that boneless wings are not actually wings and that chicken fingers are not actually fingers." *Id.* at 9. If Plaintiff was counting, he would find that he cannot square his implausible allegations with a unanimous, 7-0 conclusion that "boneless wings are not actually wings."[5] *Id.*

2. Plaintiff's Allegations Establish that "Boneless Wings" Have Existed in the Public Consciousness for Decades.

Plaintiff cannot accuse BWW of a purported lack of "transparen[cy]," SAC ¶ 5, yet in the same wingbeat concede that BWW has sold Boneless Wings to the public for **over two decades**, *id.* ¶ 17. This Court joined numerous other courts in rejecting claims that reasonable consumers are deceived because the so-called deceptive practice "has been widely publicized[.]" *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, No. 20-cv-23392, 2021 WL 3666312, at *1, *10 (S.D. Fla. Aug. 18, 2021) (dismissing consumer claim that the defendant misrepresented that it was only a

---

average consumer would believe a fudge product must, of necessity, contain milkfat."); *see also Becerra*, 945 F.3d at 1230 ("Just because some consumers may unreasonably interpret the term differently does not render the use of 'diet' in a soda's brand name false or deceptive.").

[5] The Court also need not look any further than mainstream news outlets and one of the most prominent satire news websites to conclude that consumers' common understanding does *not* align with Plaintiff's professed beliefs. *See supra,* at 1.

"locally owned craft brewery, rather than by a subsidiary of the world's largest brewer" because its corporate ownership "has been widely publicized since the brewery's inception"); *Parent v. MillerCoors LLC*, No. 3:15-cv-1204, 2015 WL 6455752, at *8–10 (S.D. Cal. Oct. 26, 2015) (concluding that no reasonable consumer could be misled into believing that Blue Moon was an "independently brewed, hand-crafted beer" when MillerCoors's ownership was publicly disclosed online, including on MillerCoors's website); *Suero v. NFL*, No. 22-cv-31, 2022 WL 17985657, at *13 (S.D.N.Y. Dec. 16, 2022) (rejecting false advertising claims challenging defendant's representations about access to a football stadium, "particularly given that route information, including actual travel time, is publicly available" (cleaned up)); Dismissal Order at 8 ("'[B]oneless wings' is a common term that has existed for over two decades."). Here, Plaintiff cites a 16-year-old New York Times article about the proliferation of "boneless wings" made from "slices of breast meat deep-fried like wings and served with the same sauces" since the 2000s. SAC ¶ 22; MJN Ex. B.

Plaintiff cannot now complain that he was tricked simply because he chose to ignore at least two decades of culinary history.

### 3. The Context Surrounding Plaintiff's Allegations Confirms There Is No Deception.

Further, Plaintiff cannot claim that he was deceived by the term "Boneless Wings" while ignoring the very information that would dispel any unreasonable understanding. *See, e.g.*, *Chiappetta*, 2022 WL 602505, at *4 (observing that "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used."); *Warren*, 670 F. Supp. 3d at 81–82 ("The allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff and the context of the packaging as a whole must be considered in evaluating whether deception has occurred."

14

(quoting *Seljak v. Pervine Foods, LLC*, No. 21-cv-9561, 2023 WL 2354976, at *13 (S.D.N.Y. Mar. 3, 2023))).

***First***, as this Court has already held, *see* Dismissal Order at 8, BWW's Menu pricing alone is sufficient to dispel any illogical assumption about the Boneless Wings because they cost anywhere between 10% and 18% *less* than traditional wings. *See* MJN Ex. C. Under Plaintiff's imagined reality, deboned chicken flats and drumettes would cost *more* than traditional wings because they would require further preparation, time, and cost than traditional wings. Courts have routinely rejected deception claims where (as here) the price of the challenged product dispels any unreasonable understanding. *See, e.g., Warren,* 670 F. Supp. 3d at 81, 83 (observing that the "context provided by the term 'Hard Seltzer' is critical and fatal to Plaintiff's claim," including the $1.50 price for a product because "surely [the plaintiff] knew that nobody sells a margarita for $1.50"); *Moore*, 4 F.4th at 884 (rejecting the plaintiff's interpretation that "100% New Zealand Manuka Honey" meant the honey was derived from bees foraging exclusively on manuka plants in part because of the low cost of defendant Trader Joe's product, which was notably less expensive than "pure" manuka honey offerings); *Chen v. Dunkin' Brands, Inc.,* 954 F.3d 492, 501 (2d Cir. 2020) ("Chen bought her Angus Sandwich for less than $4 and her Angus Wrap for less than $2. As the television advertisements themselves demonstrate, the Products are marketed as grab-and-go products that can be consumed in hand, without the need for a fork and knife. A reasonable consumer purchasing one of the Products from Dunkin Donuts in that context would not be misled into thinking she was purchasing an 'unadulterated piece of meat.'"); *Jessani v. Monini N.A., Inc.*, 744 F. App'x 18, 19–20 (2d Cir. 2018) (noting that no reasonable consumer would believe a bottle of truffle flavored olive oil contained real truffles, "the most expensive food in the world," in part because of its inexpensive price). Plaintiff's theory—that reasonable consumers would believe that

the Boneless Wings are traditional wings that have gone through *additional processing* to remove the bone, yet cost less than traditional wings—defies logic.[6] But the context does not end there.

*Second*, the layout and other product names displayed in the "WINGS" section of the Menu also prevent any reasonable consumer from believing that Boneless Wings are composed of deboned chicken wings. Also included in the "WINGS" section are other products that no reasonable consumer would reasonably believe consist of chicken wing meat: cauliflower wings and chicken tenders. It would defy reason for a consumer to believe that a "cauliflower wing" is somehow made from the non-existent "wing" piece of a cauliflower. *See, e.g.*, *Sarr v. BEF Foods, Inc.*, No. 18-cv-6409, 2020 WL 729883, at \*5 (E.D.N.Y. Feb. 13, 2020) (rejecting challenge to "farm-fresh goodness" claim because consumers' ordinary experience dictated that a mashed potatoes product "obviously requires some amount of processing between the cultivation of its ingredients on a farm and its arrival on the dinner table"); *Moore*, 4 F.4th at 882 ("[O]ther available information about Trader Joe's Manuka Honey would quickly dissuade a reasonable consumer from the belief that [it] was derived from 100% Manuka flower nectar," regardless of any message conveyed by the product); *Warren*, 670 F. Supp. 3d at 83 ("[C]ursory observation of the other items on sale in the beverage section of the ShopRite supermarket where she purchased the Product would have revealed soft drinks, beer, and hard ciders/lemonades/seltzers, but no hard liquor, cocktails, or wine. Given those circumstances, it is simply not plausible that Plaintiff thought she was buying a product containing tequila." (internal citation omitted)).

---

[6] What's more, the SAC again asks that the Court suspend disbelief and ignore that "it is nearly impossible, mechanically, for processors to debone a real chicken wing." *See* MJN Ex. A. Given the sheer implausibility of Plaintiff's interpretation of Boneless Wings, a consumer of any level of sophistication could not reasonably interpret BWW's Menu as Plaintiff claims. *See Moore*, 4 F. 4th at 883–84; *Pelayo,* 989 F. Supp. 2d at 978.

So too here. Reasonable consumers would realize that, given the layout of the Menu, accompanying product names, and comparative price to traditional wings, Boneless Wings are exactly what reasonable consumers expect them to be: pieces of boneless, all-white chicken that are deep fried and "handspun in your favorite sauce or dry seasoning[.]" MJN Ex. C.

* * *

In short, reasonable consumers would only believe that the term Boneless Wings refers to the style in which it is made, *not* that they are made with deboned chicken flats and drumettes. *Dumas v. Diageo PLC*, No. 15-cv-1681, 2016 WL 1367511, at *4–6 (S.D. Cal. Apr. 6, 2016); *Steinberg v. Icelandic Provisions, Inc.*, No. 21-cv-05568, 2022 WL 220641, at *6 (N.D. Cal. Jan. 25, 2022) ("[T]he word 'traditional Icelandic' on the package, [is] a term akin in function to 'Jamaican style' in *Dumas*."). Consumers' common understanding of the product is precisely in line with what BWW delivers, and Plaintiff's allegation to the contrary should be dismissed as fanciful and implausible.

## II. Plaintiff's Other Attempts at New Allegations Cannot Salvage His Facially Deficient Claims.

Perhaps realizing that he cannot survive a motion to dismiss on survey allegations alone, Plaintiff adds a handful of other allegations purportedly to support his claims. But they are all irrelevant to his theory that reasonable consumers would be deceived by BWW's Boneless Wings.

### A. The Online Poll Does Not Support Plaintiff's Theory of Deception.

In a failed attempt to bolster his implausible allegations, Plaintiff cites an online opinion poll that asked, "Should boneless chicken wings that are made from chicken breast, rather than the chicken wing, be referred to as 'wings' or not?" SAC ¶ 48. But just as with Plaintiff's survey, these barebones allegations cannot support a plausible claim. *First*, by polling unidentified strangers about their *opinions*, the poll has no bearing on whether a reasonable consumer would be *deceived*

17

by BWW's "Boneless Wings." *Callahan v. Proctor & Gamble Co.*, No. 23 CV 2072, 2024 WL 2892838, at *2–3 (N.D. Ill. June 10, 2024) (explaining that what "North Americans *prefer*" fails to support "a reasonable inference that a majority of consumers would be misled"). **Second**, Plaintiff provides no details about the methodology this "poll" employed, whether it tested a control group, the validation methods used, or how the respondents were identified and verified. Even if it asked the right question (which it doesn't), Plaintiff cannot rely on a poll lacking these "important details." *Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 763 (N.D. Ill. 2022) (quoting *Puri*, 2021 WL 6000078, at *7).

Accordingly, even accepting the survey results as true, they do not support "a reasonable inference that a majority of consumers would be misled." *Callahan*, 2024 WL 2892838, at *3; *see also Beers v. Mars Wrigley Confectionery US, LLC*, No. 21-CV-2 (CS), 2022 WL 493555, at *6 (S.D.N.Y. Feb. 17, 2022) ("[E]ven accepting that the survey results are reflective of what reasonable consumers understand about chocolate, that understanding is not inconsistent with the reality of the Product, and consumers who reasonably hold that belief are not in fact misled." (internal citations omitted)).

### B. A Handful of Online Comments Does Not Support Plaintiff's Theory of Deception.

Next, the various online comments included in Exhibit B of the SAC similarly fail to move the needle. Like the responses to Plaintiff's "poll," most of these comments at best reveal opinions of select individuals—many of whom are anonymous—as to what "boneless wings" should be called.[7] *See Callahan*, 2024 WL 2892838, at *2–3. These anecdotal opinions do not demonstrate

---

[7] *See, e.g.*, SAC Ex. B, Example 3 ("Your wings should be real."); *id.* Example 4 (radio show host commenting that "Boneless wings are chicken nuggets"); *id.* Example 8 ("There is no such thing as boneless wings . . ."); *id.* at Example 10 (commenting that "Wings are supposed to be WINGS"); *id.* at Example 13 ("The fact of the matter is that boneless chicken wings are chicken nuggets with sauce added.").

18

that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by BWW's Boneless Wings. *Beardsall v. CVS Pharm., Inc.*, No. 16 C 6103, 2019 WL 1168103, at *7 n.14 (N.D. Ill. Mar. 13, 2019) (quoting *Ebner*, 838 F.3d at 965), *aff'd*, 953 F.3d 969 (7th Cir. 2020); *see also Hillen v. Blistex, Inc.*, No. 17 C 2074, 2017 WL 2868997, at *3 (N.D. Ill. July 5, 2017) ("Put simply, plaintiff's disappointment in defendant's tube design does not establish deception, nor does it transform defendant's accurate labeling of the product's net weight into fraud by omission."); *Deetsch v. Lei*, No. 22-cv-1166-RSH-BLM, 2023 WL 6373073, at *7 (S.D. Cal. July 21, 2023) (observing that a customer's disappointment "does not amount to false advertising"); *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998) ("Mere customer dissatisfaction does not constitute consumer fraud.").

One online commenter even admitted to "know[ing] how to debone an entire chicken" and expressed "how difficult it would be for restaurants to debone chicken wings in large quantities," including that the "labor costs would be through the roof for sure."[8] SAC Ex. B, Example 7. But that common-sense observation simply highlights the implausibility of Plaintiff's claims, especially when BWW's Menu (as the Court observed) showed that Boneless Wings are cheaper than traditional wings. Dismissal Order at 8; *see also* SAC ¶ 26. Another commenter speculated on an online forum that someone who "had never been to a chicken wing place before" might "assume the boneless wings would be the same as the bone-in wings just with the bones removed," but wrote that "life experience" is the "only reason we know any different." SAC Ex. B, Example

---

[8] Aside from this comment, the SAC includes only one other comment representing that the commenter actually purchased boneless wings expecting to receive deboned chicken meat. *See* SAC Ex. B, Example 1. Such limited allegations "that unspecified 'consumers' agree with her subjective interpretation of" BWW's Boneless Wings cannot state a viable claim for relief. *Cristia v. Trader Joe's Co.*, No. 22 CV 1788, 2022 WL 17551552, at *5 (N.D. Ill. Dec. 9, 2022).

6. Far from establishing that a reasonable consumer would be misled, this post reinforces the Court's holding that context and consumers' ordinary experience are critical to determining that BWW's use of a "common term that has existed for over two decades" was *not* deceptive. Dismissal Order at 8.

At bottom, opinions about the term "boneless wings" cannot render any more plausible Plaintiff's claim that he and other reasonable consumers have been deceived into thinking BWW's Boneless Wings are in fact deboned wings.

### C. Irrelevant Federal "Labeling Policy" Does Not Support Plaintiff's Theory of Deception.

Finally, the SAC proclaims that USDA's Food Safety and Inspection Service ("FSIS") "has adopted a labeling policy prohibiting" the use of the term 'wings' to describe products that are not made from the entire wing." SAC ¶ 37. In addition, the SAC claims that FSIS "only permits the alternative spelling 'wyngz' for processed products that are made from breast meat and shaped or styled like wings" and calls for "an asterisk to link the term 'wyngz' to a prominent disclaimer such as '*Contains No Wing Meat.'" *Id.* But whatever FSIS's stance on the term "wyngz"—which remains in doubt[9]—or its stance on "chicken wing," they are irrelevant to BWW's Menu.

***First***, any FSIS guidance simply does not apply to BWW's use of the term Boneless Wings in a restaurant setting. FSIS derives its authority over "poultry products" from the Poultry Products Inspection Act ("PPIA"), which empowers it to promulgate regulations governing their inspection, labeling, standards of identity, and composition. 21 U.S.C. § 457(b); *see also* 9 C.F.R. Part 381, *et*

[9] The SAC references a purported webpage associated with usda.gov and published by FSIS, SAC ¶ 37 n.17, but the URL cited (https://ask.usda.gov/s/article/askFSIS-Public-Q-A-wyngz) is not associated with any active webpage. The undersigned counsel could not find that page or anything similar through either FSIS's website or through Google searches, calling into significant doubt whether it reflects FSIS's current stance on the use of the term "wyngz."

20

*seq*. Critically, however, FSIS expressly acknowledges that the PPIA's requirements *do not apply* "to operations of types traditionally and usually conducted at . . . restaurants" such as displaying on menus commonplace names that have long been used to describe the style in which poultry products are prepared. 9 C.F.R. § 381.10(d)(1).

**Second**, even accepting Plaintiff's allegations about FSIS guidance as true, they still have no bearing on whether reasonable consumers are deceived by BWW's Boneless Wings. Courts have held that similar appeals to food labeling requirements do not make plaintiffs' interpretations any more reasonable because "'average consumers are not likely to be aware of the nuances of [federal] regulations' of a particular food." *See Cerretti v. Whole Foods Mkt. Grp., Inc.*, No. 21 CV 5516, 2022 WL 1062793, at *4 (N.D. Ill. Apr. 8, 2022) (quoting *Bell*, 982 F.3d at 482)). Thus, regardless of whether federal regulations define a "chicken wing" as containing exclusively chicken wing meat, that does not make it reasonable that consumers would be deceived into thinking a *different* term (BWW's "Boneless Wings") are deboned wings. *See id.*

## III. Plaintiff's Nationwide Unjust Enrichment Claim Fails.

As he did in the FAC, Plaintiff uses the same failed allegations to support his claims against BWW. *See* SAC ¶¶ 14–43. As this Court previously determined, all of Plaintiff's claims fail because Plaintiff's core premise—that Boneless Wings somehow deceive reasonable consumers—is unreasonable, defies consumers' ordinary experiences, and fails as a matter of law. *See generally* Dismissal Order at 6–10. And even if Plaintiff's theory of consumer deception somehow survived, his class claim for unjust enrichment still independently fails as a matter of law.

### A. Plaintiff's Nationwide Class Fails on the Pleadings.

As multiple courts in this District already have held, Plaintiff's nationwide unjust enrichment class—much like Boneless Wings—cannot even get off the ground. Specifically, the multiple, material conflicts among the 50 states' unjust enrichment laws would render the class

21

unmanageable and subject litigants to different (and conflicting) legal rules. *See, e.g.*, *Cowen v. Lenny & Larry's, Inc.*, No. 17-cv-1530, 2017 WL 4572201, at *4–5 (N.D. Ill. Oct. 12, 2017) (rejecting nationwide class for unjust enrichment claim). Indeed, the Northern District of Illinois has routinely found that nationwide unjust enrichment classes are improper because of the "material conflicts among the fifty states' laws with respect to unjust enrichment claims." *See Harris v. Rust-Oleum Corp.*, No. 21-cv-01376, 2022 WL 952743, at *5 (N.D. Ill. Mar. 30, 2022) (collecting cases); *see Fullerton v. Corelle Brands, LLC*, No. 18-cv-4152, 2019 WL 4750039, at *14 (N.D. Ill. Sep. 30, 2019) ("As multiple courts in the Seventh Circuit have commented, district courts remain reluctant to manage nationwide classes for these types of claims.").[10]

The Court should also conclude that Plaintiff cannot pursue a nationwide unjust enrichment class "at the pleading stage because the difficulty in Plaintiff['s] claims stem from the variance in the substantive law, which discovery cannot cure." *Fullerton*, 2019 WL 4750039, at *14; *accord Harris*, 2022 WL 952743, at *5 ("In fact, several courts in this District have found class treatment of unjust enrichment claims unsupportable at the pleading stage."); *Muir v. Nature's Bounty, Inc.*, No. 15-cv-9835, 2017 WL 4310650, at *8–9 (N.D. Ill. Sep. 28, 2017). Plaintiff's nationwide unjust enrichment class, thus, should be dismissed.

### B.     Plaintiff's Unjust Enrichment Claim Still Fails as a Matter of Law.

Plaintiff's claim for unjust enrichment also fails on the merits. ***First***, it rests on the same

---

[10] These conflicts span a range of substantive issues, including: (a) the lack of a single, controlling definition of unjust enrichment and its substantive elements, *True v. Conagra Foods, Inc.*, No. 07-cv-00770, 2011 WL 176037, at *9 (W.D. Mo. Jan. 4, 2011); (b) the applicable limitations period and when it begins, *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 519 (D. Minn. 2014); (c) the degree of misconduct necessary to state an unjust enrichment claim, *Thompson v. Bayer Corp.*, No. 4:07-cv-00017, 2009 WL 362982, at *4 (E.D. Ark. Feb. 12, 2009); and (d) additional injury requirements, *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1088–89 (D. Minn. 2015), *as amended* (Apr. 15, 2015). Putting it simply, "unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states." *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05-cv-2623, 2006 WL 3754823, at *1 n.3 (N.D. Ill. Dec. 18, 2006).

deficient allegations as his other claims. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 2001) ("[I]n the absence of any deception . . . the requisite violation of 'fundamental principles of justice, equity, and good conscience' [necessary for unjust enrichment] is not present."). ***Second***, an unjust enrichment claim "is not a separate cause of action under Illinois law" and cannot serve as a catchall when other claims fail. *See Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019). Here, there is no meaningful distinction between Plaintiff's unjust enrichment claim and his other claims. Therefore, this claim cannot survive.

## IV.   The Court Should Deny Plaintiff Leave to Amend His Complaint Again.

Courts permit a party leave to amend a complaint only "when justice so requires," Fed. R. Civ. P. 15(a)(2), and they will not grant leave to amend when "the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urb. Dev.*, 383 F.3d 552, 558 (7th Cir. 2004) (citation omitted).  Despite having the benefit of the Court's Dismissal Order, Plaintiff fails to cure any of the deficiencies with his claims. *See Midwest Grinding Co. v. Spitz*, 716 F. Supp. 1087, 1096 n.4 (N.D. Ill. 1989) ("When a plaintiff is put on notice of the deficiencies of the complaint and fails to correct them in the amended complaint, dismissal with prejudice is proper."), *aff'd,* 976 F.2d 1016 (7th Cir. 1992). If anything, the SAC confirms that yet another amendment would be futile. *See Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019) (affirming dismissal with prejudice after "the plaintiffs failed to remedy the deficiencies in their pleadings despite having been given multiple opportunities to do so"). The Court should not allow Plaintiff a fourth bite at the apple.

## CONCLUSION

BWW respectfully requests that the Court dismiss Plaintiff's claims in their entirety with prejudice.

Dated: May 4, 2026.                   Respectfully submitted,

By:   */s/ Andrew G. Phillips*

Jason D. Rosenberg (IL Bar# 6275801)
Andrew G. Phillips (*pro hac vice*)
Alan F. Pryor (*pro hac vice*)
Sarah Parker (*pro hac vice*)
Alston & Bird LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
andrew.phillips@alston.com
alan.pryor@alston.com
sarah.parker@alston.com

*Counsel for Buffalo Wild Wings, Inc.*

24

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, a true and exact copy of the foregoing Motion to Dismiss Second Amended Class Action Complaint was filed with the Court using the CM/ECF system, which will automatically notify and serve all counsel of record.


*/s/ Andrew G. Phillips*
Andrew G. Phillips

*Counsel for Buffalo Wild Wings, Inc.*